UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL EDENBOROUGH,<br><br>Plaintiff,<br><br>v.<br><br>ADT, LLC,<br><br>Defendant. | Case No. 16-cv-02233-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: ECF No. 32 |

In this putative class action brought on behalf of California residents who have purchased wireless home security systems from Defendant ADT, LLC ("ADT"), Plaintiff alleges that ADT deceived him by failing to inform him that the wireless home security system he purchased from ADT was vulnerable to hacking. Plaintiff asserts claims under California's Consumers Legal Remedies Act and California's Unfair Competition Law. Before the Court is ADT's Motion to Dismiss the First Amended Complaint. ECF No. 32. The Court grants the motion in part and denies it in part.

I.  **BACKGROUND**[1]

ADT is a Florida-based business that markets home security systems, some of which are wireless. ECF No. 25 ¶¶ 4, 7. Plaintiff Michael Edenborough is a California resident who alleges that he has suffered from deceptive business practices committed by ADT in connection with the wireless home security systems it sells. Id. ¶ 1.

On March 30, 2012, Plaintiff entered into an initial contract with ADT. Id. ¶ 3. Before

---

[1] In deciding this motion, the Court accepts as true the factual allegations pleaded in Plaintiff's First Amended Complaint. See Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

entering into that contract, Plaintiff reviewed an ADT advertisement and ADT's website. Id. ¶ 25. Based on the recommendation of an ADT Senior Security Consultant, Plaintiff decided to have ADT's wireless security system installed in his home. Id. ¶ 26.

Unbeknownst to Plaintiff at the time, ADT's wireless home security systems utilize "radio transmissions . . . transmitted over known frequencies" using "unsecured and unencrypted protocols." Id. ¶¶ 8–9. Plaintiff asserts that these transmissions are "insufficiently protected from intrusion and interference by unauthorized third parties who can readily turn the wireless sensors off." Id. ¶ 8. "Such hacking can easily be accomplished by anyone who obtains software and electronics that are easily available, in some cases for free." Id. ¶ 8. In July 2014, these vulnerabilities were investigated, and subsequently reported, by Forbes magazine. Id. ¶ 11.

Plaintiff asserts that ADT knew, or at least should have known, that its wireless security systems have been vulnerable to such hacking since March 18, 2012 or earlier. Id. ¶¶ 9, 33; see also ECF No. 1-1 (state court Complaint filed on March 18, 2016). Plaintiff further alleges that ADT "actively concealed" this vulnerability. ECF No. 25 ¶ 11. Finally, Plaintiff claims that "ADT is under a duty to disclose . . . its wireless home security systems' lack of encryption, lack of authentication, and other severe vulnerabilities" but "never disclosed" these facts to Plaintiff or other California consumers. Id. ¶¶ 14, 20.

Had he known of these vulnerabilities, Plaintiff claims that he "would not have agreed to the contract with ADT for monitoring services." Id. ¶ 27. Because of ADT's alleged active concealment and omissions, "Plaintiff paid a deposit and an installation charge . . . and continues to pay a monthly service fee of at least $47.99" to ADT. Id. ¶ 24.

On March 18, 2016, Plaintiff filed his initial complaint in state court. ECF No. 1-1. On April 25, 2016, ADT removed the action to this Court. ECF No. 1. On June 17, 2016, Plaintiff filed his First Amended Complaint ("FAC"), raising claims for violation of California's Consumers Legal Remedies Act, California Civil Code § 1750, et seq. ("CLRA"), and violation of California's Unfair Competition Law, California Business and Professions Code § 17200, et seq. ("UCL"). ECF No. 25 ¶¶ 2, 42–66. Plaintiff seeks to represent a class composed of "[a]ll California residents who paid for an ADT wireless home security system in the four years

preceding the filing of this action." Id. ¶ 33.  On behalf of the putative class, Plaintiff requests monetary and equitable relief.  Id. at 16–17.  On July 5, 2016, ADT filed a motion to dismiss the FAC, ECF No. 32, which motion the Court now considers.

## II.   JURISDICTION

This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.  "ADT LLC is a citizen of Delaware and Florida because its sole member, ADT U.S. Holdings Inc., is a corporation organized under the laws of the State of Delaware, with its principal place of business" in Florida.  ECF No. 1 ¶ 6.  Plaintiff is a resident of Oakland, California and seeks to represent a class of similarly-situated California residents.  ECF No. 25 ¶ 3, 33.

## III.   LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).  The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).

Where a plaintiff pleads fraud, he must "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  In general, allegations sounding in fraud must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007); Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (Under Rule

1  9(b), plaintiffs must plead "the who, what, when, where, and how of the misconduct charged," and
2  "must set forth what is false or misleading about a statement, and why it is false.") (quoting In re
3  GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994)). "The text of Rule 9(b) requires
4  only that in 'all *averments of fraud* . . . , the circumstances constituting fraud . . . shall be stated
5  with particularity.'" Vess, 317 F.3d at 1104 (9th Cir. 2003) (quoting Rule 9(b)) (emphasis in
6  Vess). "The rule does not require that allegations supporting a claim be stated with particularity
7  when those allegations describe non-fraudulent conduct." Id.

8      "Where the fraud consists of omissions on the part of the defendants, the plaintiff may
9  find alternative ways to plead the particular circumstances of the fraud. For example, a plaintiff
10 [in such circumstances] cannot plead either the specific time of the omission or the place, as he is
11 not alleging an act, but a failure to act." Washington v. Baenziger, 673 F. Supp. 1478, 1482 (N.D.
12 Cal. 1987) (citation omitted). Similarly, "[m]alice, intent, knowledge, and other conditions of a
13 person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Finally, this pleading standard
14 may be "relaxed as to matters within the opposing party's knowledge." Moore v. Kayport
15 Package Exp., Inc., 885 F.2d 531, 540 (9th Cir. 1989).

16 **IV.   DISCUSSION**

17     Plaintiff raises claims arising under California's CLRA and UCL. The CLRA prohibits
18 "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person
19 in a transaction intended to result or which results in the sale or lease of goods or services to any
20 consumer." Cal. Civ. Code § 1770(a). Such acts and practices include representing that goods
21 have characteristics that they do not have, representing that goods are of a particular quality when
22 they are of another, and representing that goods were supplied in accordance with a previous
23 representation when they were not. Cal. Civ. Code §§ 1770(a)(5), 1770(a)(7), 1770(a)(16).
24 "Sellers can be liable under CLRA for making affirmative misrepresentations as well as for failing
25 to disclose defects in a product." Baba v. Hewlett-Packard Co., No. C 09-05946 RS, 2010 WL
26 2486353, at *3 (N.D. Cal. June 16, 2010). "[A]lthough a claim may be stated under the CLRA in
27 terms constituting fraudulent omissions, to be actionable the omission must be contrary to a
28 representation actually made by the defendant, or an omission of a fact the defendant was obliged

to disclose." Daugherty v. Am. Honda Motor Co., 144 Cal. App. 4th 824, 835 (2006), as modified (Nov. 8, 2006).

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "An act can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent." Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554 (2007). Here, while Plaintiff alleges he suffers from ADT's "unlawful, unfair, and deceptive" business practices, ECF No. 25 ¶ 1, his Opposition brief only discusses Plaintiff's claim "under the fraudulent prong of the UCL," ECF No. 39 at 11. A plaintiff may bring a claim under the fraudulent prong of the UCL if the defendant's conduct is "likely to deceive." Langan v. United Servs. Auto. Ass'n, 69 F. Supp. 3d 965, 984 (N.D. Cal. 2014). "To state a claim for fraud under the UCL, a plaintiff must allege the existence of (1) a duty to disclose, and (2) reliance." Id.

ADT argues that the both the CLRA and UCL claims in the FAC should be dismissed because: (1) Plaintiff fails to sufficiently allege any actionable affirmative representation; and (2) Plaintiff fails to sufficiently allege any actionable omission. ECF No. 32 at 8.[2]

### A.    Affirmative Representations

Plaintiff alleges that he "reviewed ADT's website" before signing his contract with ADT. ECF No. 25 ¶ 25. According to Plaintiff, the website touted the reliability of ADT's wireless home security systems through the following five statements:

> "Traditional systems can be just as effective as a wireless alarm system, but one disadvantage is that they run off electricity supplied through electrical wires";
>
> "ADT takes pride in using the most advanced technology";
>
> "Only ADT has the most security industry experience, is the leader in innovative security technology, and can provide you with the fastest response times";

---

[2] In their briefs, the parties generally fail to distinguish between Plaintiff's UCL and CLRA claims, instead assuming that both claims will either survive or fail together. Because the parties have not sought to distinguish between these claims, the Court will likewise assume that the two claims can be analyzed together.

> "Our experience, technology and people make the difference in your security protection"; and
>
> "You invest in ADT home security and automation systems to help protect your loved ones. Your satisfaction is important to us, and is the reason we are committed to providing you with state-of-the-art equipment and service."

Id. ¶¶ 15, 17. ADT argues that Plaintiff fails to plead with particularity that he relied on any affirmative representation and that, regardless, the only affirmative representations alleged are non-actionable puffery. ECF No. 32 at 11–13. The Court agrees with both arguments.

### 1. Reliance

ADT correctly notes that Plaintiff does not allege that he actually read any of the above statements. Id. at 11; see generally ECF No. 25. As this Court concluded in Opperman v. Path, merely alleging a visit to a website does not adequately plead reliance on particular representations on that website to state a claim under either the UCL or CLRA. 87 F. Supp. 3d 1018, 1046–47 ("What the CAC fails to do is connect any specific Plaintiff to any specific representation . . . [by] alleg[ing] that any one of them saw any particular representation."). See also Haskins v. Symantec Corp., ___ Fed. App'x ___, No. 14-16141, 2016 WL 3391237, at *1 (9th Cir. June 20, 2016) ("Because Haskins's complaint did not allege that she read and relied on a specific misrepresentation by Symantec, she failed to plead her fraud claims with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure."). Here, Plaintiff asserts that he reviewed unspecified advertisements and "reviewed ADT's website." ECF No. 25 ¶ 25. Nowhere does Plaintiff allege that he relied on any particular advertisement, website content, or other communication. Therefore, Plaintiff has not sufficiently alleged reliance on any affirmative representation.

### 2. Puffery

Additionally, ADT argues that the only affirmative representations in question are non-actionable puffery. ECF No. 32 at 12. "[T]he determination of whether an alleged misrepresentation 'is a statement of fact' or is instead 'mere puffery' is a legal question that may be resolved on a Rule 12(b)(6) motion." Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1053 (9th Cir. 2008). In the Ninth Circuit:

> A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance. Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim. The common theme that seems to run through cases concerning puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions. Thus, a statement that is quantifiable, that makes a claim as to the specific or absolute characteristics of a product, may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery.

Id. (internal citations and quotation marks omitted); see also Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir. 1997) ("Puffing is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely."). By contrast, "[a] specific and measurable advertisement claim of product superiority based on product testing is not puffery." Stover Seed, 108 F.3d at 1145.

There is nothing specific or measurable about the alleged representations that ADT's "innovative" and "most advanced" technologies "make the difference." ECF No. 25 ¶ 17. Nor is there anything measureable about claims that ADT's equipment and service are "state-of-the-art." Id. In fact, no affirmative representation alleged "makes a claim as to the specific or absolute characteristics of a product." Newcal Indus., 513 F.3d at 1053. These statements are therefore non-actionable puffery. Accord Cheatham v. ADT Corp., No. 15-cv-02137, 2016 WL 540832, at *10 (D. Ariz. Feb. 11, 2016) (finding similar representations made by ADT to be puffery); Baker v. The ADT Corp., No. 15-cv-02038, ECF No. 53, at *15 (C.D. Ill. Oct. 5, 2015) (same).

Ultimately, the Court concludes that Plaintiff does not sufficiently allege reliance on any affirmative representation. Moreover, the only affirmative representations alleged are non-actionable puffery. Accordingly, ADT's Motion to Dismiss is granted without prejudice as to Plaintiff's claims related to affirmative representations made in violation of the UCL and CLRA.

**B.   Omissions**

**1. Duty to Disclose**

"A plaintiff may bring a claim under the CLRA for a failure to disclose a material fact if the plaintiff shows that the defendant had a duty to disclose such a fact." Dodson v. Tempur-Sealy Int'l, Inc., No. 13-cv-04984-JST, 2014 WL 1493676, at *4 (N.D. Cal. Apr. 16, 2014). Similarly, "[t]o state a claim for fraud under the UCL, a plaintiff must allege the existence of . . . a duty to

disclose." Langan, 69 F. Supp. 3d at 984. To establish a duty to disclose under California law, a plaintiff must plausibly plead that at least one of the following four circumstances exists: (1) the defendant was in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively concealed a material fact from the plaintiff; or (4) the defendant made partial representations but also suppressed some material fact. Falk v. Gen. Motors Corp., 496 F. Supp. 2d 1088, 1095 (N. D. Cal. 2007) (quoting LiMandri v. Judkins, 52 Cal. App. 4th 326, 336 (1997)).

Here, Plaintiff does not allege that he was in a fiduciary relationship with ADT. Rather, Plaintiff asserts that ADT "actively concealed" the vulnerability of its wireless systems from its customers. See, e.g., ECF No. 25 ¶¶ 1–2, 11, 15. However, Plaintiff only supports this assertion with vague allegations: that ADT "deflect[ed]" questions from Forbes reporters in 2014, more than two years after Plaintiff signed his initial contract with ADT, id. ¶ 11; and that ADT "tout[ed] its wireless home security systems as safe, reliable, and secure" through the its website and marketing materials, id. ¶ 15. Neither of these allegations sufficiently supports Plaintiff's conclusory allegation of "active concealment." Similarly, Plaintiff does not adequately allege that ADT made partial representations about its wireless security systems because Plaintiff does not allege that he actually relied on any representation made by ADT. Nonetheless, as discussed further below, the Court concludes that Plaintiff sufficiently alleges that ADT owed him a duty to disclose because ADT had exclusive knowledge of material facts unknown to Plaintiff.

### a. Knowledge

"California federal courts have held that, under the CLRA, plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss." Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1145 (9th Cir. 2012). Plaintiff contends that ADT's knowledge of the vulnerability is sufficiently pleaded through the following allegations: "ADT offers business customers certain wireless security systems that utilize encryption to prevent transmissions from being read or spoofed," ECF No. 25 ¶ 10; "[i]t is well recognized among radio frequency ('RF') engineers, as well as ADT, that the nature of a wireless home security system . . . precludes application of traditional security techniques such as encryption and

8

authentication," as shown by publications dating back as early as 2002, id. ¶ 9; "the manufacturers of the home security systems that ADT installs have acknowledged since at least 2012 – and disclosed to ADT – that their home wireless systems are vulnerable to disruption," id.; and, in 2016, ADT disclosed in a Form 10-Q statement that its "products may be subject to potential vulnerabilities of wireless and Internet of Things devices" and that its "service may be subject to hacking or other unauthorized access," id. ¶ 12.

ADT argues that Plaintiff "does not allege with specificity the communications that supposedly gave ADT [knowledge of the alleged vulnerability]: which manufacturers, which communications, on which dates, on which occasions." ECF No. 32 at 9. ADT also contends that Plaintiff's allegations "[do] not establish that ADT . . . was aware in 2012 . . . that a hacker could intercept and disrupt an unencrypted wireless signal from an alarm sensor to its panel." Id. at 10. ADT further argues that Plaintiff's allegations of knowledge are inadequate because the FAC does not specifically "allege vulnerability to the kind of hacking through the use of software-defined radios described in the 2014 Forbes article." ECF No. 45 at 7.

Plaintiff has the better argument. Plaintiff's complaint need not specify in detail the exact methods of hacking to which ADT knew its devices were vulnerable. Rather, Plaintiff need only generally allege that ADT had knowledge of, and withheld, a material fact: that its devices were unencrypted and vulnerable to hacking. See Tavares v. Capitol Records, LLC, No. 12-cv-3059-YGR, 2013 WL 968272, at *4 (N.D. Cal. Mar. 12, 2013) (finding that "Plaintiffs' general allegation of Capitol's knowledge is permissible" because Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," and denying motion to dismiss UCL claim.); MacDonald v. Ford Motor Co., 37 F. Supp. 3d 1087, 1095 (N.D. Cal. 2014) (allegations of exclusive knowledge need only meet Iqbal's plausibility standard).

Plaintiff has done so here. First, the publications cited by Plaintiff in the FAC suggest that the industry to which ADT belongs knew of the vulnerability of wireless devices long before Plaintiff contracted with ADT. See ECF No. 25 ¶ 9. Second, the FAC alleges that "the manufacturers of the home security systems that ADT installs have acknowledged since at least

2012—and disclosed to ADT—that their home wireless systems are vulnerable to disruption." Id. ¶ 10 (emphasis added). Third, the FAC alleges that ADT "admit[ted] in its February 2, 2016 Form 10-Q statement for the quarter ending December 31, 2015 that its 'products may be subject to potential vulnerabilities of wireless and Internet of Things devices' and that its 'service may be subject to hacking or other unauthorized access.'" ECF No. 25 ¶ 12. While this admission occurred nearly four years after Plaintiff's purchase, the admission, when combined with the previous two allegations tied to 2012, allows the Court to plausibly infer that ADT knew of the alleged vulnerability by the time the wireless security system was sold to Plaintiff in 2012. See In re MyFord Touch Consumer Litig., 46 F. Supp. 3d 936, 958 (N.D. Cal. 2014) (allegations that manufacturer knew of alleged defect after purchase based on "Technical Service Bulletins" issued by the manufacturer supported Plaintiff's assertion at the pleadings stage that manufacturer had knowledge at the time of sale); see id. ("While the Court has some doubts whether Plaintiffs will actually be able to prove such, that does not mean that Plaintiffs' case is implausible.").

### b. Exclusivity

To establish ADT's duty to disclose a material fact to Plaintiff, ADT must have had "exclusive knowledge" of that fact. See Falk, 496 F. Supp. 2d at 1095 (quoting LiMandri, 52 Cal. App. 4th at 336). "Generally, courts have not defined 'exclusive' literally, but have found such claims cognizable if the defendant had 'superior' knowledge of a defect that was not readily apparent and there is no or only a limited publicly available information about the defect." Daniel v. Ford Motor Co., No. 11-cv-02890, 2016 WL 2899026, at *4 (E.D. Cal. May 18, 2016); see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig., 754 F. Supp. 2d 1145, 1174 (C.D. Cal. 2010) (requiring only allegations of "superior knowledge" to survive a motion to dismiss a CLRA claim).

Here, Plaintiff sufficiently alleges that ADT had superior knowledge. Plaintiff asserts that "[a]t no time prior to 2016 was [he] aware of the vulnerabilities of [his] wireless home security system." ECF No. 25 ¶ 27. Plaintiff further asserts that "[t]he specific workings and technological details of a wireless security system are outside the realm of knowledge of the average consumer." Id. ¶ 19. By contrast, as noted above, Plaintiff has alleged that it was

generally known to experts in the field of wireless network security in 2012 that wireless home security networks were vulnerable to hacking, jamming, and other techniques, see ECF No. 25 ¶ 9, and that ADT was aware that the its wireless security products in particular were vulnerable to such attacks, see id.; ECF No. 25 ¶ 12. Accordingly, the Court concludes that Plaintiff has sufficiently pleaded exclusivity. See In re Toyota, 754 F. Supp. 2d at 1192 (holding that plaintiff had sufficiently pleaded superior knowledge and noting that "[w]hile prospective customers could have been tipped off to the possibility of [a defect], many customers would not have performed such a search, nor would they be expected to").

### 2. Materiality

"An omission is material if a reasonable consumer would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." Daniel v. Ford Motor Co., 806 F.3d 1217, 1225 (9th Cir. 2015) (internal quotation marks and citation omitted). "Materiality is judged from the perspective of a reasonable consumer . . . and it is generally a question of fact." Id. (internal quotation marks and citation omitted).

Plaintiff argues that ADT's omissions are material to ADT customers because the "omissions directly pertain to the primary function" of ADT's wireless security systems: "to provide safety and security." ECF No. 25 ¶ 22. As a result of ADT's failure to disclose this information, Plaintiff and similarly situated ADT customers "pay for equipment and monitoring services that do not provide the level of protection they are lead to believe they are receiving." Id. ¶ 14. Plaintiff further asserts that "[he] would not have entered into his contract with ADT for monitoring a wireless home security system had he known that the wireless home security system that ADT selected and installed in his house could be easily defeated." Id. ¶ 47.

ADT disputes these allegations, arguing that "[n]o reasonable consumer would find this hacking risk material when the sole known instance was achieved by a researcher under controlled conditions, with not one corroborating field report of any actual disruption of an ADT customer's wireless alarm system in the two years following the publication of the researcher's findings." ECF No. 32 at 15. But, as Plaintiff correctly argues in his Opposition, ECF No. 39 at 19, a defect need not be proximate to be material. It is certainly plausible that a reasonable consumer would

1   attach importance to the fact that their home security system could be easily be hacked and
2   bypassed, even absent proven instances of such hacking. This is especially true, as Plaintiff notes,
3   "where the risk brings into question the core functionality" of ADT's wireless systems: to protect
4   homes from intrusion. Id. at 19. See Collins v. eMachines, Inc., 202 Cal. App. 4th 249, 258
5   (2011), as modified (Dec. 28, 2011) (finding defect to be material when it prevented accurate
6   operation of a "floppy disk [that] was central to the function of a computer . . . [b]ecause a floppy
7   disk, at the time of the complaint, was integral to the storage, access, and transport of accurate
8   computer data"). Accordingly, the Court concludes that Plaintiff has sufficiently alleged
9   materiality. See In re Carrier IQ, Inc., 78 F. Supp. 3d 1051, 1113 (N.D. Cal. 2015) (holding that
10  plaintiffs sufficiently "alleged materiality by alleging that had they been aware of the installation
11  and functionality of the Carrier IQ Software, they would not have purchased their mobile
12  devices."); Opperman v. Path, Inc., 87 F. Supp. 3d 1018, 1046 (N.D. Cal. 2014) ("[M]ateriality is
13  therefore ordinarily a question of fact unless the 'fact misrepresented is so obviously unimportant
14  that the jury could not reasonably find that a reasonable man would have been influenced by it.'")
15  (quoting Engalla v. Permanente Med. Grp., Inc., 15 Cal. App. 4th 951, 977 (1997)).

### 3. Justifiable Reliance

17  "An essential element for a fraudulent omission claim is actual reliance." Daniel v. Ford
18  Motor Co., 806 F.3d 1217, 1225 (9th Cir. 2015). "That one would have behaved differently can be
19  presumed, or at least inferred, when the omission is material." Id. Plaintiff alleges that he and
20  putative class members "had a reasonable belief that . . . the wireless home security systems
21  would be secured against outside interference." ECF No. 25 at 18. Plaintiff further alleges that,
22  "[h]ad [he] known that the wireless home security systems could easily be suppressed or
23  circumvented, he would not have agreed to the contract with ADT for monitoring services." Id.
24  ¶ 27.
25  ADT argues that any reliance by Plaintiff was not justifiable because the risk of hacking is
26  merely a "hypothetical concern." ECF No. 32 at 15. However, as explained above, the Court has
27  already concluded that ADT's alleged omission was material. Actual reliance can therefore be
28  inferred. Daniel, 806 F.3d at 1225; Lilly v. Jamba Juice Co., 308 F.R.D. 231, 242 (N.D. Cal.

2014) ("In establishing the elements of a CLRA violation, an inference of common reliance arises if representations are material . . . ."). Moreover, for the reasons set forth in the Court's discussion of materiality, the Court concludes that Plaintiff has sufficiently pleaded that his reliance was justifiable.

### 4. Contractual Terms

Finally, ADT asserts that even if it had a duty to disclose the alleged omission, ADT satisfied this duty by placing the following language in its contract with Plaintiff: "ADT may not receive alarm signals if communications or power is interrupted for any reason" and "no alarm system can provide complete protection or guarantee prevention of loss or injury." ECF No. 32 at 7, 16; see also ECF No. 24-2 at 2. That language is not a disclosure of the allegedly omitted fact, namely that ADT's wireless systems are vulnerable to hacking, jamming, and other techniques. At the very least, "[t]he Court cannot find, at this stage of the proceedings, that Defendant's disclosure is so unambiguous and express such that a reasonable consumer is unlikely to be deceived as a matter of law." Doe v. SuccessfulMatch.com, 70 F. Supp. 3d 1066, 1078 (N.D. Cal. 2014). As a result, ADT's contract with Plaintiff does not bar Plaintiff's claim based on fraudulent omission in violation of the UCL and CLRA.

Ultimately, the Court concludes that Plaintiff has sufficiently stated a claim under the UCL and CLRA based on ADT's alleged omission of the fact that its wireless home security systems were vulnerable to hacking.

### CONCLUSION

Defendant's Motion to Dismiss is granted without prejudice as to Plaintiff's claims for affirmative representations made in violation of the UCL and CLRA. Defendant's Motion to Dismiss is denied as to Plaintiff's claims for a fraudulent omission in violation of the UCL and CLRA. Any amended complaint must be filed within 30 days of the issuance of this order.

IT IS SO ORDERED.

Dated: October 24, 2016

JON S. TIGAR
United States District Judge