CHAVEZ & GERTLER LLP
Mark A. Chavez (CA Bar No. 90858)
Nance F. Becker (CA Bar No. 99292)
42 Miller Avenue
Mill Valley, California 94941
Tel: (415) 381-5599
Fax: (415) 381-5572
(mark@chavezgertler.com)
(nance@chavezgertler.com)

BONNETT, FAIRBOURN, FRIEDMAN & BALINT P.C.
Andrew Friedman (*pro hac vice*)
Francis J. Balint, Jr. (*pro hac vice*)
2325 E. Camelback Rd., Suite 300
Phoenix, AZ 85016
Tel: (602) 274-1100
Fax: (602) 274-1199
(fbalint@bffb.com)
(afriedman@bffb.com)

ZIMMERMAN LAW OFFICES, P.C.
Thomas A. Zimmerman, Jr. (*pro hac vice*)
77 W. Washington St., Suite 1220
Chicago, Illinois 60602
Tel: (312) 440-0020
Fax: (312) 440-4180
(tom@attorneyzim.com)

*Attorneys for Plaintiffs Michael Edenborough and Patricia Wilson, Class Representatives, and the Proposed Settlement Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MICHAEL EDENBOROUGH and PATRICIA WILSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ADT, LLC d/b/a ADT SECURITY SERVICES, INC. a Florida limited liability company, and THE ADT CORPORATION, a Delaware corporation,<br><br>Defendants. | Case No: 16-2233 JST<br><br>**CLASS ACTION**<br><br>**DECLARATION OF THOMAS A. ZIMMERMAN, JR., IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge:   Hon. Jon S. Tigar<br>Ctrm:   9 – 19th Floor<br>Date:   April 27, 2017<br>Time:   2:00 p.m. |

I, Thomas A. Zimmerman, Jr., declare as follows:

I submit this declaration in connection with Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement Agreement and Approval of Class Notice, and also in support of Plaintiff Edenborough's Motion for Leave to File First Amended Complaint.

1. I am an attorney admitted *pro hac vice* to practice before this Court. [Doc. 74]. I am the owner of Zimmerman Law Offices, P.C., and am one of the attorneys for Plaintiffs in this case and for Class Representatives in the Settlement.

2. Attached hereto as Exhibit 1 is a true and correct copy of the executed Settlement Agreement, including all the exhibits to the Settlement Agreement.

3. Attached hereto as Exhibit 2 is a true and correct copy of the Firm Resume of Zimmerman Law Offices, P.C.

4. Attached hereto as Exhibit 3 is a true and correct copy of the Firm Resume of Chavez & Gertler LLP.

5. Attached hereto as Exhibit 4 is a true and correct copy of the Firm Resume of Bonnett Fairbourn Friedman & Balint, P.C.

6. Attached hereto as Exhibit 5 is a true and correct copy of the Firm Resume of Saxena White P.A.

7. Attached hereto as Exhibit 6 is a true and correct copy of the Firm Resume of Law Offices of William C. Wright, P.A.

8. The Settlement Agreement settles, through certification of a nationwide settlement class, the claims alleged in the following related actions:

- *Michael Edenborough v. ADT, LLC d/b/a ADT Security Services, Inc.*, Case No. 16-cv-02233-JST (USDC ND California) (the "California Action");

- *Janet Cheatham v. ADT Corporation and ADT LLC.*, Case No. 2:15-cv-02137-DGC (USDC Arizona) (the "Arizona Action");

- *Dale Baker v. The ADT Corporation and ADT, LLC d/b/a ADT Security Services*, Case No. 15-cv-02038-CSB-DGB (USDC CD Illinois) (the "Illinois Action");

- *Santiago L. Hernandez v. ADT, LLC d/b/a ADT Security Services*, Case No. 50-

2016-CA-002944XXXXMB (Cir. Ct. 15th Jud. Cir. Florida) (the "*Hernandez* Action*"); and

- *Patricia Wilson v. The ADT Corporation and ADT, LLC d/b/a ADT Security Services*, Case No. 50-2016-CA-004410XXXXMB (Cir. Ct. 15th Jud. Cir. Florida) (the "*Wilson* Action");

(collectively, the "Actions").

9.   The Actions are all premised on ADT's alleged failure to disclose to residential customers the alleged vulnerability of its residential wireless security systems to evasion and jamming of the system's wireless peripheral sensors by various electronic devices.

10.   The Illinois Action originated on November 9, 2014, when Plaintiff Dale Baker filed a complaint against ADT in the United States District Court for the Northern District of Illinois, Case No. 14-cv-08988 (N.D. Ill.), which was subsequently transferred to the United States District Court for the Central District of Illinois, Case No. 15-cv-02038-CSB-DGB (C.D. Ill.). The Illinois Action asserts claims on behalf of Plaintiff Baker, a putative national class, and a putative class of Illinois consumers. On March 23, 2017, the Court in the Illinois Action granted leave to amend, and the Third Amended Complaint was filed on that day adding Stephanie Hallam Dillard as a Plaintiff in the Illinois Action. The Illinois Action has survived a motion to dismiss. Plaintiff's Renewed Amended Motion for Class Certification was filed on December 14, 2016. On January 25, 2017, pursuant to a Joint Notice of Settlement and Stipulated Request for a Stay, the court entered a stay of the matter pending completion of the settlement approval process.

11.   On September 9, 2015, Plaintiff Janet Cheatham, an Arizona resident, filed a complaint against ADT on behalf of Plaintiff Cheatham and a putative class of Arizona consumers. The Arizona Action has survived a motion to dismiss. A motion for class certification was filed, and ADT filed its opposition to the motion. On January 23, 2017, the Parties submitted a Joint Notice of Settlement and Stipulated Request for a Stay. On January 30, 2017, the court entered a stay of the matter for forty-five days (until March 16, 2017), denied the motion to certify as moot (subject to re-filing if the settlement is not

1    completed), and directed that a joint report be filed addressing several matters. The Parties

2    on February 6, 2017 filed the requested Joint Report. On March 8, 2017, the Parties

3    submitted their First Joint Status Report Regarding Notice of Settlement and Joint Motion

4    to Extend Stay.

5    12. The California Action was filed by Michael Edenborough, a California resident, in March

6    2016 on behalf of a putative class of California residents. The California Action has

7    survived a motion to dismiss. A motion for class certification was filed, and ADT filed its

8    opposition to the motion. On February 27, 2017, pursuant to the parties' Stipulation Re:

9    Stay of Proceedings, the court entered a stay of the matter pending the approval of the

10   proposed national class settlement. [Doc. 90]. As discussed below, and pursuant to

11   stipulation, the Court subsequently lifted the stay to permit the settlement approval

12   process—including the filing of a First Amended Complaint adding the plaintiff in the

13   *Wilson* Action as a Named Plaintiff in the California Action on behalf of herself and a

14   nationwide class, along with allegations that ADT violated the Florida Deceptive and

15   Unfair Trade Practices Act—to go forward in this Court.

16   13. On March 16, 2016, Plaintiff Santiago Hernandez, a Florida resident, filed a complaint

17   against ADT on behalf of Plaintiff Hernandez and a putative class of Florida consumers.

18   At the time of settlement, ADT's motion to dismiss was fully briefed, argued, and waiting

19   for ruling. On January 27, 2017, pursuant to a Joint Notice of Settlement and Joint Motion

20   for Stay, the court entered a stay of the matter pending completion of the settlement

21   approval process.

22   14. On April 20, 2016, Plaintiff Patricia Wilson, a Florida resident, filed a complaint against

23   ADT on behalf of herself and a putative class of Florida consumers. At the time of

24   settlement, ADT's motion to dismiss was fully briefed, argued, and waiting for ruling. On

25   January 31, 2017, the parties submitted a Joint Notice of Settlement and Joint Motion for

26   Stay, along with a proposed order. No order has been entered on the Joint Motion for Stay.

27   15. The settlement was reviewed and approved by all Class Representatives, including Dale

28   Baker (the Plaintiff in the Illinois Action), and executed by all Parties. Subsequently, Dale

ZIMMERMAN DECLARATION                                    Case No. 16-2233 JST

Baker decided that he wants to pursue his own individual claims and take his matter to trial. All Plaintiffs' Counsel and the other Class Representatives believe that the Settlement is in the best interests of the Parties and the Settlement Class. Dale Baker is still included as a Class Representative, and if he does not opt out, he can submit a claim form. The Settlement Agreement further provides that a service award may be sought on Dale Baker's behalf based upon his efforts in this litigation.

16. Plaintiffs' counsel have extensively considered how best to protect and accommodate Mr. Baker's individual interests while securing the substantial benefits of the Settlement for the other Plaintiffs and class members. As the revised Settlement Agreement in Sec. V reflects, Plaintiffs believe that the best approach is to amend the complaint in the Edenborough Action to include the national class claims alleged in the *Baker* action, and to seek approval of the Settlement in this Northern District of California. ADT does not oppose this proposal.

17. Plaintiffs' Counsel have vigorously litigated the Actions. They reviewed and analyzed a rolling production of over 45,000 pages of documents and class data produced by Defendants (including the production by ADT during the negotiations and mediation of updated spreadsheets containing information concerning the size and scope of class), took or participated in the depositions of seventeen (17) fact witnesses, defended depositions of most of the Class Representatives, consulted with experts and industry personnel regarding the alleged security flaws, obtained expert reports in support of class certification, assessed the alleged security flaws, and assessed ADT's expert witness reports.

18. Plaintiffs' Counsel have worked diligently in identifying and investigating potential claims in the Actions. They have committed thousands of hours of legal services and incurred over $265,000 in costs in litigating this matter (including costs of mediation, depositions, retaining three different experts and obtaining surveys and expert reports, and expenses associated with depositions and in-person settlement negotiations).

ZIMMERMAN DECLARATION                                    Case No. 16-2233 JST

19. Plaintiffs' Counsel are committed and will continue to commit whatever resources are necessary to represent Class Representatives and the Settlement Class.

20. Over a period of several months, the Parties had discussions and engaged in arm's-length negotiations in an effort to resolve the Actions. The negotiations included two mediation sessions months apart that were overseen by highly-respected, retired Magistrate Judge and JAMS mediator, Edward A. Infante. The mediation was successful and resulted in the Settlement.

21. I have over twenty years of litigation experience. I have obtained multi-million dollar jury verdicts in class action, corporate, commercial, medical malpractice, consumer fraud, general civil, product liability, toxic tort, and other complex litigation. I have been lead counsel and class counsel in dozens of nationwide and state-wide class action litigation, and have handled other multi-party litigation involving such companies as MCI/Worldcom, United Airlines, Peoples Gas, AT&T, Warner-Lambert, Pfizer, Liberty Mutual Insurance Co., DaimlerChrysler, Commonwealth Edison, Ameritech, and Bridgestone/Firestone.

22. It is my opinion that the Settlement achieves an excellent result for the Settlement Class, especially when measured against considerable risks of continued litigation including:

> (1) the expense and length of time necessary to prosecute the Actions through trial; (2) the uncertainty of outcome at trial and the possibility of an appeal by either side following the trial; (3) the possibility that a contested class might not be certified, and if certified, the possibility that such certification would be reversed on appeal; (4) the risk that ADT could file a motion for summary judgment that, if granted, could dispose of all or many of the claims in the Actions.

23. Plaintiffs' ability to establish a premium price paid by Settlement Class Members for the wireless systems on a class-wide basis is hotly contested in this litigation. The risks in establishing a class-wide measure of damages was a factor that Plaintiffs' Counsel and the mediator considered in negotiating a settlement of the Action.

24. The allocation plan in the Settlement creates two categories that are based on the time period in which Settlement Class Members executed their contracts with ADT, and are

ZIMMERMAN DECLARATION                                                    Case No. 16-2233 JST

1    directly linked to the comparative strength of the claims. The crux of this litigation is that

2    ADT allegedly misrepresented or omitted information about security flaws in its

3    residential wireless security systems, which flaws were independently identified by Logan

4    Lamb in July 2014. ADT has denied knowledge of those vulnerabilities prior to that time.

5    *See, e.*g, Defendant ADT's Response in Opposition to Plaintiff's Motion for Class

6    Certification [Doc. 85 ("ADT Opp.")] at 17:9-10.  During their depositions, several ADT

7    employees testified that they were not aware of the hacking techniques identified by Lamb

8    prior to July 2014. *Id.* at 6:16-21. Thus, the claims of Settlement Class Members who

9    initially contracted with ADT *before* ADT learned of Lamb's findings are significantly

10   weaker than the claims of Settlement Class Members in the "post-Lamb" category,

11   justifying the distinction in the plan of allocation.

12   25. Based upon my experience, a typical claims rate for a class action settlement is between

13   2%-6%. Using typical claims rates, Plaintiffs' Counsel expects no downward adjustment

14   of the payout amounts. For example, if notice and administration costs are $1.6 million

15   and 6% of all *potential* ADT customers make a valid claim, no downward adjustment of

16   the payout amounts would be necessary. These are very conservative estimates, as a class

17   notice will be provided to millions of *potential* Settlement Class Members, many of whom

18   are not actually in the Settlement Class.  In the unlikely event that the claims rate exceeds

19   expectations, then there may be a pro rata adjustment of the payment amounts to

20   Settlement Class Members.

21   26. Class Representatives are each members of the Settlement Class, and each has suffered the

22   same or similar injuries as the rest of the Settlement Class. Class Representatives have

23   demonstrated that they are well-suited to represent the Settlement Class. Class

24   Representatives came forward and served as named plaintiffs in the Actions, assisted in

25   the prosecution of the Actions, including (for most of them) sitting for their depositions,

26   considered whether to accept the Settlement, and otherwise served as Class

27   Representatives.

28

ZIMMERMAN DECLARATION                                    Case No. 16-2233 JST

27. According to information provided by ADT, there are approximately 6.4 million *potential* Settlement Class Members in two distinct groups: (1) approximately 2.7 million customers for whom there are indications that their security system included wireless sensors ("Probables"), and (2) approximately 3.7 million customers for whom there are no indications whether they are Settlement Class Members ("Possibles").

28. Plaintiffs' Counsel have selected Dahl Administration to be the Settlement Administrator. Dahl Administration is a very experienced class notice provider and claims administrator. The costs for Notice and claims administration have been estimated at between $1.5-$1.6 million. ADT does not object to the selection of Dahl Administration as the class notice provider and claims administrator.

29. ADT Defendants concur with Plaintiffs' Counsel that the Settlement should be preliminarily approved and they will not oppose the preliminary approval motion or Plaintiff Edenborough's motion for leave to file a First Amended Complaint.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and was executed in Chicago, Illinois on March 23, 2017.

Respectfully submitted,

ZIMMERMAN LAW OFFICES, P.C.

By: _____

*Attorneys for Plaintiffs, Class Representatives and the Proposed Settlement Class*

ZIMMERMAN DECLARATION                                    Case No. 16-2233 JST

# EXHIBIT 1

1  Matthew J. Vanis (SBN: 210706)
   mvanis@shb.com
2  Katherine A. Wolf (SBN: 267763)
   kwolf@shb.com
3  SHOOK HARDY & BACON
   One Montgomery St., Suite 2700
4  San Francisco, California  94104
   Tel:  (415) 544-1900
5  Fax:  (415) 391-0281

6  C. Sanders McNew (*pro hac vice*)
   mcnew@mcnew.net
7  McNEW P.A.
   2385 NW Executive Center Drive, Suite 100
8  Boca Raton, Florida  33431
   Tel:  (561) 299-0257
9  Fax:  (561) 299-3705

10 Mark L. Levine (*pro hac vice*)
   mark.levine@bartlit-beck.com
11 Mark S. Ouweleen (*pro hac vice*)
   mark.ouweleen@bartlit-beck.com
12 Matthew W. Brewer (*pro hac* vice)
   matthew.brewer@bartlit-beck.com
13 Daniel R. McElroy (*pro hac vice*)
   daniel.mcelroy@bartlit-beck.com
14 BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
   54 West Hubbard Street, Suite 300
15 Chicago, Illinois  60654
   Tel:  (312) 494-4400
16 Fax:  (312) 494-4440

17 *Attorneys for Defendant ADT LLC*

18              **UNITED STATES DISTRICT COURT**

19            **NORTHERN DISTRICT OF CALIFORNIA**

20               **SAN FRANCISCO DIVISION**

21 ────────────────────────────────    )
   MICHAEL EDENBOROUGH,             )  Case No: 3:16-cv-02233-JST
22                                   )
              Plaintiff,             )  **CLASS ACTION**
23                                   )
              vs.                    )  **SETTLEMENT AGREEMENT**
24                                   )
   ADT, LLC, d/b/a ADT SECURITY      )
25 SERVICES, INC. a Florida limited liability )
   company,                         )
26                                   )
              Defendant.             )
27 ────────────────────────────────    )

28

Plaintiffs DALE BAKER, STEPHANIE HALLAM DILLARD, MICHAEL EDENBOROUGH, JANET CHEATHAM, SANTIAGO HERNANDEZ, and PATRICIA WILSON (collectively, "Plaintiffs"), individually and on behalf of the proposed Settlement Class (defined below), and Defendants ADT CORPORATION and ADT, LLC d/b/a ADT SECURITY SERVICES (collectively, "ADT" or "Defendants"), by and through undersigned counsel, enter into this Settlement Agreement ("Settlement Agreement") to memorialize the agreement of settlement and mutual release of claims pursuant to Rule 23, *Federal Rules of Civil Procedure*. Plaintiffs and ADT are herein referred to collectively as the "Parties."

I.   **RECITALS**

WHEREAS:

A.     On November 9, 2014, Plaintiff Dale Baker filed a complaint against ADT in the United States District Court for the Northern District of Illinois, Case No. 14-cv-08988 (N.D. Ill.), which was subsequently transferred to the United States District Court for the Central District of Illinois, Case No. 15-cv-02038-CSB-DGB (C.D. Ill.) (the "*Baker* Action"). The *Baker* Action asserts claims on behalf of Plaintiff Baker, a putative national class, and a putative class of Illinois consumers. It is anticipated that Stephanie Hallam Dillard will be added as a named plaintiff in the *Baker* Action.

B.     On September 9, 2015, Plaintiff Janet Cheatham filed a complaint against ADT in the Superior Court of the State of Arizona, County of Maricopa, which was subsequently removed to the United States District Court for the District of Arizona, Case No. 15-cv-02137-DGC (D. Ariz.) (the "*Cheatham* Action"). The *Cheatham* Action asserts claims on behalf of Plaintiff Cheatham and a putative class of Arizona consumers.

C.     On March 18, 2016, Plaintiff Michael Edenborough filed a complaint against ADT in the Superior Court of the State of California, County of Alameda, which action was subsequently removed to the United States District Court for the Northern District of California – San Francisco Division, Case No. 4:16-cv-02233-JST (N.D. Cal.) (the "*Edenborough* Action"). The *Edenborough* Action asserts claims on behalf of Plaintiff Edenborough and a putative class of California consumers.

D.      On March 16, 2016, Plaintiff Santiago Hernandez filed a complaint against ADT in Florida state court, Case No. 50-2016-CA-002944XXXXMB (Cir. Ct. 15th Jud. Cir. Fla.) (the "*Hernandez* Action"). The *Hernandez* Action asserts claims on behalf of Plaintiff Hernandez and a putative class of Florida consumers.

E.      On April 20, 2016, Plaintiff Patricia Wilson filed a complaint against ADT in Florida state court, Case No. 50-2016-CA-004410XXXXMB (Cir. Ct. 15th Jud. Cir. Fla.) (the "*Wilson* Action"). The *Wilson* Action asserts claims on behalf of Plaintiff Wilson and a putative class of Florida consumers.

F.      Plaintiffs' claims in each of the foregoing cases (collectively, the "Actions") share common factual allegations regarding ADT's alleged failure to disclose to residential customers the alleged vulnerability of its residential security systems to evasion and jamming of the system's wireless peripheral sensors by various electronic devices.

G.      Each of the Actions has been vigorously litigated by Plaintiffs and ADT. For example, certain of the Actions have survived a motion to dismiss; ADT has produced and Plaintiffs have reviewed over 45,000 pages of documents; most of the Class Representatives (defined below) and a total of seventeen fact witnesses have been deposed; and detailed, preliminary expert declarations regarding liability and damages have been exchanged. Plaintiffs in each of the *Baker, Cheatham* and *Edenborough* Actions have filed a motion for class certification, and in each of the *Cheatham* and *Edenborough* actions ADT has filed an opposition memorandum. The class certification motions are pending in the respective courts, though stayed pending approval of the settlement.

H.      Counsel for all Parties have meanwhile engaged in discussions and arm's-length negotiations, including a successful mediation overseen by highly-respected, retired Magistrate Judge and JAMS mediator, Edward A. Infante. The Parties have concluded and agree that the interests of fairness, consistency, and efficiency are best served by a single, national class settlement encompassing all of the Actions.

I.      Based upon their investigation, Plaintiffs and Plaintiffs' Counsel (defined below) have concluded and agree that the terms and conditions detailed in this Settlement Agreement are

fair, reasonable, and adequate to Plaintiffs and the classes asserted in each of the Actions, and accordingly are in their best interests to effectuate.  The Parties have thus agreed, subject to Court approval, to settle Plaintiffs' claims pursuant to the terms and provisions of this Settlement Agreement, after considering (a) the substantial benefits that Plaintiffs and the members of the Settlement Class (defined below) will receive from the settlement of the Actions, (b) the risks of continued litigation, and (c) the desirability of permitting the proposed settlement to be consummated as provided under the terms of this Settlement Agreement.  The Settlement Agreement shall not be construed as or deemed to be a concession by Plaintiffs of any infirmity in the claims asserted in any of the Actions.

J.      ADT denies any wrongdoing, fault, liability or damage to Plaintiffs and any members of the Settlement Class, denies that it engaged in any wrongdoing, denies that it committed any violation of law or breach of duty, denies that it acted improperly in any way, and contends that the Actions have no merit.  However, given the risk and uncertainty inherent in this and any litigation, especially complex consumer class action litigation, and the difficulties, substantial expense and other burdens necessary to defend the Actions through trial, post-trial motions, and appeals, ADT has decided to enter into this Settlement Agreement in order to settle the Actions on the terms and conditions provided herein and to put the Plaintiffs' Released Claims (defined below) to rest finally and forever, without in any way acknowledging any wrongdoing, fault, liability or damage to Plaintiffs or the Settlement Class Members.   Nothing in this Settlement Agreement or in any of its exhibits shall be construed as, or deemed to be, evidence of an admission or concession on the part of ADT with respect to any claim or defense, or of any fault, wrongdoing, liability or damage whatsoever, or of any infirmity in the defenses that ADT has or could have asserted.

NOW THEREFORE, it is hereby STIPULATED AND AGREED, by and among the Parties, through their counsel, and subject to approval of the Court pursuant to Rule 23(e), *Federal Rules of Civil Procedure*, that Plaintiffs' Released Claims (as defined below) and Defendants' Released Claims (as defined below) shall be compromised, settled, released and dismissed with prejudice, upon and subject to the following terms and conditions.

## II.   **DEFINITIONS**

As used in this Settlement Agreement, in addition to terms defined elsewhere, the following terms shall have the meanings set forth below:

"Attorneys' Fee and Expense Award" means the amount of attorneys' fees and reimbursement of costs and expenses awarded by the Court to Plaintiffs' Counsel.

"Authorized Claimants" are Settlement Class Members who timely submit valid Claim Forms and are thus entitled to a share of the Net Settlement Amount.

"Claim Form" means the form for submission of claims approved by the Court substantially in the form of Exhibit C attached hereto.

"Class Counsel" means, collectively, Francis J. Balint, Jr. of Bonnett, Fairbourn, Friedman & Balint, P.C., Mark A. Chavez of Chavez & Gertler LLP, Jonathan M. Stein of Saxena White P.A., and William C. Wright of The Law Offices of William C. Wright, P.A.

"Class Representatives" means the named Plaintiffs in the Actions (*i.e.* Dale Baker, Janet Cheatham, Michael Edenborough, Santiago Hernandez, and Patricia Wilson).

"Court" means the U.S. District Court for the Northern District of California, Hon. Jon S. Tigar (the court in which the *Edenborough* Action is pending).

"Defendants' Counsel" means, collectively, Bartlit Beck Herman Palenchar & Scott LLP, Shook Hardy & Bacon, McNew P.A., and Sanders & Parks, P.C.

"Effective Date" means one business day following the later of (a) the date upon which the time expires for filing or noticing any appeal of the Judgment; or (b) if there is any appeal or appeals, the date of dismissal or completion of such appeal(s), in a manner that finally affirms and leaves in place the Judgment without any material modifications.

"Fairness Hearing" or "Final Approval Hearing" means the hearing at which the Parties will request the Court to confirm certification of the Settlement Class, to grant final approval of the Settlement Agreement as fair, reasonable, and adequate, to approve the Attorneys' Fee and Expense Award and the Service Awards, and to enter the Judgment.

"Final Approval" means an order entered by the Court approving the Settlement Agreement on terms mutually satisfactory to the Parties that has become final and non-appealable.

"Judgment" means the final order and judgment approving the settlement terms set forth in the Settlement Agreement substantially in the form of Exhibit D attached hereto.

"Lead Class Counsel" means Thomas A. Zimmerman, Jr. of Zimmerman Law Offices, P.C.

"Net Settlement Amount" means the Settlement Amount less the Attorneys' Fee and Expense Award, the Service Awards, and the costs of class notice and settlement administration.

"Notice Date" means the date upon which the Settlement Class Notice is first disseminated to the Settlement Class.

"Opt-Out and Objection Deadline" means the deadline for a Settlement Class Member to submit a written objection or a Request for Exclusion, which shall be set by the Court. The deadline for submitting a written objection or a Request for Exclusion will be clearly set forth in the Settlement Class Notice.

"Plaintiffs" means the named Plaintiffs in each of the Actions, individually and as representatives of the Settlement Class.

"Plaintiffs' Counsel" means Lead Class Counsel and Class Counsel.

"Plan of Allocation" means the settlement payment and allocation plan for payment of the Net Settlement Amount to Settlement Class Members.

"Preliminary Approval" means the Court's conditional certification of the Settlement Class for settlement purposes, preliminary approval of this Settlement Agreement, and approval of the Settlement Class Notice, through an order substantially in the form attached hereto as Exhibit A.

"Request for Exclusion" means the timely written communication by or on behalf of a person in the Settlement Class in which he or she requests to be excluded from the Settlement Class.

1    "Service Awards" means the amount of service awards awarded by the Court to the Class

2    Representatives in each of the Actions.

3         "Settlement" means the terms of this Settlement Agreement.

4         "Settlement Administrator" means, subject to approval of the Court and any objection by

5    ADT, the entity selected by Plaintiffs' Counsel to administer the settlement. The Settlement

6    Administrator's address and toll-free telephone number for Settlement Class Members to call for

7    information shall be placed on all forms of Settlement Class Notice except for the tweet to be

8    released from ADT's Twitter account.

9         "Settlement Amount" means the amount of sixteen million dollars ($16,000,000.00).

10        "Settlement Class" means the current and former ADT customers who between November

11   13, 2009 and August 15, 2016 entered into a contract with ADT or an ADT dealer for installation

12   of a residential security system, or who had ADT or an ADT dealer install a residential security

13   system, that includes at least one wireless peripheral sensor. The Settlement Class does not

14   include those current and former ADT residential customers whose accounts were assumed,

15   purchased or otherwise acquired by ADT from any third-party other than ADT dealers, including

16   but not limited to any other alarm company. Also excluded from the Settlement Class are: (1) the

17   current and former employees, officers and directors of ADT and its agents, subsidiaries, parents,

18   successors, predecessors, and any entity in which they or their parents have a controlling interest;

19   (2) the judge to whom this case is assigned and the judge's immediate family; (3) any person who

20   executes and files a timely request for exclusion from the Class; (4) any persons who have had

21   their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal

22   representatives, successors and assigns of any such excluded person.

23        "Settlement Class Member" means an individual who is a member of the Settlement

24   Class.

25        "Settlement Class Notice" means a notice of the pendency and proposed settlement of the

26   Actions, including a Summary Notice (for publication), Detailed Notice, Email Notice, Tweet

27   from ADT, and Postcard Notice, substantially in the forms attached hereto as Exhibits B-1, B-2,

28   B-3, B-4, and B-5.

1        "Settlement Class Period" means November 13, 2009 through August 15, 2016, inclusive.

2        "Settlement Website" means an informational website about the Settlement with an easy

3    to remember domain name to be set up and maintained by the Settlement Administrator, as more

4    fully described in subsection VII.E below.

5    **III.**    **CERTIFICATION OF SETTLEMENT CLASS**

6        Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, and for purposes of this

7    Settlement only and subject to the approval of the Court, the Parties stipulate to certification of

8    the Settlement Class defined above and to the appointment of Plaintiffs as Class Representatives

9    for the Settlement Class.  Should the Court not enter the Judgment or the Effective Date not

10    occur, the certification of the Settlement Class shall be void, the Settlement Class shall be

11    automatically decertified, and this Settlement Agreement shall not constitute, be construed as, or

12    be admissible as evidence of, an admission by any Party, or be used for any purpose whatsoever

13    in the Actions or any other actions.  If the Settlement Agreement is not approved or is terminated

14    for any reason, all rights and positions of the Parties existing prior to the execution of this

15    Settlement Agreement with respect to class certification shall be preserved.

16    **IV.**    **RELEASES**

17        A.    Plaintiffs' Released Claims. Upon the Effective Date and in consideration of

18    ADT's payment of the Settlement Amount, Plaintiffs and Settlement Class Members shall release

19    and forever discharge any and all direct, individual, or class claims, rights or causes of action or

20    liabilities whatsoever, whether known or unknown, whether accrued or unaccrued, and whether

21    arising under federal, state, local, statutory, common or any other law, rule, or regulation that

22    were or could have been asserted against ADT and its present and former affiliates, agents,

23    officers, directors, employees, parents, subsidiaries, predecessors, successors and assigns, by

24    Plaintiffs or any other Settlement Class Members in any of the Actions, predicated upon the facts

25    alleged in the Actions. For the avoidance of doubt, Plaintiffs hereby knowingly waive any and all

26    rights and protections under California Civil Code § 1542 as it applies to any and all unknown or

27    unanticipated claims predicated upon the facts alleged in the Actions. ***Plaintiffs' Released Claims***

28    ***do not, however, include any claims for personal injuries or for damage to or loss of property.***

B.   <u>Defendants' Released Claims</u>. Upon the Effective Date, and in consideration of the representations and promises in this Settlement Agreement (the adequacy of which is hereby acknowledged), ADT and Defendants' Counsel shall release and forever discharge all claims, rights or causes of action, whether known or unknown, whether accrued or unaccrued, and whether arising under federal, state, local, statutory, or common law, rule or regulation, against any of the Plaintiffs, Settlement Class Members or Plaintiffs' Counsel, including their respective spouses, children, heirs, associates, co-owners, agents, administrators, executors, devisees, predecessors, and representatives, that arise out of or are in any way related to the prosecution of the Actions.

## V.   **PRELIMINARY APPROVAL**

A.   Plaintiffs and Plaintiffs' Counsel will use their best efforts to apply to the Court for an order preliminarily approving the terms of the Settlement Agreement on or before March 30, 2017. The motion for preliminary approval (and all subsequent motions relating to the approval of the Settlement) shall be filed with and determined by the Court and will include a request that the Court:

1.   Certify the Settlement Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure for settlement purposes only;

2.   Appoint Plaintiffs as Class Representatives of the Settlement Class;

3.   Appoint Lead Counsel and Class Counsel to represent the Settlement Class;

4.   Preliminarily approve the Settlement Agreement and Plan of Allocation for purposes of disseminating notice to the Settlement Class;

5.   Approve the form and contents of the Settlement Class Notice and the method of its dissemination to Settlement Class Members;

6.   Schedule a Fairness Hearing to (a) review and rule upon any objections to the Settlement, (b) consider the fairness, reasonableness, and adequacy of the Settlement, (c) consider whether the Court should issue a Judgment approving the Settlement and granting Plaintiffs' Counsel's application for an Attorneys' Fee and Expense Award and Service Awards and dismissing

1    the Action with prejudice, and (d) consider such other matters as the Court

2    may deem appropriate.

3  The proposed Preliminary Approval Order attached as Exhibit A will be submitted with Plaintiffs'

4  motion seeking preliminary approval.

5    B.    Within 7 days after entry of the Preliminary Approval Order, ADT shall pay

6  $1,500,000 of the Settlement Amount to the Settlement Administrator in accordance with

7  instructions to be provided by the Settlement Administrator.

8    C.    Pending this Court's grant of Final Approval and entry of Judgment to be

9  requested in the *Edenborough* Action, Plaintiffs and ADT will jointly request the courts in the

10 *Baker, Cheatham, Hernandez,* and *Wilson* Actions to stay or continue to stay all proceedings

11 therein.

12 **VI.    FINAL APPROVAL AND JUDGMENT**

13    A.    This Settlement Agreement is subject to and conditioned upon the Court's granting

14 of Final Approval and entry of the Judgment following the Fairness Hearing in substantially the

15 form attached as Exhibit D.

16    B.    Within 7 days of the Effective Date, ADT shall pay the $14,500,000 balance of the

17 Settlement Amount to the Settlement Administrator in accordance with instructions to be

18 provided by the Settlement Administrator.

19    C.    Upon the Effective Date, Plaintiffs and ADT will stipulate to the dismissal of the

20 *Baker, Cheatham, Hernandez,* and *Wilson* Actions with prejudice, all parties to bear their own

21 costs, expenses, and fees except as provided under this Settlement Agreement.

22 **VII.    SETTLEMENT CLASS NOTICE**

23    A.    <u>Class List.</u> The ADT customers who are potential Settlement Class Members

24 consist of two categories: (1) those for whom there are some indications that they are Settlement

25 Class Members because the records show that the security systems exclusively or likely use

26 wireless sensors, referred to herein as "Probables", and (2) those for whom there are no

27 indications whether they are Settlement Class Members because their security systems can use

28 either wired or wireless sensors and readily available information does not indicate which sensors

are used, referred to herein as "Possibles". Within 10 days after Preliminary Approval of this Settlement Agreement including the form and content of the Settlement Class Notice, or as soon thereafter as is practicable, ADT shall provide the Settlement Administrator with a list containing the names and last known mailing addresses of each of its customers that it has identified as a potential Settlement Class Member. If available, ADT shall also provide the Settlement Administrator with a list containing the last known email address for each of the ADT customers that it has identified as a potential Settlement Class Member. The Settlement Administrator shall update the mailing addresses through reasonable tracking procedures including using the National Change of Address database ("NCOA"). The lists of customers who are potentially Settlement Class Members are extremely confidential to ADT. They may not be used for any purpose other than the sending of notices, communicating about the Actions and this Settlement, and providing Settlement relief to Settlement Class Members as set forth in this Settlement Agreement. The Settlement Administrator must agree in writing to maintain the confidentiality of this customer data prior to receipt.

     B.    <u>Direct Notice</u>.  No later than 30 days after Preliminary Approval, the Settlement Class Notice shall be disseminated as follows.

        1.    <u>U.S. Mail</u>. The Settlement Administrator shall mail the Postcard Notice (Exhibit B-5) to all potential Settlement Class Members who are in the Probable category. If any such correspondence is returned by the Post Office, the Settlement Administrator shall either forward the Postcard Notice to the forwarding address provided, or use reasonable efforts to identify an updated mailing address and then send the Postcard Notice to that updated address.

        2.    <u>Email</u>. The Settlement Administrator shall electronically transmit the Email Notice (Exhibit B-3) to all potential Settlement Class Members for whom ADT has an email address. The Detailed Notice (Exhibit B-2) and Claim Form (Exhibit C) shall be included in that email transmission. If any such emails are reported undelivered, the Settlement Administrator shall update

the email addresses through reasonable tracking procedures including using an Email Change of Address service ("ECOA") and then send the Email Notice to that updated address.

C.     <u>Publication</u>.   No later than 30 days after Preliminary Approval, the Settlement Administrator shall cause the Summary Notice to be published in appropriate print media (or as soon as practicable thereafter if a publication has a longer lead time), as well as publication on the Internet if the Settlement Administrator deems it necessary to supplement the other forms of notice.

D.     <u>Other Media</u>.   No later than 30 days after Preliminary Approval, ADT shall cause the Summary Notice (Exhibit B-1) to be placed in a conspicuous location on ADT's company website with a link to the Settlement Website. ADT shall also cause a tweet (Exhibit B-4) to be released from ADT's Twitter account, which will mention the Settlement and notify the public that they can go to the Settlement Website for more information.

E.     <u>Settlement Website</u>. At the time the Settlement Class Notice is first disseminated, and no later than 30 days after Preliminary Approval of this Settlement Agreement, including approval of the form and content of the Settlement Class Notice, the Settlement Administrator shall cause the Settlement Website to be activated on the Internet. The Settlement Website shall include the Settlement Administrator's toll-free telephone number for Settlement Class Members to call for information; links to the Detailed Notice (Exhibit B-2); relevant case documents in connection with the Settlement Agreement; a downloadable Claim Form, and fillable copy of the Claim Form that can be submitted electronically; and such other documents and information as may be agreed on by the Parties or ordered by the Court.

**VIII.     <u>SETTLEMENT PAYMENT AND PLAN OF ALLOCATION</u>**

A.     <u>Claim Forms</u>. Settlement Class Members will be required to submit a Claim Form, in the form of Exhibit C attached hereto, subject to the approval of the Court, in order to receive payments from the Net Settlement Amount.   Each Settlement Class Member who submits a timely, valid Claim Form and is thus an Authorized Claimant will be paid an amount from the Net Settlement Amount calculated in

accordance with subsection VIII.B. Settlement Class Members must submit a completed Claim Form by the deadline specified by the Court, and that deadline shall be clearly set forth in the Summary Notice, Detailed Notice, Email Notice, Claim Form, and Settlement Website.

B.     Payments to Settlement Class Members.

The Plan of Allocation of payments to Settlement Class Members is as follows:

1.     Each Settlement Class Member who executed a residential security contract with ADT or an ADT dealer for installation of a residential security system during the period November 13, 2009 through July 23, 2014, inclusive, will be entitled to a payment of $15 from the Net Settlement Amount, subject to any adjustment pursuant to subsection VIII.B.3.

2.     Each Settlement Class Member who executed a residential security contract with ADT or an ADT dealer for installation of a residential security system during the period July 24, 2014 through August 15, 2016, inclusive, will be entitled to a payment of $45 from the Net Settlement Amount, subject to any adjustment pursuant to subsection VIII.B.3.

3.     The determination of whether a Settlement Class Member executed a residential security contract with ADT or an ADT dealer for installation of a residential security system, or whether a Settlement Class Member had ADT or an ADT dealer install a residential security system, during the period November 13, 2009 through July 23, 2014, or during the period July 24, 2014 through August 15, 2016, is based on the date that the Settlement Class Member entered into their **first** residential security contract with ADT or an ADT dealer for installation of a residential security system with a wireless peripheral sensor, or the date that the Settlement Class Member **first** had ADT or an ADT dealer install a residential security system with a wireless peripheral sensor, regardless of whether the Settlement Class Member subsequently renewed that contract, entered into any subsequent

contracts, or had any residential security system or security system components subsequently installed.  Additionally, each Settlement Class Member is entitled to receive one settlement check regardless of whether the Settlement Class Member subsequently renewed their first contract, entered into any subsequent contracts, or had any residential security system or security system components subsequently installed after the first installation.

4.    The Settlement Administrator shall adjust the amounts of the above-specified settlement payments by increasing or decreasing them *pro rata* to the extent necessary to pay Settlement Class Members who have submitted timely and valid Claim Forms their *pro rata* shares of the Net Settlement Amount and to fully allocate and pay the Net Settlement Amount so that no money reverts back to ADT.

Payment in accordance with this Settlement Agreement shall be deemed final and conclusive against all Settlement Class Members.  Any Settlement Class Member who fails to submit a timely and valid Claim Form or whose claim is otherwise not approved by the Settlement Administrator shall be barred from participating in distributions from the Net Settlement Amount, but otherwise shall be bound by all of the terms of this Settlement Agreement, including the Judgment and the release of Plaintiffs' Released Claims. All proceedings with respect to the administration, processing and determination of claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court.

C.    <u>Method and Timing of Payments.</u>  Upon Preliminary Approval, the Settlement Administrator shall pay from the Settlement Amount the amounts necessary to pay the costs of Settlement Class Notice, the Settlement Website, and settlement administration. Upon ADT's full and final payment of the Settlement Amount subsequent to the Effective Date, the Settlement Administrator shall pay the Attorneys' Fee and Expense Award and the Service Awards to the Zimmerman Law Offices, P.C. Client Trust Account for distribution of the Attorneys' Fee and

Expense Award to Plaintiffs' Counsel in a manner which Lead Counsel, in good faith, believes reflects the contributions of Plaintiffs' Counsel to the prosecution and settlement of the Actions on behalf of the Settlement Class, and to the Class Representatives as awarded by the Court. The Settlement Administrator shall then pay from the Net Settlement Amount the payments due to Authorized Claimants by mailing the checks for the amounts due to them within 10 days of the date that the Settlement Administrator is ordered to provide the compliance declaration regarding claims.  The settlement checks shall be void if not cashed within 6 months after the date of issuance.  In the event a balance of Net Settlement Amount remains as a result of Settlement Class Members' failure to cash checks within the stated expiration period, the Settlement Administrator's inability to locate Settlement Class Members, or for any other reason, said funds shall not revert to ADT but shall be distributed as a *cy pres* award to the National Crime Prevention Council—which is a non-profit organization dedicated to crime prevention—subject to Court approval.

## IX.   ATTORNEYS' FEES, COSTS AND EXPENSES

Plaintiffs' Counsel will make an application to the Court for payment from the Settlement Amount of attorneys' fees of up to one-third of the Settlement Amount plus the costs and expenses that Plaintiffs' Counsel have incurred in the prosecution of the Actions. Said application shall be filed at least 14 days prior to the deadline for submission of Requests for Exclusion and Objections.  The amount of fees, costs and expenses awarded by the Court shall be deducted from the Settlement Amount and paid by the Settlement Administrator as awarded by the Court. Plaintiffs' Counsel's support of the Settlement Agreement as fair and reasonable is not conditioned upon the Court's award of the requested fees and expenses.

## X.   SERVICE AWARDS

Plaintiffs' Counsel will make an application to the Court for Service Awards to each of the Plaintiffs in consideration for their having undertaken the Actions, assisted in the prosecution and otherwise serving as Class Representatives. Said application shall be filed at least 14 days prior to the deadline for submission of Requests for Exclusion and Objections. In consideration of the

relative contributions of the Class Representatives, the amounts to be requested will be an amount up to and no greater than the following:

> Dale Baker: $10,000
> Michael Edenborough:  $10,000
> Janet Cheatham:  $10,000
> Santiago Hernandez:  $2,500
> Patricia Wilson:  $2,500

Plaintiffs' support for the Settlement Agreement as fair and reasonable is not conditioned upon the Court's award of the requested Service Awards.

## XI.  OPT-OUTS AND OBJECTIONS

A.  <u>Right to Exclusion.</u>  Any Settlement Class Member may submit a Request for Exclusion from the Settlement Class postmarked on or before the Opt-Out and Objection Deadline. In order to exercise the right to be excluded, a Settlement Class Member must timely send a written Request for Exclusion to the Settlement Administrator providing: their name and address; their physical signature; the name and number of the Action; and a statement that they wish to be excluded from the Settlement Class. Any person who elects to opt out of the Settlement Class shall: (a) not be bound by any orders or Judgment entered in this Action, (b) not be entitled to relief under this Settlement Agreement, (c) not gain any rights by virtue of this Settlement Agreement, and (d) not be entitled to object to any aspect of this Settlement Agreement.  No person may opt out of the Settlement Class through a so-called "mass" or "class" opt-out.

B.  <u>Right to Object.</u>  Any Settlement Class Member who does not opt out of the Settlement Class may object to the Settlement or any portion of the Settlement Agreement in writing, in person, or through counsel at the Fairness Hearing, at their own expense. The Settlement Class Notice shall specify that any objection to the Settlement, and any papers submitted in support of said objection, shall be considered by the Court at the Fairness Hearing only if, on or before the Opt-Out and Objection Deadline approved by the Court and specified in the Class Notice, the person making the objection files notice of an intention to do so and at the same time (a) files copies of any papers they propose to be submitted at the Fairness Hearing with

the Clerk of the Court, and (b) either (i) files the objection through the Court's ECF system if the objection is from a Settlement Class Member represented by counsel, or (ii) sends copies of such papers by mail, hand, or overnight delivery service to the following:

<u>For Plaintiffs</u>:
Thomas A. Zimmerman, Jr.
Zimmerman Law Office, P.C.
77 W. Washington St., Suite 1220
Chicago, IL 60602

<u>For ADT</u>:
Mark L. Levine
Bartlit Beck Herman Palenchar & Scott LLP
54 W. Hubbard St., Suite 300
Chicago, IL 60654

Any Settlement Class Member who intends to object to this Settlement must include in the written objection: their name and address; their arguments, citations, and evidence supporting the objection (including copies of any documents relied on); a statement that they are a Settlement Class Member; state the date they first entered into their contract with ADT or an ADT dealer for installation of a residential security system that has a wireless peripheral sensor; provide the model of residential security system that is the subject of their contract with ADT or an ADT dealer; their physical signature; and a statement indicating whether they intend to appear at the Fairness Hearing with or without counsel.  Any Settlement Class Member who fails to object in the manner prescribed herein shall be deemed to have waived their objection(s) and be forever barred from making any such objections in the Action or in any other action or proceeding. While the statement described above in this paragraph is *prima facie* evidence that the objector is a member of the Settlement Class, subject to verification based on ADT's records, in the event of inaccuracies or inconsistencies in the statement, either or both Parties may take limited discovery regarding the matter, subject to Court approval.

## XII.    <u>TERMINATION AND PRESERVATION OF RIGHTS</u>

The Settlement Agreement is admissible in the Court solely for the purposes of effectuating and enforcing this Settlement. If the Settlement Agreement does not receive the Final Approval of the Court or Judgment is not entered, any and all rights of the Parties existing prior to

the execution of this Settlement Agreement, including but not limited to Plaintiffs' right to seek and ADT's right to oppose certification of one or more Plaintiff classes in each of the Actions, shall be preserved, and each Action shall proceed in all respects as if the Settlement Agreement and any related orders had not been entered. In such event, none of the terms of the Settlement Agreement or the Parties' prior Memorandum of Understanding (executed January 23, 2017) shall be admissible in any trial or otherwise used against any Party, except to enforce the terms thereof that relate to the Parties' obligations in the event of termination. The portion of the Settlement Amount transferred to the Settlement Administrator shall be returned to ADT, less notice and administrative expenses incurred by the Settlement Administrator (as to which ADT shall have no right of reimbursement from any person, including the Settlement Administrator, Plaintiffs or Plaintiffs' Counsel). If the portion of the Settlement Amount transferred to the Settlement Administrator is not sufficient to pay all of the notice and administrative expenses incurred by the Settlement Administrator, ADT shall separately pay to the Settlement Administrator any additional amounts owing at the time of termination.

## XIII.   MISCELLANEOUS PROVISIONS

A.   Exhibits.   The exhibits to this Settlement Agreement are integral parts of the Parties' agreement and are incorporated by reference as if set forth herein.

B.   Governing Law and Forum.   The Settlement Agreement and all documents necessary to effectuate it shall be governed by the laws of the State of California, without giving effect to choice-of-law principles, and by the *Federal Rules of Civil Procedure*. The Court shall retain jurisdiction over the implementation and enforcement of the terms of the Settlement Agreement, and the Parties submit to the jurisdiction of the Court for those purposes.  If the Court determines it lacks subject matter or personal jurisdiction over a claim or Party with respect to the implementation and enforcement of the terms of the Settlement Agreement, the Parties submit to the jurisdiction of the other courts in which each of the Actions was filed.

C.   Good Faith and Arm's Length Negotiations. The Judgment will contain a statement that throughout the course of the Action the Parties and their counsel at all times complied with the requirements of Rule 11, *Federal Rules of Civil Procedure*.  The Parties agree

that the Settlement Amount and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

D.      <u>Cooperation.</u>  Plaintiffs' Counsel and Defendant's Counsel agree to cooperate fully with one another in seeking Court entry of the orders granting Preliminary Approval and Final Approval of the Settlement Agreement, and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain Final Approval of the Settlement Agreement and the Court's entry of the Judgment.

E.      <u>Authorization to Sign.</u> The persons executing this Settlement Agreement represent that they have been duly authorized to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement in order to effectuate its terms.

F.      <u>Confidentiality.</u> The Parties shall maintain the strict confidentiality of the terms of the Settlement and Settlement Agreement prior to its filing with the Court.

G.      <u>Complete Agreement</u>. This Settlement Agreement with the exhibits hereto constitutes the entire agreement of the Parties with respect to their subject matter and supersedes any prior agreement, whether written or oral, as to that subject matter.  No representations or inducements have been made by any Party hereto concerning the Settlement Agreement other than those contained and memorialized herein.  The provisions of the Settlement Agreement and its exhibits may not be modified or amended, nor may any of their provisions be waived, except by a writing signed by all Parties hereto or their successors-in-interest.

H.      <u>Headings</u>.  The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

I.      <u>No Party Is the Drafter.</u>  None of the parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

J.    **No Admission.**  Nothing in this Settlement Agreement shall be construed in any action or proceeding of any kind whatsoever, civil, criminal, or otherwise, before any court, administrative agency, regulatory body, or any other body or authority, present or future, as an admission by ADT that it has engaged in any conduct or practices that violate any rule or law.

K.    **No Waiver.**  The waiver by any Party of a breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any other breach of this Settlement Agreement.

L.    **Execution in Counterparts.**  This Settlement Agreement may be executed in one or more counterparts, each of which when so executed shall constitute an original, but all of which together shall constitute the same instrument. Fax and PDF copies of signatures shall be treated as originals for all purposes.

M.    **Recitals.**  The Recitals are hereby incorporated into and made a part of this Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto through their fully authorized representatives have agreed to the Settlement Agreement as of March 10, 2017.

---

Thomas A. Zimmerman, Jr.
ZIMMERMAN LAW OFFICES, P.C.
77 West Washington St., Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020

---

Andrew S. Friedman
Francis J. Balint, Jr.
BONNETT, FAIRBOURN, FRIEDMAN &
BALINT, P.C.
2325 East Camelback Road, #300
Phoenix, AZ 85016
Telephone: (602) 274-1100

---

Mark L. Levine
Mark S. Ouweleen
Matthew W. Brewer
Daniel R. McElroy
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60654
Telephone: (312) 494-4400

*Attorneys for The ADT Corporation, and*
*ADT, LLC d/b/a ADT Security Services, Inc.*

J.    <u>No Admission.</u>  Nothing in this Settlement Agreement shall be construed in any action or proceeding of any kind whatsoever, civil, criminal, or otherwise, before any court, administrative agency, regulatory body, or any other body or authority, present or future, as an admission by ADT that it has engaged in any conduct or practices that violate any rule or law.

K.    <u>No Waiver.</u>  The waiver by any Party of a breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any other breach of this Settlement Agreement.

L.    <u>Execution in Counterparts.</u>  This Settlement Agreement may be executed in one or more counterparts, each of which when so executed shall constitute an original, but all of which together shall constitute the same instrument. Fax and PDF copies of signatures shall be treated as originals for all purposes.

M.    <u>Recitals.</u>  The Recitals are hereby incorporated into and made a part of this Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto through their fully authorized representatives have agreed to the Settlement Agreement as of March 10, 2017.

_____
Thomas A. Zimmerman, Jr.
ZIMMERMAN LAW OFFICES, P.C.
77 West Washington St., Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020

_____
Andrew S. Friedman
Francis J. Balint, Jr.
BONNETT, FAIRBOURN, FRIEDMAN &
BALINT, P.C.
2325 East Camelback Road, #300
Phoenix, AZ 85016
Telephone: (602) 274-1100

_____
Mark L. Levine
Mark S. Ouweleen
Matthew W. Brewer
Daniel R. McElroy
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60654
Telephone: (312) 494-4400

***Attorneys for The ADT Corporation, and ADT, LLC d/b/a ADT Security Services, Inc.***

1
2

Mark A. Chavez
CHAVEZ & GERTLER LLP
42 Miller Avenue
Mill Valley, CA 94941
Telephone: (415) 381-5599

3
4
5
6

Jonathan M. Stein
SAXENA WHITE P.A.
5200 Town Center Circle, Suite 601
Boca Raton, FL 33486
Telephone: (561) 394-3399

7
8
9
10

William C. Wright
LAW OFFICES OF WILLIAM C. WRIGHT,
P.A.
301 Clematis Street, Suite 3000
West Palm Beach, Florida 33401
Telephone: (561) 514-0904

11
12
13
14

*Attorneys for Plaintiffs*

15
16
17
18
19
20
21
22
23
24
25
26
27
28

SETTLEMENT AGREEMENT
Case No. 3:16-cv-02233-JST

1

Mark A. Chavez

2   CHAVEZ & GERTLER LLP
    42 Miller Avenue

3   Mill Valley, CA 94941
    Telephone: (415) 381-5599

4

5

6   Jonathan M. Stein
    SAXENA WHITE P.A.

7   5200 Town Center Circle, Suite 601
    Boca Raton, FL 33486

8   Telephone: (561) 394-3399

9

10

    William C. Wright

11  LAW OFFICES OF WILLIAM C. WRIGHT,
    P.A.

12  301 Clematis Street, Suite 3000
    West Palm Beach, Florida 33401

13  Telephone: (561) 514-0904

14
    *Attorneys for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SETTLEMENT AGREEMENT
Case No. 3:16-cv-02233-JST

1

**<u>List of Exhibits to Settlement Agreement</u>**

2

3    Exhibit A:      [Proposed] Preliminary Approval Order

4    Exhibit B-1:   Summary Notice

5    Exhibit B-2:   Detailed Notice

6    Exhibit B-3:   Email Notice

7    Exhibit B-4:   Tweet from ADT

8    Exhibit B-5:   Postcard Notice

9    Exhibit C:      Claim Form

10   Exhibit D:      [Proposed] Judgment

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SETTLEMENT AGREEMENT
Case No. 3:16-cv-02233-JST

1

**Exhibit A**

2
Matthew J. Vanis (SBN: 210706)
mvanis@shb.com

3
Katherine A. Wolf (SBN: 267763)
kwolf@shb.com

4
SHOOK HARDY & BACON
One Montgomery St., Suite 2700

5
San Francisco, California  94104
Tel:  (415) 544-1900

6
Fax:  (415) 391-0281

7
C. Sanders McNew (*pro hac vice*)
mcnew@mcnew.net

8
McNEW P.A.
2385 NW Executive Center Drive, Suite 100

9
Boca Raton, Florida  33431
Tel:  (561) 299-0257

10
Fax:  (561) 299-3705

11
Mark L. Levine (*pro hac vice*)
mark.levine@bartlit-beck.com

12
Mark S. Ouweleen (*pro hac vice*)
mark.ouweleen@bartlit-beck.com

13
Matthew W. Brewer (*pro hac* vice)
matthew.brewer@bartlit-beck.com

14
Daniel R. McElroy (*pro hac vice*)
daniel.mcelroy@bartlit-beck.com

15
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300

16
Chicago, Illinois  60654
Tel:  (312) 494-4400

17
Fax:  (312) 494-4440

18
*Attorneys for Defendant ADT LLC*

19

**UNITED STATES DISTRICT COURT**

20

**NORTHERN DISTRICT OF CALIFORNIA**

21

**SAN FRANCISCO DIVISION**

22

| | |
|---|---|
| MICHAEL EDENBOROUGH, | Case No: 3:16-cv-02233-JST |

23

| | |
|---|---|
| Plaintiff, | **CLASS ACTION** |

24

25
vs.

**[PROPOSED] PRELIMINARY APPROVAL ORDER**

26
ADT, LLC, d/b/a ADT SECURITY
SERVICES, INC. a Florida limited liability
company,

27
Defendant.

28

EXHIBIT A: [PROPOSED] PRELIMINARY APPROVAL ORDER
Case No. 3:16-cv-02233-JST

## [PROPOSED] PRELIMINARY APPROVAL ORDER

The matter before the Court is the motion of Plaintiff Michael Edenborough for preliminary approval of a proposed nationwide class action settlement on behalf of customers of ADT Corporation and ADT, LLC d/b/a ADT Security Services (collectively, "ADT") who allege that ADT failed adequately to disclose, and/or misled them about, alleged security risks posed by ADT residential security systems that utilize wireless peripheral sensors. The proposed Settlement would resolve not only the claims of Plaintiff Edenborough asserted in this action (the "*Edenborough* Action"), but also related claims asserted in four other putative class action lawsuits pending in courts in Illinois, Arizona, and Florida. Those actions are:

> *Baker v. ADT*, United States District Court for the Central District of Illinois, Case No. 15-cv-02038-CSB-EIL, asserting claims on behalf of a putative nationwide class and a subclass of Illinois consumers (the "*Baker* Action");
>
> *Cheatham v. ADT*, United States District Court for the District of Arizona, Case No. 15-cv-02137-DGC (D. Ariz.), asserting claims on behalf of a putative class of Arizona consumers (the "*Cheatham* Action");
>
> *Hernandez v. ADT,* Case No. 50-2016-CA-002944XXXXMB (Cir. Ct. 15th Jud. Cir. Fla.), asserting claims on behalf of a putative class of Florida consumers (the "*Hernandez* Action"); and
>
> *Wilson v. ADT,* Case No. 50-2016-CA-004410XXXXMB (Cir. Ct. 15th Jud. Cir. Fla.), asserting claims on behalf of a putative class of Florida consumers (the "*Wilson* Action").

ADT and the Plaintiff in each of the above cases (the "Parties" and the "Actions," respectively), through their respective counsel, have executed and filed with this Court a Settlement Agreement that resolves all alleged claims on a nationwide basis. The Court, having reviewed the Settlement Agreement, including the exhibits thereto, and considered the briefing submitted in support of the unopposed motion and the arguments of counsel thereon, finds that

the terms of the proposed Settlement are fair, reasonable and adequate to the Plaintiffs and the Settlement Class and that the interests of fairness, consistency, and efficiency are well served by a single, national class settlement. The Court therefore hereby GRANTS the motion and ORDERS as follows.

1.      Except as otherwise stated, this Order incorporates the defined terms set forth in the Settlement Agreement.

2.      For purposes of settlement, and conditioned upon the Settlement Agreement receiving final approval following the Fairness Hearing, the Court conditionally certifies the following Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3): all current and former ADT customers who between November 13, 2009 and August 15, 2016 entered into a contract with ADT or an ADT dealer for installation of a residential security system, or who had ADT or an ADT dealer install a residential security system, that includes at least one wireless peripheral sensor. The Settlement Class does not include those current and former ADT residential customers whose accounts were assumed, purchased or otherwise acquired by ADT from any third-party (other than ADT dealers), including but not limited to any other alarm company. Also excluded from the Settlement Class are: (1) the current and former employees, officers and directors of ADT and its agents, subsidiaries, parents, successors, predecessors, and any entity in which they or their parents have a controlling interest; (2) the judge to whom this case is assigned and the judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

3.      With respect to the Settlement Class, the Court preliminarily finds, solely for purposes of effectuating the Settlement and for no other purpose, that (i) the members of the Settlement Class are so numerous that joinder of all Settlement Class members in the Actions

would be impracticable, as the Settlement Class comprises millions of members; (ii) there are questions of law and fact common to the Settlement Class that predominate over individual questions, including whether ADT knew of the alleged vulnerability in its residential security systems and failed to inform the Settlement Class Members about it; (iii) the claims of the representative Plaintiffs are typical of the claims of the Settlement Class, and they do not have any conflicts of interest with the other Class Members, as all Plaintiffs entered into contracts with ADT or an ADT dealer and had a residential security system with a peripheral wireless sensor installed during the class period; (iv) Plaintiffs and Plaintiffs' Counsel can fairly and adequately represent and protect the interests of the Settlement Class members, as shown by their investigation and services performed to date; and (v) a class action is superior to other available methods for the fair and efficient adjudication of the controversy as it relates to the proposed Settlement, considering the interests of the Settlement Class members in individually controlling the prosecution of separate actions, the extent and nature of any litigation concerning the controversy already commenced by Settlement Class members, the desirability or undesirability of continuing the litigation of these claims in this forum, and the difficulties likely to be encountered in the management of a class action as it relates to the proposed Settlement.

4.     The Settlement, on the terms and conditions set forth in the Settlement Agreement, is preliminarily approved by this Court as being fair, reasonable, adequate, and within the range of possible final judicial approval. The Court finds that the Settlement resulted from arm's-length negotiations conducted in good faith by the Parties, and reflects a settlement that was reached voluntarily after consultation with experienced legal counsel.

5.     The Court provisionally finds that the named Plaintiffs in each of the Actions, Dale Baker, Janet Cheatham, Michael Edenborough, Santiago Hernandez, and Patricia Wilson, are able to fairly and adequately represent the Settlement Class and appoints them as the Class Representatives for the Settlement Class.  Between November 13, 2009 and August 15, 2016, all

of these named Plaintiffs entered into a contract with ADT or an ADT dealer for installation of a residential security system, and had ADT or an ADT dealer install a residential security system, that includes at least one wireless peripheral sensor.

6.     The Court appoints Thomas A. Zimmerman, Jr. of Zimmerman Law Offices, P.C. as Lead Class Counsel for the Settlement Class ("Lead Counsel"), and the following attorneys to serve as legal counsel for the Settlement Class ("Class Counsel"): Francis J. Balint, Jr. of Bonnett, Fairbourn, Friedman & Balint, P.C., Mark A. Chavez of Chavez & Gertler LLP, Jonathan M. Stein of Saxena White P.A., and William C. Wright of The Law Offices of William C. Wright, P.A., with the Court provisionally finding that all of these attorneys are able to fairly and adequately represent the Settlement Class.

7.     The Court approves the Claim Form attached to the Settlement Agreement as Exhibit C.

8.     The Court preliminarily approves the Plan of Allocation of the Net Settlement Amount to Settlement Class Members.

9.     The Court orders ADT to pay $1.5 million of the agreed Settlement Amount to the Settlement Administrator within seven (7) days after entry of this Order.

10.     The Court approves the notice plan set forth in the Settlement Agreement and the forms of notice attached as Exhibits B-1, B-2, B-3, B-4, and B-5 thereto. The Court finds that the Settlement Class Notice provides a sufficiently clear and concise description of the Actions, the Settlement terms, and the rights and responsibilities of the Settlement Class Members, and that the dissemination of the Settlement Class Notice through email, U.S. Mail, website and print media as set forth in the Settlement Agreement is the best means practicable, and is reasonably calculated, to apprise the Settlement Class Members of the litigation and their right to participate in, object to, or exclude themselves from the Settlement.  Accordingly, the Parties are directed to disseminate the Settlement Class Notice pursuant to the terms of the Settlement Agreement.

11.    The Court approves and appoints Dahl Administration as the Settlement Administrator, and directs them to perform the duties set forth in the Settlement Agreement. As set forth in the Settlement Agreement, all costs and expenses incurred by the Settlement Administrator in connection with disseminating the notice and administering the Settlement shall be paid from the Settlement Amount.

12.    The Court will conduct a Fairness Hearing, at which it will consider any objections to the Settlement Agreement and determine whether the Settlement Agreement should be finally approved, on _____, 2017 commencing at 2:00 pm.

13.    Plaintiffs' Counsel shall file their motion for an Award of Attorneys' Fees and Expenses and for Service Awards to the Class Representatives no later than fourteen (14) days prior to the deadline for submission of Requests for Exclusion and Objections. The Court will rule upon the motion at the Fairness Hearing. As set forth in the Settlement Agreement, all such awards shall be paid from the Settlement Amount.

14.    Any Settlement Class Member who intends to object to the fairness, reasonableness, or adequacy of the Settlement, the proposed Attorneys' Fee and Expenses Award, and/or the proposed Service Awards, must deliver to Defendant's Counsel and to Plaintiffs' Counsel, and file with the Court, a written statement of the objections, as well as the specific reasons for each objection, including any legal support the Settlement Class Member wishes to bring to the Court's attention and any evidence or other information the Settlement Class Member believes supports the objections.  Any Settlement Class Member who objects must set forth their full name and current address, include a statement that they are a Settlement Class Member, state the date they first entered into their contract with ADT or an ADT dealer for installation of a residential security system that has a wireless peripheral sensor, provide the model of residential security system that is the subject of their contract with ADT or an ADT dealer, state whether they intend to appear at the Fairness Hearing with or without counsel, and personally sign the

objection. If the Class Member is represented by counsel, the objection shall be filed through the Court's ECF system; otherwise, the objection shall be filed and served by mail, hand, or overnight delivery service. All objections must be filed with the Court and delivered to Defendant's Counsel and Lead Class Counsel not later than 45 days after the date that notice is first disseminated. Objections must be delivered to Defendant's Counsel and Lead Class Counsel at the addresses listed below:

Lead Class Counsel:

Thomas A. Zimmerman, Jr.
Zimmerman Law Office, P.C.
77 W. Washington St., Suite 1220
Chicago, IL 60602

Defendant's Counsel:

Mark L. Levine
Bartlit Beck Herman Palenchar & Scott LLP
54 W. Hubbard St., Suite 300
Chicago, IL 60654

No person will be entitled to be heard at the Fairness Hearing, and no written objections will be received or considered by this Court at the Fairness Hearing, unless all pertinent terms and conditions set forth above and in the Settlement Class Notice have been fully met.  If an objection is overruled, the objecting Settlement Class Member will be bound by the terms of the Settlement and may not exclude him/herself later.  Any person who elects to opt out of the Settlement Class shall not be bound by any orders or Judgment entered in this Action, not be entitled to relief under the Settlement Agreement, not gain any rights by virtue of the Settlement Agreement, and not be entitled to object to any aspect of the Settlement Agreement.  No person may opt out of the Settlement Class through a so-called "mass" or "class" opt-out.

15.     Any Settlement Class Member who wishes to be excluded from the Settlement must fully comply with all pertinent terms and conditions set forth in the Settlement Class Notice. All Requests for Exclusion must be postmarked not later than 45 days after the date that notice is

first disseminated. Settlement Class Members who submit a timely and valid Request for Exclusion will have no rights under the Settlement Agreement, will not share in the distribution of the Net Settlement Amount, and will not be bound by the Settlement Agreement. Any Settlement Class Member who does not submit a timely and valid Request for Exclusion shall be bound by all terms of the Settlement Agreement and the Judgment.

16.     No later than 21 days prior to the Fairness Hearing, the Settlement Administrator shall provide a declaration to Plaintiffs' Counsel and ADT's counsel attesting to the measures taken to provide the Class Notice to the Settlement Class Members and the number of requests for exclusion, if any.  No later than 14 days after the deadline for Settlement Class Members to submit a Claim Form, the Settlement Administrator shall provide a declaration to Plaintiffs' Counsel and ADT's counsel attesting to the number of Claim Forms received and the claimant and payment information for all claims to be paid and disallowed.

17.     In the event this Court does not finally approve the Settlement Agreement or the Judgment is not entered, any and all rights of the Parties existing prior to the execution of the Settlement Agreement, including but not limited to Plaintiffs' right to seek and ADT's right to oppose certification of one or more Plaintiff classes in each of the Actions, shall be preserved, and each Action shall proceed in all respects as if the Settlement Agreement and any related orders had not been entered. In such event, none of the terms of the Settlement Agreement or the Parties' prior Memorandum of Understanding shall be admissible in any trial or otherwise used against any Party, except to enforce the terms thereof that relate to the Parties' obligations in the event of termination. The portion of the Settlement Amount transferred to the Settlement Administrator shall be returned to ADT, less notice and administrative expenses incurred by the Settlement Administrator (as to which ADT shall have no right of reimbursement from any person, including the Settlement Administrator, Plaintiffs or Plaintiffs' Counsel). If the portion of the Settlement Amount transferred to the Settlement Administrator is not sufficient to pay all of the notice and

administrative expenses incurred by the Settlement Administrator, ADT shall separately pay to the Settlement Administrator any additional amounts owing at the time of termination.

18.     For the benefit of the Settlement Class Members and as provided in the Settlement Agreement, this Court retains continuing jurisdiction over the implementation, interpretation, and enforcement of the Settlement Agreement.

19.     The Parties are directed to carry out their obligations under the Settlement Agreement.

### Summary of Applicable Dates

| | | |
|---|---|---|
| 1. | Preliminary Approval Order (PA) entered | (TBD) |
| 2. | ADT to pay $1.5 million of the Settlement Amount to the Settlement Administrator | (PA +7) |
| 3. | ADT to provide Class List of customers to the Settlement Administrator | (PA +10) |
| 4. | Notice to be sent and published, and Settlement Website to be activated (ND) | (PA +30) |
| 5. | Motion for Award of Attorneys' Fees and Expenses and for Service Awards to be filed | (OD -14) |
| 6. | Deadline to Opt Out or Object (OD) | (ND +45) |
| 7. | Deadline for Settlement Administrator to Submit Compliance Declaration re. Notice and Opt-Outs | (FH -21) |
| 8. | Fairness Hearing (FH) | (PA +112) |
| 9. | Deadline to submit a Claim Form (CD) | (ND +100) |
| 10. | Deadline for Settlement Administrator to Submit Compliance Declaration re. Claims | (CD +14) |

**SO ORDERED.**

Dated: _____          _____

                                        Hon. Jon S. Tigar
                                        United States District Court Judge

**<u>Exhibit B-1</u>**

**<u>SUMMARY NOTICE OF CLASS ACTION SETTLEMENT</u>**

**You may be entitled to a cash payment from a class action settlement fund if you have or had an ADT residential security system that included wireless sensors.**

This notice affects you if, between November 13, 2009 and August 15, 2016, you first entered into a contract with ADT or an ADT dealer for installation of a residential security system, or if you had ADT or an ADT dealer install a residential security system, that includes at least one wireless peripheral sensor. Pursuant to a proposed class action settlement, and subject to the approval of the Court, ADT has agreed to pay $16 million to eligible ADT customers, less administrative costs, attorneys' fees and expenses, and representative service awards. You must, however, submit a claim form to claim your share of the proposed settlement fund. The Court authorized publication of this notice in addition to email and other written notice you may receive. This is a summary of the Settlement and your legal rights.

**Please visit <u>www.ADTHomeSecuritySettlement.com</u> or call 1-800-XXX-XXXX to learn more about the Settlement and to obtain the form you need to submit a claim.**

<u>What is the lawsuit about?</u>
Several consumers around the country have sued ADT, alleging that ADT failed to disclose that the wireless peripheral sensors used in its residential security systems can be jammed or disrupted and thus allegedly pose security risks. ADT denies these allegations, denies liability, and asserts numerous defenses. The suit is a class action, meaning that the customers who sued (the "class representatives") asked for relief not only for themselves, but for all similarly situated consumers. Without admitting liability or fault, ADT has agreed to pay $16 million to compromise those claims. The settlement, however, does not release any of your claims for personal injuries or for damage to or loss of property. The parties have entered into a Settlement Agreement which will be presented to the U.S. District Court for the Northern District of California in the action *Edenborough v. ADT LLC,* Case No. 16-cv-02233.

<u>What benefits does the settlement provide?</u>
The settlement funds will be used to pay eligible class members, pay the legal fees incurred by the class representatives (up to 33.3% of the settlement fund) plus expenses, and service awards to each of the class representatives as awarded by the Court, in varying amounts up to a maximum of $10,000. If the Court approves the settlement, ADT customers who meet the eligibility criteria and submit a timely, valid claim form will receive a share of the settlement amount, estimated at $15 and $45 depending on the date of their contracts. These payment amounts may be adjusted up or down depending on the number of Claim Forms received, so as to fully and fairly allocate and pay out the entire net settlement fund to Class Members who submit Claim Forms. None of the money in the settlement fund will revert back to ADT.

<u>Tax Consequences of Settlement.</u>
Any benefits you receive may or may not be the subject of state or federal taxation depending on your individual circumstances. Class Counsel are not tax attorneys and you are advised to seek separate legal advice on matters of taxation.

<u>How can you get a payment?</u>

EXHIBIT B-1: SUMMARY NOTICE OF CLASS ACTION SETTLEMENT
Case No. 3:16-cv-02233-JST

Detailed information about the settlement and the claim submission process is posted on the settlement website and can also be obtained by calling the number below. **You must be a class member and submit a Claim Form on or before _____, 2017 to get a payment.**

What other options do you have?

If you would prefer not to be part of the settlement and not get a payment, you have the right to ask the Court to exclude you. To do so, you must complete and submit a request for exclusion by _____, **2017.** If you want to be part of the settlement but object to its terms, you or your attorney can submit written objections and/or appear at the final approval hearing discussed below. To do so, you must complete and submit your objection by _____, **2017.**

Final Approval Hearing.

The Court will hold a hearing on _____, **2017**, at which time it will consider any objections, decide what fees to award, and decide whether to approve the Settlement.

QUESTIONS? CALL 1-800-XXX-XXXX TOLL FREE, OR VISIT ADTHOMESECURITYSETTLEMENT.COM.

**Exhibit B-2**

<u>United States District Court, Northern District of California</u>

<u>NOTICE OF CLASS ACTION SETTLEMENT REGARDING ADT RESIDENTIAL SECURITY SYSTEMS</u>

*The Court authorized this notice. This is not a solicitation from a lawyer.*

**IF BETWEEN NOVEMBER 13, 2009 AND AUGUST 15, 2016, YOU ENTERED INTO A CONTRACT WITH ADT OR AN ADT DEALER FOR INSTALLATION OF A RESIDENTIAL SECURITY SYSTEM THAT UTILIZES ONE OR MORE WIRELESS SENSORS, THIS NOTICE CONTAINS IMPORTANT INFORMATION THAT MAY PERTAIN TO YOU.  PLEASE READ IT CAREFULLY. YOU COULD GET A PAYMENT FROM A CLASS ACTION SETTLEMENT, BUT YOU NEED TO SUBMIT A FORM TO DO SO.**

| YOUR LEGAL RIGHTS AND OPTIONS WITH THIS SETTLEMENT: | |
| --- | --- |
| **RECEIVE YOUR SHARE OF THE SETTLEMENT** | If you are a member of the Settlement Class, then you will be eligible for a payment if you submit a properly completed Claim Form by _____, **2017**. You will be bound by the Release described in Question 12. |
| **EXCLUDE YOURSELF** | Get no payment. This is the only option that allows you to be part of any other lawsuit against ADT based on the allegations made in this case, other than for claims for personal injury or for damage to or loss of property. The deadline for excluding yourself from the Settlement is _____, **2017.** |
| **OBJECT** | Write to the Court about why you don't like the Settlement.  The deadline for submitting a written objection to the Settlement is _____, **2017.** |
| **GO TO THE FINAL APPROVAL HEARING** | You are not required to attend or speak at the Final Approval Hearing.  If you submit a timely and valid written objection to the Settlement, the Court will consider your objection without any further action on your part.  But, if you wish, you may request permission to speak at the Final Approval Hearing by following the directions in Question 22.  The Final Approval Hearing is presently scheduled for _____, **2017.** |

- ADT CORPORATION and ADT LLC (collectively "ADT") has agreed to pay $16,000,000 in a nationwide settlement of all claims alleged against ADT in *Michael Edenborough v. The ADT Corporation and ADT, LLC d/b/a ADT Security Services*, Case No. 16-cv-02233-JST (USDC ND California) ("the *Edenborough* Action") and several other putative class action cases filed on behalf of ADT customers nationwide ("the Related Actions"). The proposed settlement ("the Settlement") is a compromise of all claims alleging that ADT failed to disclose an alleged vulnerability of the wireless signals in its residential security systems to evasion or jamming by electronic devices.  ADT denies the allegations, denies liability, and asserts numerous defenses. The Settlement avoids the costs and risks from continuing the

lawsuit, pays money to certain current and former ADT customers, and releases ADT from further liability (except for claims of personal injury or for loss of or damage to property).

- The two sides disagree on how much money could have been recovered if ADT customers with wireless residential security systems were to win at trial.

- **Your legal rights are affected whether you act or don't act.**  Please read this notice carefully.

- Your rights and options – **and the procedures and your deadlines to exercise them** – are explained in more detail below.  Please note, however, that this Notice is only a summary of the proposed Settlement.  For the complete terms and conditions of the proposed Settlement, you should read the document called the Settlement Agreement, which was filed with the Court and is available from the Settlement Administrator (**Telephone Number**) or the official Settlement website www.ADTHomeSecuritySettlement.com.

- The Court in charge of this case still must decide whether to approve the proposed Settlement. Payments will not be made until the Court approves the Settlement and any appeals are resolved. Please be patient.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**……………………………………………………….. **PAGE**
1. Why did I get this notice package?
2. What is this lawsuit about?
3. Why is this a class action?
4. Why is there a settlement?

**WHO IS IN THE SETTLEMENT**…………………………………………….. **PAGE**
5. How do I know if I am part of the Settlement?
6. Are there exceptions to being included?
7. What if I am still not sure if I am included?

**THE SETTLEMENT BENEFITS—WHAT YOU GET**……………………………. **PAGE**
8. What does the Settlement provide?
9. How much will my payment be?

**HOW YOU GET A PAYMENT—PARTICIPATING IN THE SETTLEMENT**…………………… **PAGE**
10. How can I get payment?
11. When will I get my payment?
12. What am I giving up to get a payment or stay in the Settlement Class?
13. Tax Consequences of Settlement

**EXCLUDING YOURSELF FROM THE SETTLEMENT**………………………………. **PAGE**
14. How do I get out of the Settlement?
15. If I don't exclude myself, can I sue ADT for the same thing later?
16. If I exclude myself, can I get money from this Settlement?

**THE LAWYERS REPRESENTING YOU**……………………………………. **PAGE**
17. Do I have a lawyer in the case?
18. How will the lawyers be paid?

1

**OBJECTING TO THE SETTLEMENT**…………………………………………………… **PAGE**
    19. How do I tell the Court that I don't like the Settlement?

2

    20. What's the difference between objecting and excluding?

3

**THE COURT'S FINAL APPROVAL HEARING** ………………………………….. **PAGE**
    21. When and where will the Court decide whether to approve the Settlement?

4

    22. Do I have to come to the hearing?
    23. Can I speak at the hearing?

5

**IF YOU DO NOTHING**……………………………………………………………….. **PAGE**
    24. What happens if I do nothing at all?

6

**GETTING MORE INFORMATION**……………………………………………………….. **PAGE**
    25. Are there more details about the Settlement?

7

    26. How do I get more information?

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# BASIC INFORMATION

## 1.   Why did I get this notice?

You received this notice because ADT's records show that you or someone in your household contracted with ADT or an authorized ADT Dealer for the installation of a residential security system between November 13, 2009 and August 15, 2016, inclusive.

The Court required that this notice be sent to you because you have a right to know about a proposed Settlement of several class action lawsuits, and about all your legal options, before the Court decides whether to approve the Settlement. The Court has preliminarily approved the Settlement. If the Court gives the Settlement its final approval, and after any objections and appeals are resolved, the Settlement Administrator appointed by the Court will make the payments that the Settlement allows.  Please check the Settlement Website for updates on the status of the Settlement. This package explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the settlement approval process is the U.S. District Court for the Northern District of California, Hon. Jon S. Tigar (the court in which the *Edenborough* Action is pending). The people who sued ADT in the *Edenborough* Action and in the Related Actions (collectively, "the Actions") are called the Plaintiffs.

## 2.   What is the lawsuit about?

Plaintiffs brought the Actions on behalf of ADT customers who contracted with ADT or with an authorized ADT dealer for installation of a residential security system that operated using at least one wireless peripheral sensor. Plaintiffs allege that ADT failed to disclose to its customers the alleged vulnerability of the wireless sensors to evasion and jamming using electronic devices. ADT denies the allegations, denies liability, and asserts numerous defenses.

## 3.   Why is this a class action?

In a class action, one or more people called Class Representatives (in this case, Dale Baker, Janet Cheatham, Michael Edenborough, Santiago Hernandez, and Patricia Wilson) sue on behalf of people who have similar claims.  The Class Representatives seek to have a single court resolve the issues for all members of the class, except for those who wish to exclude themselves from the class.

## 4.   Why is there a Settlement?

The Court did not decide in favor of either Plaintiffs or ADT.  The proposed Settlement is a compromise of disputed claims. Rather than continuing to argue in court, both sides agreed to participate in mediation before a highly experienced and respected mediator, and through those efforts the Parties were able to agree to the Settlement.

Before entering into the mediation with ADT, the lawyers for the Plaintiffs in all the Actions ("Class Counsel") conducted an extensive investigation of the facts, including formal discovery in

the *Edenborough* Action and the Related Actions, reviewing some 45,000 pages of documents produced by ADT, conducting witness interviews and taking deposition testimony of many key witnesses. Class Counsel also retained expert witnesses to evaluate the various elements of their claims. With the assistance of these experts, Class Counsel analyzed the significant risks associated with the continued litigation of this Action, including risks relating to: (a) prevailing on class certification; (b) overcoming ADT's defenses; (c) calculating class-wide damages (a complex determination further complicated by the lack of readily available alternative protected residential wireless systems); and (d) overcoming significant evidentiary obstacles in connection with anticipated motions for summary judgment by ADT. Based on all these considerations, Class Counsel and the Class Representatives think the Settlement is best for all Settlement Class Members.

## WHO IS IN THE SETTLEMENT

To see if you will get money from this Settlement, you first must determine if you are a Settlement Class Member.

### 5.   How do I know if I am part of the Settlement?

The Settlement Class is comprised of "the current or former ADT customers who between November 13, 2009 and August 15, 2016 entered into a contract with ADT or an ADT dealer for installation of a residential security system, or who had ADT or an ADT dealer install a residential security system, that includes at least one wireless peripheral sensor."

The Settlement Class *does not* include those current and former ADT residential customers whose accounts were assumed, purchased or otherwise acquired by ADT from any third-party other than ADT dealers, including but not limited to any other alarm company.

### 6.   Are there exceptions to being included?

Yes.  Even if you fall within the Settlement Class as described in Question 5, you are not a Settlement Class Member if you are: (1) a current and former employee, officer and director of ADT and its agents, subsidiaries, parents, successors, predecessors, or any entity in which they or their parents have a controlling interest; (2) the judge to whom this case is assigned and the judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representative, successor or assign of any such excluded person.

### 7.   What if I am still not sure if I am included?

If you are still not sure whether you are included, you can ask for free help. You can call the settlement administrator at [Telephone] or visit www.ADTHomeSecuritySettlement.com for more information.

## THE SETTLEMENT BENEFITS—WHAT YOU GET

## 8.   What does the settlement provide?

ADT has agreed to pay $16,000,000.00 ("the Settlement Amount") for the benefit of Settlement Class Members.

**YOU MUST SUBMIT A CLAIM FORM TO PARTICIPATE IN THE SETTLEMENT.** The Claim Form is included in this Notice package. An electronic version of the Claim Form that you can fill out and submit online is also included on the Settlement Website. Only one Claim Form can be submitted per contract with ADT.

The Settlement authorizes Class Counsel to seek an award of attorneys' fees of up to a maximum amount of one-third (33 1/3%) of the Settlement Amount and to request reimbursement of the out-of-pocket litigation expenses they have already paid in connection with the Actions.

In addition, Class Counsel will ask the Court to approve payment to the Settlement Administrator of class notice and settlement administration costs. Furthermore, subject to the Court's approval, Dale Baker, Janet Cheatham, Michael Edenborough, Santiago Hernandez, and Patricia Wilson will request service awards in varying amounts of no more than $10,000 for their efforts in undertaking the litigation, assisting Class Counsel with the prosecution of the Actions, subjecting themselves to discovery and depositions, and serving as Class Representatives.

If approved by the Court, these attorneys' fees, expenses, costs and service awards will be paid from the Settlement Amount.  After payment of the fees, expenses, costs and service payments awarded by the Court, the remainder of the fund ("the Net Settlement Amount") will be divided among Settlement Class Members who submit a timely and valid Claim Form.

## 9.   How much will my payment be?

The Net Settlement Amount will be distributed pursuant to a Plan of Allocation to be approved by the Court. Discovery conducted in the Actions shows that the Settlement Class Members who contracted with ADT or an ADT dealer after July 23, 2104 for installation of a security system with a wireless peripheral sensor have stronger claims than those who contracted before that date because certain information about the alleged vulnerability of the wireless sensors to evasion and jamming was brought to the attention of ADT by an employee at the Oak Ridge National Laboratories on or about that date. Under the proposed Plan of Allocation, therefore, Settlement Class Members who contracted with ADT or an ADT dealer after July 23, 2014 will receive a higher payment than those who contracted with ADT or an ADT dealer before that date, as follows:

> 1.      Each Settlement Class Member who executed a residential security contract with ADT or an ADT dealer for installation of a residential security system with a wireless peripheral sensor, or who had ADT or an ADT dealer install a residential security system with a wireless peripheral sensor, during the period November 13, 2009 through July 23, 2014, inclusive, will be entitled to a payment of $15 from the Net Settlement Amount, subject to any adjustment as described below.

> 2.      Each Settlement Class Member who executed a residential security contract with ADT or an ADT dealer for installation of a residential security system with a wireless peripheral sensor, or who had ADT or an ADT dealer install a residential

security system with a wireless peripheral sensor, during the period July 24, 2014 through August 15, 2016, inclusive, will be entitled to a payment of $45 from the Net Settlement Amount, subject to any adjustment as described below.

**PLEASE NOTE:** the above-specified payment amounts may be adjusted up or down depending on the number of Claim Forms received, so as to fully and fairly allocate and pay out the entire Net Settlement Amount to Settlement Class Members who submit Claim Forms. None of the money in the Settlement Amount will revert back to ADT.

**PLEASE NOTE:** the determination of whether you executed a residential security contract with ADT or an ADT dealer for installation of a residential security system, or whether you had ADT or an ADT dealer install a residential security system, during the period November 13, 2009 through July 23, 2014, or during the period July 24, 2014 through August 15, 2016, is based on the date that you entered into your **first** residential security contract with ADT or an ADT dealer for installation of a residential security system with a wireless peripheral sensor, or the date that you **first** had ADT or an ADT dealer install a residential security system with a wireless peripheral sensor, regardless of whether you subsequently renewed that contract, entered into any subsequent contracts, or had any residential security system or security system components subsequently installed.

## HOW YOU GET A PAYMENT—PARTICIPATING IN THE SETTLEMENT

### 10. How can I get a payment?

To qualify for a payment, you do not need to do anything other than submit a Claim Form, either by mail or online by _____, **2017**, confirming your status as a Settlement Class Member (see responses to Question Nos. 5 & 6 above). If the Court approves the Settlement, you will be sent money by check from the Settlement Administrator to the address specified in your Claim Form. Only one check will be issued per ADT account.

If you are a member of the Settlement Class and do not submit a Request for Exclusion, but you fail to submit a timely and valid Claim Form, you will not receive any money from the Settlement, but you will still be bound by all of the terms of the Settlement Agreement, including the Judgment and the release of Plaintiffs' Released Claims.

### 11. When will I get my payment?

The Court will hold a hearing on _____, **2017** to decide whether to approve the Settlement. If the Court approves the Settlement, there may be one or more appeals. It's always uncertain whether these appeals can be resolved, and resolving them may take time, often more than a year. Once any and all appeals are resolved, the Settlement Administrator can distribute the Net Settlement Amount.

### 12. What am I giving up to get a payment or stay in the Settlement Class?

Unless you exclude yourself, you will stay in the Settlement Class, and all of the Court's orders will apply to you and legally bind you.  That means that you cannot sue, continue to sue, or be part of any other lawsuit against ADT about the legal issues in any of the Actions. If you stay in

the Settlement Class, you will release and forever discharge any and all direct, individual, or class claims, rights or causes of action or liabilities whatsoever, whether known or unknown, whether accrued or unaccrued, and whether arising under federal, state, local, statutory, common or any other law, rule, or regulation that were or could have been asserted against ADT and its present and former affiliates, agents, officers, directors, employees, parents, subsidiaries, predecessors, successors and assigns, by Plaintiffs or any other Settlement Class Members in any of the Actions, predicated upon the facts alleged in the Actions. *Your released claims do not, however, include any claims for personal injuries or for damage to or loss of property.* For example, if you suffered a burglary that resulted in damage to your house or belongings, or you sustained personal injuries from the break-in, you can participate in this Settlement and still pursue any claims against ADT for your claimed injuries and property damage as if this Settlement did not exist.

## 13. Tax Consequences of Settlement

Any benefits you receive may or may not be the subject of state or federal taxation depending on your individual circumstances. Class Counsel are not tax attorneys and you are advised to seek separate legal advice on matters of taxation.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

## 14. How do I get out of the Settlement?

To exclude yourself from the Settlement, you must send the Settlement Administrator a letter by mail saying that you want to be excluded from the Settlement. Your request for exclusion must include all of the following:

    (a) Your name and address;
    (b) Your physical signature;
    (c) The name and number of the *Edenborough* Action (that is, "*Edenborough v. ADT*, Case No. 15-cv-02038-CSB-DGB"); and
    (d) A statement that you wish to be excluded from the Settlement Class.

You must mail your request for exclusion postmarked no later than _____, 2017 to:

[Settlement Administrator]
[Street Address]
[City, ST]

If you ask to be excluded, you will not get any Settlement payment, you cannot object to the Settlement and you cannot ask to speak at the Final Approval Hearing. You will not be legally bound by anything that happens in the Actions. Depending upon the applicable statute of limitations, you may be able to sue (or continue to sue) ADT on you own regarding the issues raised in the Actions.

## 15. If I don't exclude myself, can I sue ADT for the same thing later?

No. Unless you exclude yourself, you give up any right to sue ADT for the claims that this Settlement resolves. ***Your released claims do not, however, include any claims for personal injuries or for damage to or loss of property.*** If you have a pending lawsuit against ADT (or any of its related parties as described in answer to Question No. 12 above), speak to your lawyer in that case immediately. You may have to exclude yourself from the Settlement Class to continue your own lawsuit against ADT or any of its related parties. Remember, the exclusion deadline is _____, **2017**.

### 16. If I exclude myself, can I get money from this Settlement?

No. If you exclude yourself, you will not receive any money from the Settlement. But, you are free to sue, continue to sue, or be part of a different lawsuit against ADT.

## THE LAWYERS REPRESENTING YOU

### 17. Do I have a lawyer in this case?

The Court has appointed Thomas A. Zimmerman, Jr. of Zimmerman Law Offices, P.C. as Lead Class Counsel for the Settlement Class ("Lead Counsel"), and the following attorneys to serve as legal counsel for the Settlement Class ("Class Counsel"): Francis J. Balint, Jr. of Bonnett, Fairbourn, Friedman & Balint, P.C., Mark A. Chavez of Chavez & Gertler LLP, Jonathan M. Stein of Saxena White P.A., and William C. Wright of The Law Offices of William C. Wright, P.A.

You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 18. How will the lawyers be paid?

Plaintiffs' Counsel will ask the Court to approve payment of attorneys' fees in an amount not to exceed one-third (33⅓%) of the Settlement Amount, plus reimbursement of their litigation expenses. In addition, Dale Baker, Janet Cheatham, Michael Edenborough, Santiago Hernandez and Patricia Wilson will ask the court to approve service awards in varying amounts of no more than $10,000 for their services as Class Representatives. The attorneys' fees would pay Class Counsel for investigating the facts, litigating the case and negotiating the Settlement. The Court may award less than the amounts requested. The amounts paid for attorneys' fees, litigation expenses and service awards will be paid out of the Settlement Amount and will reduce the $16,000,000.00 available for Settlement Class Members. In addition, the costs for providing notice to the Settlement Class Members and the costs to administer the Settlement will also reduce the fund available for Settlement Class Members.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the Settlement or some part of it.

### 19. How do I tell the Court that I don't like the Settlement?

If you are a Settlement Class Member, you can object to the Settlement if you don't like any part of it and tell the Court why you feel the Settlement should not be approved. The Court will consider your views. To object, you must mail or your lawyer must file a document with the Court stating that you object to the Settlement with ADT. Your objection must include:

- Case name (*Edenborough v. ADT LLC*);
- Case number (Case No. 16-cv-02233-JST);
- Your name, address, and signature;
- A statement that you are a Settlement Class Member;
- The date that you first entered into your contract with ADT or an ADT dealer for installation of a residential security system with a wireless peripheral sensor;
- The model number of the residential security system that is the subject of your contract with ADT or an ADT dealer; and
- The reasons that you object to the proposed Settlement, along with any supporting documents.

In addition to you mailing or your attorney filing your objection with the Court, the objection must also be mailed to each of the following addresses, postmarked no later than **June 13, 2017**:

| COURT | LEAD CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of the Court U.S. District Court for the Northern District of California 450 Golden Gate Ave. 201 S. Vine St. San Francisco, CA 94102 | Thomas A. Zimmerman, Jr. Zimmerman Law Offices, P.C. 77 W. Washington St., Suite 1220 Chicago, IL 60602 | Mark L. Levine Bartlit Beck Herman   Palenchar & Scott LLP 54 W. Hubbard St., Suite 300 Chicago, IL 60654 |

### 20. What's the difference between objecting and excluding?

Objecting is simply telling the Court that you do not like something about the Settlement. You can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FINAL APPROVAL HEARING

The Court has preliminarily approved the Settlement. The Court will hold a Final Approval Hearing to decide whether to give final approval to the Settlement. Although you don't have to, you may attend and, if you filed a timely, written objection, you can ask to speak at the hearing.

### 21. When and where will the Court decide whether to approve the Settlement?

The Court will hold the Final Approval Hearing at 2:00 pm on _____, 2017 at the U.S. District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, CA 94102. At this hearing, the Court will consider whether the Settlement with ADT is fair, reasonable, adequate and in the best interests of the Settlement Class. The Court will also consider whether to approve the proposed Plan of Allocation of the Settlement proceeds to the Settlement Class. The Court will also consider (a) the application by Class Counsel for payment of attorneys'

fees and reimbursement of expenses out of the Settlement Fund created through their efforts, and (b) the application for the payment of Service Awards to the Class Representatives.

If there are any timely objections to the Settlement, the Court will consider them. The Court will listen to people who have asked to speak at the hearing. After the hearing, the Court will decide whether to approve the Settlement and how much to pay Class Counsel and the Class Representatives. We do not know how long these decisions will take.

The Final Approval Hearing may be continued or adjourned by the Court without further notice to the Settlement Class.  Settlement Class Members who may attend the Final Approval Hearing can check the Settlement Website for updates.

### 22. Do I have to come to the hearing?

No. Class Counsel will answer questions the Court may have.  But you are welcome to attend at your own expense. If you send an objection, you don't have to come to the hearing to talk about it. As long as you mailed your written objection on time, the Court will consider it. If you hired your own lawyer, you may have to pay your own lawyer to attend, but it's not necessary that he or she do so.

### 23. Can I speak at the hearing?

You cannot speak at the hearing if you excluded yourself from the Settlement.  If you filed a timely, written objection, you (or your own lawyer) may appear and speak at the Final Approval Hearing but, to do so, a notice of your intention to appear must be filed with the Court.

## IF YOU DO NOTHING

### 24. What happens if I do nothing at all?

If you do nothing, then, if you are eligible and not excluded (as described in Questions 5 and 6 above), you'll automatically be part of the Settlement Class and (if you send in the Claim Form) be sent money from this Settlement based on the Plan of Allocation if the Settlement is approved by the Court. You will also be bound by the Judgment approving the Settlement and cannot start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against ADT about the issues in the Actions, except that you will still be able to pursue your claims against ADT for any claimed injuries or property damage that you may have sustained.

## GETTING MORE INFORMATION

### 25. Are there more details about the Settlement?

This notice summarizes the proposed Settlement. More details are in the Settlement Agreement. If you wish to review the Settlement Agreement, you may do so by visiting www.ADTHomeSecuritySettlement.com.

### 26. How do I get more information?

You can call the Settlement Administrator at [telephone number], write to the Settlement Administrator at [address] or visit the Settlement Website at www.ADTHomeSecuritySettlement.com, where you will find answers to common questions about the Settlement, plus other information to help you determine whether you are member of the Settlement Class and whether you are eligible for payment. The most important documents in this case can be viewed, free of charge, on the Settlement website.  You can also call Lead Class Counsel at (312) 440-0020, email Lead Class Counsel at tom@attorneyzim.com, write to Lead Class Counsel at 77 W. Washington St., Suite 1220, Chicago, IL 60602, or visit Lead Class Counsel's website at www.attorneyzim.com.

If you wish to review all of the pleadings and other records in the *Edenborough* Action, including the Settlement Agreement, they may be examined online on PACER at www.pacer.gov/findcase.html. After arriving at the website, click the 'Search the PACER Case Locator' link, then follow the directions and enter **16-cv-02233** as the case number and click 'SEARCH.' Images of every document filed in the case may be viewed at a minimal charge. You may also view images of every document filed in the case free of charge by using one of the computer terminal kiosks available at the U.S. District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, CA 94102.

Date: _____, 2017.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit B-3**

**EMAILED SUMMARY NOTICE OF CLASS ACTION SETTLEMENT**

**You may be entitled to a cash payment from a class action settlement fund if you have or had an ADT residential security system that included wireless sensors.**

This notice affects you if, between November 13, 2009 and August 15, 2016, you first entered into a contract with ADT or an ADT dealer for installation of a residential security system, or if you had ADT or an ADT dealer install a residential security system, that uses at least one wireless peripheral sensor. Pursuant to a proposed class action settlement, and subject to the approval of the Court, ADT has agreed to pay $16 million to eligible ADT customers, less administrative costs, attorneys' fees and expenses, and representative service awards. You must, however, submit a claim form to claim your share of the proposed settlement fund. The Court authorized publication of this notice in addition to email and other written notice you may receive. This is a summary of the Settlement and your legal rights.

**Please visit www.ADTHomeSecuritySettlement.com or call 1-800-XXX-XXXX to learn more about the Settlement and to obtain the form you need to submit a claim.**

What is the lawsuit about?
Several consumers around the country have sued ADT, alleging that ADT failed to disclose that the wireless peripheral sensors used in its residential security systems can allegedly be jammed or disrupted and thus pose security risks. ADT denies the allegations, denies liability, and asserts numerous defenses. The suit is a class action, meaning that the customers who sued (the "class representatives") asked for relief not only for themselves, but for all similarly situated consumers. Without admitting liability or fault, ADT has agreed to pay $16 million to compromise those claims. The settlement, however, does not release any of your claims for personal injuries or for damage to or loss of property. The parties have entered into a Settlement Agreement which will be presented to the U.S. District Court for the Northern District of California in the action *Edenborough v. ADT Corporation,* Case No. 16-cv-02233.

What benefits does the settlement provide?
The settlement funds will be used to pay eligible class members, pay the legal fees incurred by the class representatives (up to 33.3% of the settlement fund) plus expenses and service awards to each of the class representatives, as awarded by the Court, in varying amounts up to a maximum of $10,000. If the Court approves the settlement, ADT customers who meet the eligibility criteria and submit a timely, valid claim form will receive a share of the settlement amount, estimated at $15 and $45 depending on the date of their contracts. These payment amounts may be adjusted up or down depending on the number of Claim Forms received, so as to fully and fairly allocate and pay out the entire net settlement fund to Class Members who submit Claim Forms. None of the money in the settlement fund will revert back to ADT.

Tax Consequences of Settlement

Any benefits you receive may or may not be the subject of state or federal taxation depending on your individual circumstances. Class Counsel are not tax attorneys and you are advised to seek separate legal advice on matters of taxation.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

How can you get a payment?

Detailed information about the settlement and the claim submission process is posted on the settlement website and can also be obtained by calling the number below. **You must be a class member and submit a Claim Form on or before _____, 2017 to get a payment.** You can download a Claim Form from the settlement website and submit it by mail, or you can fill-out and submit your Claim Form online by clicking **www.ADTHomeSecuritySettlement.com/ClaimForm**.

What other options do you have?

If you would prefer not to be part of the settlement and not get a payment, you have the right to ask the Court to exclude you. To do so, you must complete and submit a request for exclusion by _____, 2017. If you want to be part of the settlement but object to its terms, you or your attorney can submit written objections and/or appear at the final approval hearing discussed below. To do so, you must complete and submit your objection by _____, 2017.

Final Approval Hearing.

The Court will hold a hearing on _____, 2017, at which time it will consider any objections, decide what fees to award, and decide whether to approve the Settlement.

QUESTIONS? CALL 1-800-XXX-XXXX TOLL FREE, OR VISIT
WWW.ADTHOMESECURITYSETTLEMENT.COM.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**Exhibit B-4**</u>

**Tweet to be sent from ADT's Twitter Account**

ADT settles class action for home security systems. See if you qualify to receive money at ADTHomeSecuritySettlement.com                                    #ADTSettlement

**Exhibit B-5**

<u>LEGAL NOTICE</u>

**If you had an ADT residential security system that included a wireless peripheral sensor installed at any time from November 13, 2009 to and including August 15, 2016, you may be entitled to a cash payment from a class action settlement.**

A federal district court authorized this notice. This is <u>not</u> a solicitation from a lawyer.

**1-800-___-____**

**www.ADTHomeSecuritySettlement.com**



*Baker v. ADT*
*Settlement Administrator*
P.O. Box _____
_____, __ ____-____

US Postage
Paid

«Barcode»

Postal Service: Please do not mark barcode

Claim #: XXX- «ClaimID» - «MailRec»
«First1» «Last1»
«co»
«Addr1» «Addr2»
«City», «St» «Zip»

A proposed settlement has been reached in a class action lawsuit alleging that ADT failed to disclose that the wireless peripheral sensors used in its residential security systems can be jammed or disrupted and thus allegedly pose security risks. ADT denies these allegations, denies liability, and asserts numerous defenses. The Court has not decided who is right.

**Who is included?** ADT's records show that you may be included in the settlement as a "Class Member". Class Members include everyone in the U.S. who, between November 13, 2009 and August 15, 2016, first entered into a contract with ADT or an ADT dealer for installation of a residential security system, or who had ADT or an ADT dealer install a residential security system during that time period, that includes at least one wireless peripheral sensor.

**What does the Settlement provide?** ADT has agreed to pay $16,000,000 into a settlement fund. After deducting the costs of settlement notice, claims administration, and Court-approved attorneys' fees, costs, and expenses, and representative plaintiff service awards, Class Members who submit a valid Claim Form will receive a share of the net settlement fund, estimated at $15 and $45 depending on the date of their contracts. These payment amounts may be adjusted up or down depending on the number of Claim Forms received, so as to fully and fairly allocate and pay out the entire net settlement fund to Class Members who submit Claim Forms. None of the money in the settlement fund will revert back to ADT. The settlement does not release any of your claims for personal injuries or for damage to or loss of property.

**Tax Consequences of Settlement.** Any benefits you receive may or may not be the subject of state or federal taxation depending on your individual circumstances. Class Counsel are not tax attorneys and you are advised to seek separate legal advice on matters of taxation. **How do I get a payment?** Simply tear-off, complete and mail the attached Claim Form, or you can go to www.ADTHomeSecuritySettlement.com and file a claim online or download, print, complete, and mail a Claim Form to the Settlement Administrator. Claim Forms are also available by calling 1-___-___-_____. Claim Forms must be submitted online or mailed by _____, **2017**. If you file a valid claim and do not exclude yourself from the settlement, you will receive your share from the settlement. If you exclude yourself from the settlement, you will not receive your share from the settlement.

**What are my other options?** If you do not want to be legally bound by this settlement, you must exclude yourself by _____, 2017. Unless you exclude yourself from the settlement, you will not be able to sue ADT for any claim made in this lawsuit or released by the Settlement Agreement. If you do not exclude yourself from the settlement, you may object and notify the Court that you or your lawyer intends to appear at the Court's fairness hearing. Objections are due _____, 2017. This notice is a summary. For more information, including the Detailed Notice and Settlement Agreement, call 1-___-___-_____ or go to www.ADTHomeSecuritySettlement.com.

**The Court's Fairness Hearing.** The U.S. District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, CA 94102, will hold a hearing in this case (*Edenborough v. ADT LLC*, No. 16-cv-02233) on _____, 2017, at 2:00 p.m. At the fairness hearing the Court will decide whether to approve: (1) the settlement; and (2) Class Counsel's request for attorneys' fees of up to one-third of the settlement fund, reimbursement of costs and expenses, and service awards of varying amounts of no more than $10,000 to each of the representative plaintiffs. You may appear at the hearing, but you do not have to. You also may hire your own attorney, at your own expense, to appear or speak for you at the hearing.

### CLAIM FORM

Claim #: XXX- «ClaimID» - «MailRec»
«First1» «Last1»
«Addr1» «Addr2»
«City», «St» «Zip»

Between November 13, 2009 and August 15, 2016, I either (a) entered into a contract with ADT or an ADT dealer for installation of a residential security system, or (b) had ADT or an ADT dealer install a residential security system.

☐ By checking this box, I certify to the best of my knowledge, information, and belief that my residential security system included at least one wireless peripheral sensor.

I first signed my contract, or the residential security system was first installed:

☐ During the period November 13, 2009 through July 23, 2014;
OR
☐ During the period July 24, 2014 through August 15, 2016.

**Please Note:** The determination of whether you executed a residential security contract with ADT or an ADT dealer for installation of a residential security system, or whether you had ADT or an ADT dealer install a residential security system, during the period November 13, 2009 through July 23, 2014, or during the period July 24, 2014 through August 15, 2016, is based on the date that you entered into your **first** residential security contract with ADT or an ADT dealer for installation of a residential security system with a wireless peripheral sensor, or the date that you **first** had ADT or an ADT dealer install a residential security system with a wireless peripheral sensor, regardless of whether you subsequently renewed that contract, entered into any subsequent contracts, or had any residential security system or security system components subsequently installed.

Signature: _____     Signed on: _____
                                                              [INSERT DATE]
**YOUR CLAIM FORM MUST BE POSTMARKED ON OR BEFORE _____, 2017.**

*Back of Tear-Off Claim Form*

Claim #: XXX- «ClaimID» - «MailRec»
«First1» «Last1»
«co»
«Addr1» «Addr2»
«City», «St» «Zip»

Baker v. ADT Settlement Administrator

P.O. Box XXXXX

City, State Zip

**EXHIBIT C**

**CLAIM FORM**

Between November 13, 2009 and August 15, 2016, I, _____, either (a) entered into a contract with ADT or an ADT dealer for installation of a residential security system, or (b) had ADT or an ADT dealer install a residential security system.

☐ By checking this box, I certify to the best of my knowledge, information, and belief that my residential security system included at least one wireless sensor.

I first signed my contract, or the residential security system was first installed:

☐ During the period November 13, 2009 through July 23, 2014;

OR

☐ During the period July 24, 2014 through August 15, 2016.

**Please Note:** the determination of whether you executed a residential security contract with ADT or an ADT dealer for installation of a residential security system, or whether you had ADT or an ADT dealer install a residential security system, during the period November 13, 2009 through July 23, 2014, or during the period July 24, 2014 through August 15, 2016, is based on the date that you entered into your **first** residential security contract with ADT or an ADT dealer for installation of a residential security system with a wireless peripheral sensor, or the date that you **first** had ADT or an ADT dealer install a residential security system with a wireless peripheral sensor, regardless of whether you subsequently renewed that contract, entered into any subsequent contracts, or had any residential security system or security system components subsequently installed.

The foregoing is true and correct to the best of my knowledge, information and belief.

Date: _____

Printed Name:                                          Signature:

_____                _____

Current Address:                                      Telephone No.:

_____                _____

_____                Current Email (optional):

_____                _____

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit D**

Matthew J. Vanis (SBN: 210706)
mvanis@shb.com
Katherine A. Wolf (SBN: 267763)
kwolf@shb.com
SHOOK HARDY & BACON
One Montgomery St., Suite 2700
San Francisco, California  94104
Tel:  (415) 544-1900
Fax:  (415) 391-0281

C. Sanders McNew (*pro hac vice*)
mcnew@mcnew.net
McNEW P.A.
2385 NW Executive Center Drive, Suite 100
Boca Raton, Florida  33431
Tel:  (561) 299-0257
Fax:  (561) 299-3705

Mark L. Levine (*pro hac vice*)
mark.levine@bartlit-beck.com
Mark S. Ouweleen (*pro hac vice*)
mark.ouweleen@bartlit-beck.com
Matthew W. Brewer (*pro hac* vice)
matthew.brewer@bartlit-beck.com
Daniel R. McElroy (*pro hac vice*)
daniel.mcelroy@bartlit-beck.com
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60654
Tel:  (312) 494-4400
Fax:  (312) 494-4440

*Attorneys for Defendant ADT LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL EDENBOROUGH,<br><br>         Plaintiff,<br><br>         vs.<br><br>ADT, LLC, d/b/a ADT SECURITY<br>SERVICES, INC. a Florida limited liability<br>company,<br><br>         Defendant. | Case No: 3:16-cv-02233-JST<br><br>**CLASS ACTION**<br><br>**[PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE** |

This Court granted preliminary approval of the nationwide class action settlement between Plaintiffs and Class Representatives (as defined in the Settlement Agreement) in the Actions[1] and Defendants The ADT Corporation and ADT, LLC d/b/a ADT Security Services ("ADT") on _____, 2017. The Settlement resolves Plaintiff's disputed claim that ADT failed to disclose to its customers the alleged vulnerability of the wireless peripheral sensors used in its residential security systems to evasion and jamming using electronic devices, and also resolves substantially identical claims asserted in four other putative statewide class actions pending in other jurisdictions. Subsequent to the entry of the Preliminary Approval Order and in accordance therewith, Class Counsel filed a Motion for Attorneys' Fees and Expenses and for Service Awards to the Class Representatives and a Motion for Final Approval evidencing that the previously-approved form and means of notice have been given and that all of the requirements of the Preliminary Approval Order have been met. A Fairness Hearing was held on _____, 2017.

Notice of the Motion for Final Approval, the Fairness Hearing, and the Motion for Attorneys' Fees and Expenses and for Service Awards having been given pursuant to the Settlement Agreement and Preliminary Approval Order; all persons present or represented at the hearing having been given an opportunity to be heard; and the Court having fully considered the

---

[1] The other affected actions are:

*Baker v. ADT*, United States District Court for the Central District of Illinois, Case No. 15-cv-02038-CSB-EIL, asserting claims on behalf of a putative nationwide class and a subclass of Illinois consumers (the "*Baker* Action");

*Cheatham v. ADT*, United States District Court for the District of Arizona, Case No. 15-cv-02137-DGC (D. Ariz.), asserting claims on behalf of a putative class of Arizona consumers (the "*Cheatham* Action");

*Hernandez v. ADT,* Case No. 50-2016-CA-002944XXXXMB (Cir. Ct. 15th Jud. Cir. Fla.), asserting claims on behalf of a putative class of Florida consumers (the "*Hernandez* Action"); and

*Wilson v. ADT,* Case No. 50-2016-CA-004410XXXXMB (Cir. Ct. 15th Jud. Cir. Fla.), asserting claims on behalf of a putative class of Florida consumers (the "*Wilson* Action").

This action and the above cases are referred to collectively hereinafter as the "Actions."

briefs, arguments, evidence and declarations submitted, the Court hereby ORDERS, ADJUDGES AND DECREES as follows.

1.    This Final Order and Judgment incorporates the Settlement Agreement, and except as otherwise stated, the capitalized terms used in this Order shall have the same meanings as defined therein.

2.    This Court has jurisdiction over the subject matter of this action and all parties to this action, including all members of the Settlement Class as defined herein.

3.    For purposes of settlement only, the following Settlement Class, which was provisionally certified in the Preliminary Approval Order, is hereby certified pursuant to Federal Rule of Civil Procedure 23(b)(3):

> All current and former ADT customers who between November 13, 2009 and August 15, 2016 entered into a contract with ADT or an ADT dealer for installation of a residential security system, or who had ADT or an ADT dealer install a residential security system, that includes at least one wireless peripheral sensor.

The Settlement Class does not include those current and former ADT residential customers whose accounts were assumed, purchased or otherwise acquired by ADT from any third-party (other than ADT dealers), including but not limited to any other alarm company. Also excluded from the Settlement Class are: (1) the current and former employees, officers and directors of ADT and its agents, subsidiaries, parents, successors, predecessors, and any entity in which they or their parents have a controlling interest; (2) the judge to whom this case is assigned and the judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

4.    The Court finds on the record before it that the Settlement Class meets the requirements for class certification for settlement purposes:

(i) the members of the Settlement Class are so numerous that joinder of all Settlement Class members in a single action would be impracticable, as the Settlement Class comprises millions of members;

(ii) there are questions of law and fact common to the Settlement Class that predominate over individual questions, including whether ADT knew of the alleged vulnerability in its residential security systems and failed to inform the Settlement Class Members about it;

(iii) the claims of the named Plaintiffs in each of the Actions, Dale Baker, Janet Cheatham, Michael Edenborough, Santiago Hernandez, and Patricia Wilson, who were conditionally appointed the Class Representatives, are typical of the claims of the Settlement Class, and the Class Representatives do not have any conflicts of interest with the other Settlement Class Members, as all Plaintiffs entered into contracts with ADT or an ADT dealer and had a residential security system with a wireless sensor installed during the class period;

(iv) the Class Representatives and their counsel have fairly and adequately represented the interests of the Settlement Class Members, as shown by their investigation and services performed to date; and

(v) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. No management issues have arisen that might affect the implementation of the Settlement Agreement.

5.     The Court has reviewed the declarations filed by ADT and the Settlement Administrator regarding the notice that was given to the Settlement Class and finds that the contents of the notice and the manner in which notice was provided was the best notice practicable under the circumstances. The notice provided due and sufficient notice to the Settlement Class Members of (i) the pendency and nature of the Actions; (ii) the certification of the Settlement Class; (iii) the claims, issues and defenses asserted; (iv) the terms of the Settlement

Agreement; (v) the right of persons within the Settlement Class to exclude themselves from the Settlement and the time and manner for doing so; (vi) the right to object to the Settlement and appear with or without an attorney and the time and manner for doing so; (vii) the requirement of completing a Claim Form and the time and manner for doing so; (viii) the binding effect of any judgment on persons within the Settlement Class; (ix) that Class Counsel would seek an award of attorneys' fees, costs and expenses through a motion that would be made available on the Settlement Website and the ability of Settlement Class Members to object thereto; (x) the request for Service Awards for the Class Representatives and the ability of Settlement Class Members to object thereto; and (xi) the date and time of the Fairness Hearing.

6.      The Court finds that the Settlement, on the terms and conditions set forth in the Settlement Agreement, is fair, reasonable, adequate, and in the best interests of the Settlement Class, as provided in Rule 23(e) of the Federal Rules of Civil Procedure. Specifically, the Court finds that final approval is warranted in light of the following factors:

(i)      the strength of Plaintiffs' case compared to the amount of Defendants' settlement offer;

(ii)     an assessment of the likely complexity, length, and expense of the litigation;

(iii)    an evaluation of the amount of opposition to settlement among affected parties;

(iv)     the opinion of competent counsel; and

(v)      the stage of the proceedings and the amount of discovery completed at the time of settlement.

7.      The Court finds that the Settlement is the product of voluntary, arm's-length negotiations conducted in good faith by the Parties, under the auspices and supervision of an experienced and independent mediator (Hon. Edward A. Infante, Ret.), after thorough factual and legal investigation and after consultation with experienced legal counsel. There is no evidence of fraud or collusion.

8.      The Court finds that Lead Class Counsel: Thomas A. Zimmerman, Jr. of Zimmerman Law Offices, P.C., and Class Counsel: Francis J. Balint, Jr. of Bonnett, Fairbourn, Friedman & Balint, P.C., Mark A. Chavez of Chavez & Gertler LLP, Jonathan M. Stein of Saxena White P.A., and William C. Wright of The Law Offices of William C. Wright, P.A., have well-represented the Plaintiffs and Settlement Class and that payment to Plaintiffs' Counsel, collectively, of $_____ in attorneys' fees and an additional $_____ as reimbursement for their costs and expenses in connection with the Actions is fair and reasonable, and the Court orders that payment of those amounts shall be made to Plaintiffs' Counsel in accordance with the terms of the Settlement Agreement.  The Court finds that each of the Class Representatives has fairly and adequately represented the interests of the Settlement Class and finds that the following Service Awards are reasonable and appropriate considering their respective time and efforts devoted to prosecuting the Actions:

Dale Baker: $_____
Michael Edenborough:  $_____
Janet Cheatham:  $_____
Santiago Hernandez:  $_____
Patricia Wilson:  $_____

Payment of those amounts shall be made in accordance with the terms of the Settlement Agreement.

9.      The Court approves the Plan of Allocation set forth in the Settlement Agreement. Plaintiffs' counsel is directed to file a final accounting with the Court by _____, setting forth a summary of the payments from the Settlement Amount to the Settlement Administrator (for class notice and settlement administration), Plaintiffs' Counsel (for fees, costs and expenses), and the Settlement Class Members.

10.      Due and adequate notice having been given to all persons within the Settlement Class, it is hereby determined that the Class Representatives and each and every person within the Settlement Class, except those who filed timely and valid Requests for Exclusion as set forth in

Appendix 1 hereto, are bound by the Settlement Agreement and this Final Judgment and Order, and are hereby permanently barred and enjoined from commencing or prosecuting any action or proceeding in any court or tribunal asserting any of the claims released under the Settlement Agreement, either directly, representatively, derivatively or in any other capacity, against ADT. Annexed hereto as Appendix 1 is a schedule of all persons who have been excluded from the Settlement Class.

11. The Settlement Administrator and the Parties shall take all steps required to implement the Settlement in accordance with the terms of the Settlement Agreement. It shall be the continuing responsibility of Plaintiffs' Counsel and the Settlement Administrator to respond to all inquiries from Settlement Class Members with respect to the Settlement.

12. Upon the Effective Date and in consideration of payment of the Settlement Amount, Plaintiffs and Settlement Class Members shall release and forever discharge any and all direct, individual, or class claims, rights or causes of action or liabilities whatsoever, whether known or unknown, whether accrued or unaccrued, and whether arising under federal, state, local, statutory, common or any other law, rule, or regulation, that were or could have been asserted against ADT and its present and former affiliates, agents, officers, directors, employees, parents, subsidiaries, predecessors, successors and assigns, by Plaintiffs or any other Settlement Class Members in any of the Actions, predicated upon the facts alleged in the Actions. Plaintiffs' Released Claims do not, however, include any claims for personal injuries or for damage to or loss of property.

13. Upon the Effective Date, and in consideration of the representations and promises in the Settlement Agreement, ADT and Defendant's Counsel shall release and forever discharge all claims, rights or causes of action, whether known or unknown, whether accrued or unaccrued, and whether arising under federal, state, local, statutory, or common law, rule or regulation, against any of the Plaintiffs, Settlement Class Members, or Plaintiffs' Counsel, including their

respective spouses, children, heirs, associates, co-owners, agents, administrators, executors, devisees, predecessors, and representatives, that arise out of or are in any way related to the prosecution of the Actions.

14.     If the Effective Date does not occur, any and all rights of the Parties existing prior to the execution of the Settlement Agreement, including but not limited to the Plaintiffs' right to seek and ADT's right to oppose certification of one or more Plaintiff classes in each of the Actions, shall be preserved, and each Action shall proceed in all respects as if the Settlement Agreement and related orders had not been entered. In such event, none of the terms of the Settlement Agreement or the Parties' Memorandum of Understanding shall be admissible in any trial or otherwise used against any Party, except to enforce the terms thereof that relate to the Parties' obligations in the event of termination. The portion of the Settlement Amount transferred to the Settlement Administrator shall be returned to ADT, less notice and administrative expenses incurred by the Settlement Administrator (as to which ADT shall have no right of reimbursement from any person, including the Settlement Administrator, Plaintiffs or Plaintiffs' Counsel). If the portion of the Settlement Amount transferred to the Settlement Administrator is not sufficient to pay all of the notice and administrative expenses incurred by the Settlement Administrator, ADT shall separately pay to the Settlement Administrator any additional amounts owing at the time of termination.

15.     The fact and terms of the Settlement Agreement, any act performed or document signed in connection with the Settlement, and all negotiations, discussions, drafts, and proceedings in connection with the Settlement, (i) shall not be offered as evidence of, or construed as, an admission, concession, or presumption with respect to the truth or falsity of any fact alleged by Plaintiffs, the validity or infirmity of any claim asserted by Plaintiffs, or the validity or infirmity of any defense asserted by ADT; (ii) shall not be offered as evidence, or construed as, any admission or concession of any lack of merit in any aspect of the claims

asserted in the Actions by any of the Parties; and (iii) shall not be offered into evidence, or otherwise referred to, in any proceeding or forum as against any of the Parties, except in connection with proceedings to enforce the terms of the Settlement Agreement or of any judgment in any of the Actions; *provided, however*, that any of the Parties may file the Settlement Agreement and/or the Judgment in any proceeding to support an argument, defense, or counterclaim based on principles of res judicata, collateral estoppel, release and discharge, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar argument, defense, or counterclaim.

16.     This Action against ADT is dismissed with prejudice and without costs, except as provided under the Settlement Agreement and herein. The Court finds that there is no just reason for delay and expressly directs Judgment and immediate entry by the Clerk. Upon the Effective Date, Plaintiffs and ADT shall stipulate to the dismissal of the *Baker, Cheatham, Hernandez,* and *Wilson* Actions with prejudice, all Parties to bear their own costs, expenses, and fees except as provided under the Settlement Agreement.

**SO ORDERED.**

Dated: _____          _____

                                         Hon. Jon S. Tigar
                                         United States District Court Judge

# EXHIBIT 2

## ZIMMERMAN LAW OFFICES, P.C.

Since 1996, Zimmerman Law Offices has represented individuals and businesses in a wide array of legal matters. Its attorneys are established and respected trial lawyers who represent clients in complex litigation and class action lawsuits nationwide.  The firm has an extensive and varied litigation-based practice, with a focus on class action litigation.  Zimmerman Law Offices has recovered over $200 million on behalf of millions of individuals and businesses nationwide.

The attorneys at Zimmerman Law Offices are experienced in Multidistrict Litigation (MDL), having served as lead counsel in MDL cases throughout the country.  These MDL cases included claims for fraud, improper pricing, misleading product claims, and privacy violations including data breaches.

## ATTORNEYS

### Thomas A. Zimmerman, Jr.

A seasoned litigator for over 20 years, Mr. Zimmerman practices extensively and has obtained multi-million dollar jury verdicts in class action, corporate, commercial, medical malpractice, consumer fraud, general civil, product liability, toxic tort, and other complex litigation. He represents both plaintiffs and defendants nationwide in state and federal trial and appellate courts. He also represents individuals and corporations in transactional matters, and before state and federal administrative and regulatory agencies.

Mr. Zimmerman has been lead counsel in national and state-wide class action litigation, and has handled other multi-party litigation involving such companies as MCI/Worldcom, United Airlines, Peoples Gas, AT&T, Warner-Lambert, Pfizer, Liberty Mutual Insurance Co., DaimlerChrysler, Commonwealth Edison, Ameritech, and Bridgestone/Firestone. He is well respected for his representation of physicians, dentists, nurses, psychologists, veterinarians, and many other licensed professionals before state and federal agencies including the Illinois Department of Financial and Professional Regulation, and the U.S. Department of Health and Human Services.

In 2017, he was selected as a *Super Lawyer* in the area of class action and mass torts.

In 2000, he was voted one of the Top 40 Illinois Attorneys Under the Age of 40. This is especially notable, as he was chosen out of 60,000 attorneys in Illinois under the age of forty.

In 2003, the Illinois Supreme Court appointed Mr. Zimmerman to the Review Board of the Attorney Registration and Disciplinary Commission ("ARDC").  He served in that capacity until 2011, wherein he presided over appeals by attorneys who have been found to have committed misconduct, and recommended discipline for their ethical violations.  In 2013, the ARDC appointed Mr. Zimmerman as Special Counsel, wherein he conducts independent investigations in matters involving allegations of misconduct against attorneys associated with the ARDC.

Additionally, the Illinois Governor appointed Mr. Zimmerman to the Illinois Courts Commission. A Commission member presides over proceedings wherein judges are charged with committing ethical violations, and imposes discipline on judges who are found to have engaged in misconduct.

Prior to becoming an attorney, Mr. Zimmerman worked for AT&T where he negotiated partnerships with companies for domestic and international joint-venture and new product development activities. During this time, he was the featured speaker at 400 conferences, seminars, and presentations. Thereafter, he presented oral testimony at various Federal Senate and Congressional hearings. After obtaining his law license, Mr. Zimmerman has lectured at law schools and seminars, and is frequently interviewed by the news media concerning legal issues.

Mr. Zimmerman earned a B.S. in Computer Science-Mathematics from the University of Illinois, and an M.B.A. in Finance from DePaul University in the evenings while working for AT&T. After leaving AT&T, Mr. Zimmerman earned his law degree from the Chicago-Kent College of Law, where he was a Ramsey-Burke Scholarship recipient and earned the Academic Achievement Award.

He is admitted to practice law in Illinois, and other states on a case-by-case basis, and he is admitted to practice before the U.S. Supreme Court, and various federal courts of appeal and federal district courts. Based on his demonstrated experience and ability, he was appointed to the federal court trial bar.

Mr. Zimmerman is currently the chair of the Clerk of the Circuit Court of Cook County Attorney Advisory Committee, and was formerly co-chair of the Clerk of the Circuit Court Transition and Strategic Planning Public Policy Subcommittee.

Mr. Zimmerman is a member of the American, Illinois State, and Chicago Bar Associations, and the Illinois Trial Lawyers Association, where he serves on various committees.  He is also a member of the American Association for Justice.  In 2000, he was appointed to the Illinois Trial Lawyers Association Board of Advocates.

Involved in numerous community service activities, Mr. Zimmerman has been an Illinois State Board of Education surrogate parent of disabled children since 1988. In addition, he was a speaker on the rights of disabled people for the Illinois Planning Council on Developmental Disabilities, and a Family Shelter Service counselor to battered children for many years. He has been recognized by the federal court for his pro bono representation of indigent clients.


**Amelia S. Newton**

Ms. Newton represents plaintiffs and defendants nationwide in class action, corporate commercial, consumer fraud, general civil, and other complex litigation in state and federal courts. She also represents professionals, such as physicians, dentists, nurses, insurance producers, and real estate brokers before state and federal agencies, including the Illinois Department of Financial and Professional Regulation and Department of Insurance.

2

Ms. Newton's nearly 30 years of experience as an attorney also includes representing plaintiffs and defendants in nationwide securities fraud class actions in courts throughout the country. She has litigated matters involving real estate, contracts, professional malpractice and UCC violations on behalf individuals, receivers, banks, mortgage companies and corporations in state and federal courts. She has represented investors before the Financial Industry Regulatory Authority and has considerable experience litigating property matters including title defects, insurance coverage, mechanics liens, building code violations, contested foreclosures, drug forfeiture actions, hazard insurance claims, and HUD regulatory issues. Ms. Newton has been involved in all phases of litigation, including extensive discovery, substantive motion practice, bench trials and appeals.

As a Circuit Court of Cook County Arbitrator, Ms. Newton adjudicated personal injury, property damage and other cases assigned to mandatory arbitration.

She was awarded a B.A. from Michigan State University's James Madison College and received her law degree from DePaul University where she was selected to be a legal writing tutor in the Legal Writing Program.

Ms. Newton has also been involved in valuable community service. Through the Center for Disability and Elder Law, she was a volunteer at the Cook County Probate Division *Pro Se* Adult Guardianship Help Desk assisting families with filing petitions in court to obtain guardianship orders for disabled adults.

She is admitted to practice in the State of Illinois, the United States District Court for the Northern District of Illinois and the United States Court of Appeals for the Seventh Circuit. She is also a member of the Chicago Bar Association.


**<u>Sharon A. Harris</u>**

Ms. Harris has extensive experience litigating complex class action matters in state and federal trial and appellate courts nationwide. For almost 17 years, she has focused her practice on consumer protection, product liability, privacy, and antitrust matters. Ms. Harris has developed a particular expertise in state unfair and deceptive practice statutes, privacy laws, federal antitrust laws, the Fair Credit Reporting Act, the Racketeer Influenced and Corrupt Organizations Act (RICO), the Telephone Consumer Protection Act, and various other federal and state laws. For example, she was appointed class counsel in *In re Pilot Flying J Fuel Rebate Contract Litigation*, which involved allegations that the defendants violated RICO and various state laws by withholding portions of fuel discounts and rebates to which class members were contractually entitled.

Ms. Harris received her Bachelor of Science degree from Michigan State University with a dual major in Political Science and Social Science. She received her law degree from DePaul University College of Law.

She is admitted to practice in the State of Illinois, the United States District Court for the Northern District of Illinois, and the United States Courts of Appeals for the Seventh and Ninth Circuits, and she is a member of the American, Illinois State, and Chicago Bar Associations.


## Matthew C. De Re

Mr. De Re advocates for both plaintiffs and defendants nationwide in state and federal trial and appellate courts. His practice areas include class action, corporate, commercial, consumer fraud, general civil, product liability, personal injury, and other complex litigation. He also represents professionals, such as physicians, dentists, nurses, insurance producers, and real estate brokers, before state and federal agencies, including the Illinois Department of Financial and Professional Regulation and the Department of Insurance. In addition to his extensive litigation practice, Mr. De Re assists individuals and corporations in transactional matters.

He has experience in all phases of litigation, including extensive discovery and substantive motion practice. He has assisted in the defense of individuals and companies in cases involving personal injury, employment, and civil rights. Mr. De Re has also vigorously pursued recovery for plaintiffs in numerous civil matters. Prior to joining Zimmerman Law Offices, he served as a Law Clerk for the Circuit Court of Cook County.

Mr. De Re graduated from the University of Wisconsin-Madison with a B.S. in both Political Science and History. He earned his law degree from Washington University in St. Louis. While in law school, he received academic awards and appeared on the Dean's List multiple times. He also served two years on the Executive Board of the Student Bar Association and was the Associate Managing Editor for the Washington University Journal of Law & Policy.

He is admitted to practice law in the State of Illinois and is a member of the Illinois State and Chicago Bar Associations.


## Nickolas J. Hagman

Mr. Hagman is licensed to practice law in both the State of Illinois and the State of Wisconsin where he represents clients in state and federal courts.  Mr. Hagman represents plaintiffs and defendants in cases involving class action, general civil, commercial, consumer fraud, corporate, product liability, personal injury, and other complex litigation issues.  Additionally, Mr. Hagman represents licensed professionals, including physicians, dentists, nurses, insurance producers, and real estate brokers, before state and federal agencies, including the Illinois Department of Financial and Professional Regulation and the Department of Insurance.

Mr. Hagman graduated *magna cum laude* from the University of Minnesota-Twin Cities with a bachelor's degree in both Political Science and Spanish. He earned his law degree from Marquette University Law School in Milwaukee, Wisconsin.  While in law school, he received academic awards and appeared on the Dean's List multiple times.  He participated in several

moot court competitions and also served for two years as Associate Editor of the Marquette Law Review.

Prior to joining Zimmerman Law Offices, he served as a Judicial Law Clerk for several judges in the Milwaukee County Circuit Court in Wisconsin.  He is a member of the Illinois, Wisconsin, Chicago, and Milwaukee Bar Associations.


**Maebetty Kirby**

Ms. Kirby represents plaintiffs and defendants in class actions, consumer fraud, general civil, commercial, product liability, personal injury, and complex litigation.  In addition, she represents licensed professionals, including physicians, dentists, nurses, insurance producers, and real estate brokers, before state and federal agencies, including the Illinois Department of Financial and Professional Regulation and the Illinois Department of Insurance.

Ms. Kirby graduated *cum laude* from Washington University School of Law.  In law school, she received several academic honors and consistently appeared on the Dean's List.  She was awarded the Judge John W. Calhoun Trial Practice Award after serving as Captain of the National Trial Team, where she was named National Champion of the ABA Labor and Employment Trial Advocacy Championship, National Finalist of the TYLA National Trial Competition, and Regional Champion of several local trial competitions.  Ms. Kirby was also a member of the Student Bar Association and on the board of the *Washington University Journal of Law & Policy.*

Ms. Kirby earned her B.A. from Tulane University where she graduated *summa cum laude* with Departmental Honors.  In undergraduate school, she was inducted into *Phi Beta Kappa* and the Wallace Peery Society, an honor reserved for the top 20 undergraduates in Tulane University's graduating class.

Prior to joining Zimmerman Law Offices, Ms. Kirby worked for the Illinois Attorney General's Office, the Cook County State's Attorney's Office, and the St. Louis Circuit Attorney's Office. She is admitted to practice law in the State of Illinois and is a member of the Illinois State and Chicago Bar Associations.


**Jordan M. Rudnick** (*of counsel*)

Mr. Rudnick represents individuals and large national and international companies in providing business advice, counsel and dispute resolution in a wide variety of contexts for almost 20 years.  In particular, Mr. Rudnick represents plaintiffs and defendants nationwide in class action, corporate, commercial, consumer fraud, general civil, and other complex litigation in state and federal courts, arbitrations, and mediations.  Mr. Rudnick has been involved in all phases of litigation, including extensive discovery, substantive motion practice, trials and appeals.

His experience as an attorney also includes representing parties in nationwide securities fraud class actions.  Notably, Mr. Rudnick represented Canadian Imperial Bank of Commerce in the Enron class action securities litigation and related proceedings.  He also has extensive experience representing commercial policyholders in recovering insurance proceeds from their insurers.

Mr. Rudnick serves as an arbitrator for FINRA (Financial Industry Regulatory Authority, formerly known as the NASD or National Association of Securities Dealers) where he and panels of two other arbitrators decide the outcome of disputes between investors and securities brokers and dealers.

He has provided extensive pro bono representation of improperly-expelled school children in conjunction with the Legal Assistance Foundation of Metropolitan Chicago, and with the Chicago Coalition for the Homeless.  In addition, in his spare time, he is a volunteer at the Lincoln Park Community Homeless Shelter.

Mr. Rudnick served as a judicial law clerk to the Honorable Justice Joseph Gordon, Illinois Appellate Court, 1st District, where he drafted opinions in appeals arising from complex civil and criminal trial court decisions.

Mr. Rudnick earned his B.A. in Political Science from the University of Chicago, and he graduated *cum laude* from the John Marshall Law School with honors and on a full scholarship. In law school, he appeared on the Dean's List, and he was a member of the school's Moot Court Team.  He also was a Staff Editor on the *John Marshall Law Review* for two years.

He is admitted to practice law in Illinois, New York, and Washington, D.C., and is a member of the Chicago Bar Association, NAACP, and ACLU.

## REPRESENTATIVE CLASS ACTION CASES

### Completed Cases

*Misleading Product Claims* — $62 million recovery for a nationwide class of customers who purchased products that were advertised to reduce cellulite in the human body, plus equitable relief to correct the misleading claims.  *Joseph v. Beiersdorf North America, Inc.*, No. 11 CH 20147 (Cook Cnty, Ill.).

*Improper Cellular Phone Fee* — $48 million recovery for a statewide class of businesses and individuals who paid an improper municipal infrastructure maintenance fee on their cellular phone bills.  *PrimeCo Personal Communications, et al. v. Illinois Commerce Commission, et al.*, 98 CH 5500 (Cook Cnty, Ill.).

*Fraud* — $31 million recovery for a nationwide class of businesses and individuals who placed advertisements in a newspaper based on fraudulent circulation figures.  *In re Chicago Sun-Times Circulation Litigation*, No. 04 CH 9757 (Cook Cnty, Ill.).

*Misleading Product Claims* — $14 million recovery for a nationwide class of customers who purchased defective garden hoses with misleading claims, plus equitable relief to extend the product's warranty. *Bergman, et al. v. DAP Products, Inc., et al.*, No. 14 cv 3205 (D. Md.).

*Power Outages* — $7.75 million recovery for a statewide class of businesses and individuals who sustained financial damages due to widespread and prolonged power outages. *In re Commonwealth Edison 1999 Summer Power Outages*, No. 99 CH 11626 (Cook Cnty, Ill.).

*Privacy Violation* — $7.3 million recovery for a nationwide class of consumers whose personal information was improperly disclosed. *Aliano v. Airgas USA, LLC*, No. 14 CH 20024 (Cook Cnty, Ill.).

*Unsolicited Faxes* — $4 million recovery for a nationwide class of businesses and individuals who sustained damages resulting from the receipt of unsolicited facsimile advertisements. *Derose Corp. v. Goyke Health Center*, 06 CH 6681 (Cook Cnty, Ill.).

*Fraud* — $3.5 million recovery for a nationwide class of Spanish speaking purchasers of baby formula, arising out of misleading product labeling. *Cardenas v. Mead Johnson & Company*, No. 01 CH 11151 (Cook Cnty, Ill.).

*Misleading Product Labeling* — $2.5 million recovery for a nationwide class of businesses and individuals who purchased whiskey whose labeling misstated the characteristics of the product. *Due Fratelli, Inc. v. Templeton Rye Spirits, LLC*, No. 2014 CH 15667 (Cook Cnty, Ill.).

*Misrepresentations in Book* — $2.35 million recovery for a nationwide class of customers who purchased a fictional book while under the impression that the book was a non-fiction memoir. *In re A Million Little Pieces Litigation*, No. 06-md-1771 (S.D. NY).

*Improper Debiting of Bank Accounts* — $1.5 million recovery for a statewide class of individuals who were members of a health club that debited its members' bank accounts without adequate notice or authority. *Wendorf, et al. v. Landers, et al.*, No. 10 cv 1658 (N.D. Ill.).

*Environmental Contamination* — $1.4 million recovery for a statewide class of individuals and businesses who suffered from an infiltration of coal and petroleum coke dust in the air and on their property. *Martin, et al. v. KCBX Terminals Company, et al.*, No. 13 cv 08376 (N.D. Ill.).

*School Misrepresenting Accreditation* — $1.2 million recovery, representing nearly the full value of each class member's loss, for a statewide class of individuals who enrolled in a school based on the school's misrepresentations that it was accredited. *Allen v. Illinois School of Health Careers, Inc.*, No. 10 CH 25098 (Cook Cnty, Ill.).

*Privacy Violation* — $1 million recovery for a nationwide class of consumers whose personal information was improperly disclosed. *Radaviciute v. Christian Audigier, Inc.*, No. 10 cv 8090 (N.D. Ill.).

*Privacy Violation* — $500,000 recovery for a statewide class of consumers whose personal information was improperly disclosed.  *Aliano v. Joe Caputo and Sons – Algonquin, Inc*., et al., No. 09 cv 0910 (N.D. Ill.).

*Contaminated Drinking Water* — $500,000 recovery for a statewide class of individuals who suffered damages as a result of a contaminated water well, plus equitable relief to close the well.  *Joseph Marzano v. Village of Crestwood*, No. 09 CH 16096 (Cook Cnty, Ill.).

*Fraud* — $425,000 recovery for a nationwide class of businesses and individuals who purchased spirits whose labeling misstated the characteristics of the product.  *Due Fratelli, Inc. v. Proximo Spirits, Inc.*, No. 2014 CH 17429 (Cook Cnty, Ill.).

*Privacy Violation* — $295,000 recovery for a nationwide class of consumers whose personal information was improperly disclosed.  *Joseph v. Marbles, LLC*, No. 13 cv 4798 (N.D. Ill.).

*Privacy Violation* — $250,000 recovery for a nationwide class of consumers whose personal information was improperly disclosed.  *DiParvine v. A.P.S., Inc. d/b/a Car Quest Auto Parts*, No. 11 cv 6116 (N.D. Ill.).

*Unsolicited Faxes* — $237,600 recovery for a statewide class of individuals and businesses who sustained damages resulting from the receipt of unsolicited facsimile advertisements.  *Phillips Randolph Enterprises, LLC v. Key Art Publishing Co.,* No. 07 CH 14018 (Cook Cnty, Ill.).

*Improper Health Club Memberships* — $138,000 recovery for a statewide class of individuals whose health club membership agreements provided for improper membership terms.  *Izak-Damiecki v. World Gym International, LLC*, No. 10 CH 18845 (Cook Cnty, Ill.).

*Illegal Lending Practices* — $127,500 recovery, representing the maximum amount of statutory damages, for a nationwide class of customers who obtained loans whose terms violated the Truth in Lending Act, plus equitable relief to modify the loan contract to conform with the law.  *Papeck, et al. v. T.N. Donnelly & Co.*, No. 09 CH 31997 (Cook Cnty, Ill.).

*Privacy Violation* — Recovery for a nationwide class of over 36 million consumers whose personal information was improperly disclosed.  *Dudzienski v. GMRI, Inc.*, No. 07 cv 3911 (N.D. Ill.).

*Unsolicited Faxes* — Recovery for a statewide class of individuals and businesses who sustained damages resulting from the receipt of unsolicited facsimile advertisements.  *Phillips Randolph Enterprises, LLC v. Home Run Inn, Inc.*, No. 08 CH 43273 (Cook Cnty, Ill.).

*Privacy Violation* — Recovery for a statewide class of over 60,000 consumers whose personal information was improperly disclosed.  *O'Brien v. Paninos, Inc.*, No. 10 cv 2991 (N.D. Ill.).

*Breach of Warranty* — Recovery on behalf of a nationwide class of customers who had their warranty retroactively changed from a lifetime guarantee to a 90-day guarantee, plus equitable

8

relief to reinstate the lifetime guarantee on the products. *Brady, et al. v. Learning Curve Int'l, Inc.*, *et al.*, No. 06 CH 03056 (Cook Cnty, Ill.).

*Privacy Violation* — Recovery for a nationwide class of tens of thousands of consumers whose personal information was improperly disclosed. *In re Kathy Aliano v. Hancock Fabrics, Inc.*, No. 07-10353 (Del. Bkpt).

*Misleading Product Claims* — Equitable relief recovery for a nationwide class of individuals who were sold submarine sandwiches materially shorter than advertised. *In re Subway Footlong Sandwich Marketing and Sales Practices Litigation*, No. 2:13-md-02439 (E.D. Wis.).

## **Pending Cases – Appointed to Executive Committee**

*Fraud / Data Breach* — Class action for a nationwide class of individuals who had their personal and financial data stolen due to insufficient protection of that information by an internet service provider, and who also paid money to that provider based on misrepresentations. *In re Ashley Madison Customer Data Security Breach Litigation*, MDL No. 2669 (E.D. Mo.).

*Misleading Product Claims* — Class action for a nationwide class of individuals who purchased defective cheese products based on misleading representations. *In re 100% Grated Parmesan Cheese Marketing and Sales Practices Litigation*, MDL No. 2707 (N.D. IL).

## **Pending Cases**

*Defective Products* — Class action for a nationwide class of individuals who sustained financial and personal injuries resulting from their purchase and use of baby wipes that were tainted with a dangerous bacteria.

*Data Breach* — Class action for a nationwide class of individuals who had their personal, financial, and medical data stolen due to insufficient protection of that information by a retailer.

*Constitutional Violation* — Class action for a statewide class of individuals who were deprived their real estate tax rebates from a municipality.

*Misleading Product Claims* — Class action for a nationwide class of individuals who purchased mulch products that advertised a larger quantity than was actually provided to the purchaser.

*Antitrust* — Class action for a nationwide class of individuals who purchased seafood products from companies that conspired to fix prices in violation of the Sherman Act.

*Improper Court Fee* — Class action for a nationwide class of individuals and businesses who were charged an improper fee by the Clerk of the Court.

*Unpaid Overtime* — Class action for a nationwide class of individuals who were not paid all wages and premium overtime for hours worked in excess of forty hours per week.

*Misleading Product Claims* — Class action for a nationwide class of individuals and businesses who purchased cleaning products that advertised they were made of higher quality ingredients than were actually contained in the products.

*Improper Debt Collection* — Class action for a nationwide class of individuals who were sent misleading debt collection letters, in violation of the Fair Debt Collection Practices Act.

*Fraud* — Class action for a nationwide class of individuals who made purchases based on fraudulent misrepresentations concerning a sporting event.

*Defective Products* — Class action for a nationwide class of individuals who purchased defective home security systems that could be easily hacked and disabled.

*Misleading Product Labeling* — Class action for a nationwide class of individuals who purchased a product whose packaging misstated the characteristics of the product.

*Antitrust* — Class action for a nationwide class of individuals who subscribed to television services from companies that conspired to fix prices in violation of the Sherman Act.

*Data Breach* — Class action for a statewide class of individuals who had their personal, financial, and medical data stolen due to insufficient protection of that information by a hospital.

*Defective Vehicles* — Class action for a nationwide class of individuals and businesses who purchased vehicles manufactured with a defective transmission.

*Unsolicited Faxes* — Class action for a nationwide class of individuals and businesses who sustained damages resulting from the receipt of unsolicited facsimile advertisements.

*Improper Debt Collection* — Class action for a nationwide class of individuals and businesses against whom attempts were made to collect a time-barred debt, in violation of the Fair Debt Collection Practices Act.

*Fraud* — Class action for a nationwide class of individuals who were charged inflated premiums by mortgage servicers who force-placed insurance policies on their properties in exchange for improper kickbacks.

*False Advertising* — Class action for a nationwide class of individuals who purchased products that did not contain ingredients that were represented on the packaging.

*Environmental Contamination* — Class action for a statewide class of individuals who suffered from an infiltration of lead and arsenic on their property.

**NOTE:** This list of cases is a representative sample of some of the class action lawsuits. It is not an exhaustive list.

# EXHIBIT 3

# CHAVEZ & GERTLER LLP
## ATTORNEYS AT LAW

42 MILLER AVENUE
MILL VALLEY, CA 94941
TELEPHONE: (415) 381-5599
FACSIMILE: (415) 381-5572
info@chavezgertler.com

## FIRM RESUME

Chavez & Gertler LLP is a nationally recognized law firm located in Mill Valley, California. The firm's team of dedicated professionals represents plaintiffs in consumer, civil rights, and employment class actions and catastrophic personal injury cases. In litigation in state and federal courts around the country, Chavez & Gertler has recovered in excess of $1.8 billion in damages, restitution and debt forgiveness for its clients.

The firm and its attorneys have received a number of honors and awards for its work. Chavez & Gertler was named Law Firm of the Year by the Los Angeles Center for Law & Justice in 2001. The founding partners of the firm, Mark A. Chavez and Jonathan E. Gertler, have received the highest rating available (AV) from Martindale-Hubbell for their professional accomplishments and ethics. Mr. Chavez and Mr. Gertler have been named Northern California Super Lawyers by Law & Politics and San Francisco Magazine six to eight times. In 2006, Mr. Chavez received the Champion of Justice Award from the Bar Association of San Francisco. The firm was presented with the Equal Justice Award from the Law Foundation of Silicon Valley in 2007. In March 2012, Mr. Chavez was honored as a Guardian of Justice by Bay Area Legal Aid. Mr. Chavez received the Consumer Attorney of the Year Award from the National Association of Advocates in November 2013.

Chavez & Gertler is committed to the vigorous pursuit of its clients' interests and public justice. The firm has achieved an outstanding record of success in litigation and its lawyers are actively involved in the public interest community. Further information about the firm and its accomplishments is available on its website, www.chavezgertler.com.

## PARTNERS

### Mark A. Chavez

Mr. Chavez received his Juris Doctorate degree from Stanford Law School where he served as a Judicial Extern for the Honorable Mathew O. Tobriner of the California Supreme Court, was a co-founder and the first Managing Editor of the Stanford Environmental Law Journal and was a founding member of the Stanford Public Interest Law Foundation. He was selected through the Attorney General's Honors Program and joined the Civil Division of the United States Department of Justice in Washington, D.C.

FIRM RESUME
Page 2

after graduating from law school.  Mr. Chavez entered private practice working first at Pillsbury Winthrop Shaw Pittman LLP and subsequently at Farrow, Bramson, Chavez & Baskin before founding the law firm of Chavez & Gertler LLP with Jonathan E. Gertler.

In the course of his career, Mr. Chavez has represented plaintiffs in a wide variety of consumer class actions and other complex civil litigation matters.  His significant class action experience includes arguing _Olszeweski v. ScrippsHealth_, 30 Cal.4th 798 (2003) and _Linder v. Thrifty Oil_, 23 Cal.4th 429 (2000) before the California Supreme Court and acting as co-counsel for the plaintiffs in _In re Tobacco Cases II_, (2007) 41 Cal.4th 1257 and _Briseno v. Washington Mutual_, 24 Cal.4th 906 (2001).  He has served or is currently serving as lead or co-lead counsel in over 120 class actions filed in federal and state courts in Alabama, Arizona, California, Colorado, Florida, Idaho, Massachusetts, Missouri, Nevada, New Jersey, Ohio, Pennsylvania, Tennessee and Washington.  These cases have resulted in some of the largest recoveries ever achieved in consumer class actions.  (See, e.g., _Richardson v. Wells Fargo_, Case No., CGC-08-481662 (San Francisco Superior Court) ($232 million); _Smith v. General Motors Acceptance Corporation_, Case No. 776152 (Santa Clara County Superior Court) ($105 million); _In Re Transouth Cases_, (Santa Clara County Superior Court) ($76 million).)

Mr. Chavez is A-V rated by Martindale-Hubbell and has been named a Northern California Super Lawyer eight times.  He was one of the founders of the National Association of Consumer Advocates and is its former Co-Chair.  Mr. Chavez currently serves as the chair of the board of Public Citizen Foundation.  He previously served  on the boards of the National Consumer Law Center, Disability Rights Advocates, Consumer Attorneys of California, Stanford Public Interest Law Foundation, San Francisco Trial Lawyers Association, and Public Justice Foundation.

**Jonathan E. Gertler**

Jonathan E. Gertler is one of the leading personal injury trial lawyers in California.  In 2006 Mr. Gertler earned the Trial Lawyer of the Year Award from the San Francisco Trial Lawyers Association, and was a finalist for the Consumer Attorneys of California's "Consumer Attorney of the Year."  Mr. Gertler was a finalist for SFTLA's award again in 2008 and 2015.  He is also an accomplished class action attorney and is a Northern California Super Lawyer.

Mr. Gertler has successfully handled catastrophic injury and death cases for his clients since 1984.  In his first year of practice, and his very first jury trial, he won a verdict of more than $1 million for a cement mason disabled in a construction accident. In recent jury trials, he has won verdicts of over $3.1 million in an aviation accident case, almost $9 million in a railroad crossing accident case, and nearly $3 million in a truck crash case.  In his last consumer trial, Mr. Gertler obtained a judgment worth nearly $12 million in consumer refunds and credits.  He is currently acting as lead or co-counsel in a series of wage-and-hour class actions against both small and large corporations.

FIRM RESUME
Page 3

Mr. Gertler is also a leader in professional organizations.  He is a past president of Consumer Attorneys of Marin.  In addition, he serves as officer and board member of San Francisco Trial Lawyers Association and will assume the presidency of that organization in 2011.  Mr. Gertler is committed to providing legal help to the indigent.  He sits on the boards of Legal Aid of Marin and Bay Area Legal Aid.

Mr. Gertler received his bachelor's degree in 1978 from the University of Illinois and his Juris Doctorate from Hastings College of the Law, University of California in 1983.

## Nance F. Becker

After graduating Phi Beta Kappa from Harpur College of the State University of New York at Binghamton in 1978, Nance Becker attended Stanford Law School.  She earned her Juris Doctorate, Order of the Coif, in 1981.  Ms. Becker completed an externship with the Environmental Defense Fund, and she received the Hilmer Oehlmann Jr. Award for Excellence in Research and Legal Writing, while at Stanford.

Prior to joining Chavez & Gertler in 2007, Ms. Becker was a member of the law firm now known as Rogers Joseph and a partner in the Law Offices of Jeffrey Banchero.  During those periods she handled a wide range of complex commercial litigation, including unfair business practices, contract and insurance coverage disputes, fraud in connection with accounting and investments, environmental issues, plaintiff personal injury and toxic torts.  At Chavez & Gertler, she continues to work on complex litigation matters and has expanded her practice to consumer and civil rights class actions.

Ms. Becker has co-counseled on several significant disability discrimination cases, including _Smith v. Hotels.com,_ in which plaintiffs sued to compel one of the largest online travel services to make changes to its reservation system so that individuals with disabilities could research and reserve lodgings with the accommodations they need, and _Celano v. Marriott,_ in which plaintiffs successfully sued to compel Marriott International, Inc., owner and operator of dozens of public golf courses throughout the United States, to provide accessible motorized golf carts for the use of players with mobility disabilities.  Ms. Becker has participated in numerous lawsuits to enforce consumers' rights under the Unfair Competition Law, the Rees-Levering Automobile Sale and Finance Act, and the Fair Debt Collection Practices Act.

Ms. Becker also has extensive experience and expertise with appeals and writs.  Admitted to the California Bar in 1981, she has also been admitted to all United States District Courts in the State of California, the Ninth Circuit Court of Appeals and the United States Court of Claims, and has appeared before the California Supreme Court, California Courts of Appeal and appellate courts in Washington and Utah.

Ms. Becker is currently a member of Public Justice and the Consumer Attorneys of Marin.  She was a co-founder and former board member of Bay Legal Assistance for Women, a member of the AIDS Legal Referral Panel, and a board member and officer of

FIRM RESUME
Page 4

the Marin Audubon Society.   Ms. Becker is Secretary of the Board of Directors and principal flutist with Mill Valley Philharmonic.

In 2015, she was a finalist for the San Francisco Trial Lawyers Association's Trial Lawyer of the Year award for her work on the class action Villanueva v. Fidelity National Title Company, protecting California consumers from being charged unlawful escrow fees.

**Christian Schreiber**

Christian Schreiber joined the firm in July 2009 as a class action litigation associate.  Mr. Schreiber works primarily on cases involving consumer rights, employment, and financial services matters.

Mr. Schreiber earned a JD from the UCLA School of Law in 2006, where he completed the Program in Public Interest Law & Policy and the Concentration in Critical Race Studies.  During law school, Mr. Schreiber won the school's Roscoe Pound Moot Court Competition and served on the Moot Court Executive Board. He was a staff member on the Journal of Sexual Orientation Law, and served as co-chair of UCLA's Public Interest Law Fund. He was a co-founder of the UCLA chapter of the American Constitution Society.

Prior to law school, he worked in Sacramento as a legislative aide for former California State Senator Joe Dunn, and served as Chief Investigator for the State Senate Select Committee to Investigate Price Manipulation of the Wholesale Energy Market. Mr. Schreiber worked several years as a freelance writer.  Mr. Schreiber was a class action litigation associate at Schneider Wallace Cottrell Brayton Konecky LLP in San Francisco before joining the firm.

Mr. Schreiber is a member of the American Constitution Society, the Public Justice Foundation, and the Consumer Attorneys of California. Mr. Schreiber received his B.A. from UCLA in 1996.

## ASSOCIATE

**Samuel Cheadle**

Samuel Cheadle joined Chavez & Gertler in October, 2012 as a class action litigation associate, working primarily on cases involving consumer rights, employment, and financial services matters. Mr. Cheadle received his law degree from The George Washington University Law School in 2009, graduating with honors.  He received his B.A., with high honors, from the University of California at Santa Barbara in 2005.

Before he came to work at Chavez & Gertler, Mr. Cheadle was an associate at the law firm of Sedgwick, Detert, Moran & Arnold LLP, where he practiced construction law on behalf of developers, general contractors and specialty subcontractors as well as

FIRM RESUME
Page 5

representing sureties involving contract and commercial bonds.  He also spent one year practicing immigration law, representing refugees applying for asylum in the United States through the non-profit The East Bay Sanctuary Covenant.  Mr. Cheadle clerked for the U.S. Environmental Protection Agency's Region Office of General Counsel and the U.S. Department of Justice's Environmental Enforcement Section.

From 2011 to 2013, Mr. Cheadle served as co-chair of the San Francisco Bar Association's "Bridging the Gap" Barristers Committee, assisting law students with the transition to professional practice.  He is currently in his third year as a co-coach of Abraham Lincoln High School's Mock Trial Team. Mr. Cheadle has been published in the American Bar Association's Public Contract Law Journal.

# EXHIBIT 4



# ABOUT THE FIRM

Bonnett, Fairbourn, Friedman & Balint, P.C. is an AV rated firm of 23 lawyers.  Our clients include many individuals and local businesses, as well as major national and international companies in a wide range of civil litigation in both federal and state courts.

The firm has developed a recognized practice in the area of complex commercial litigation, including major class actions and is widely regarded as the preeminent firm in Arizona representing plaintiffs in class action proceedings.  Over the last twenty years, the firm has successfully handled more than 100 class action lawsuits.  We have represented consumers and victims in a wide range of class action proceedings, including actions alleging antitrust claims, securities fraud, civil rights claims and consumer fraud.

Our antitrust practice includes the prosecution of class claims on behalf of direct purchasers of products as well as indirect purchaser claims.  These antitrust cases include, among others, class actions against Microsoft, MasterCard, Apple Computer and sellers of products such as polyester and rubber chemicals, waste management services, financial products and other industries.  In addition to our class action practice, the firm also has represented plaintiffs in individual litigation asserting antitrust claims, including Culligan International.

Bonnett, Fairbourn, Friedman & Balint has taken a leading role in numerous important actions on behalf of consumers and investors, and we have been responsible for many outstanding results that have yielded dozens of multi-million dollar recoveries for class members in Arizona and throughout the United States.

**Bonnett, Fairbourn, Friedman & Balint, P.C.**
**2325 E. Camelback Road, Suite 300**
**Phoenix, Arizona 85016**
**Phone: (602) 274-1100**
**Toll Free Number: (800) 847-9094**
**Facsimile: (602) 274-1199**

# PRACTICE AREAS

## CLASS ACTION

Bonnett, Fairbourn, Friedman & Balint represents consumers and investors in major class action cases in federal and state courts throughout the United States. Under the direction of Andrew S. Friedman, the firm's class action section represents plaintiff classes in the following areas:

> Securities Fraud: Protects institutional shareholders and individual investors from corporate fraud and mismanagement.

> Consumer Protection: Protects consumers from defective products and fraudulent marketing practices.

> Antitrust: Protects individuals and businesses from price fixing, unfair business practices and other anticompetitive conduct.

> Civil Rights and Employment: Protects employees and consumers against unfair practices and racial, age, gender, and other forms of discrimination.

> Insurance and Health Care: Represents victims of fraud and unfair sales practices by life insurance companies and HMOs.

> Tobacco: Seeks redress for fraudulent marketing of "Light" cigarettes as a less toxic version of "Full Flavor" varieties.

> False Claims and Whistleblowers: Provides for awards to individuals who uncover false claims for payment submitted to the federal government.

## SECURITIES

Bonnett, Fairbourn, Friedman & Balint has extensive experience in plaintiffs' class action securities cases in and out of the State of Arizona. Its attorneys have recovered substantial verdicts and settlements in various high-profile cases representing bondholders who have suffered significant losses due to the criminal activities of individuals in the securities and banking industries, including victimized investors in the Lincoln Savings scandal.

## APPELLATE LITIGATION

Bonnett, Fairbourn, Friedman & Balint has extensive appellate experience at all levels of the state and federal court systems. Attorneys from the firm have appeared before the Arizona Court of Appeals, the Arizona Supreme Court, and numerous U.S. Circuit Courts. Decisions to appeal a matter are not made lightly by the firm; we carefully analyze the likelihood of a positive result for the client against the potential cost of an unfavorable outcome. Although we draw on the clerking and practical experience of many of our attorneys in making this analysis, a fully informed client is always an integral part of this process.



**ANDREW S. FRIEDMAN** heads the firm's class action, securities fraud, and consumer fraud practice groups. Mr. Friedman is admitted to the State Bar of Arizona and is admitted to practice before the U.S. District Court for the District of Arizona, U.S. Court of Appeals for the Ninth Circuit and the U.S. Supreme Court.

Mr. Friedman's practice is devoted primarily to litigation of major class action cases in federal and state courts in Arizona and throughout the United States. He has represented plaintiff classes in major consumer, securities fraud, antitrust, civil rights and insurance sales practices cases and other complex commercial litigation.

**Securities Fraud**

Mr. Friedman and other members of the firm served as Arizona counsel for the plaintiff class of investors in *In re American Continental Corp./Lincoln Savings and Loan Sec. Litig*., MDL 834 (D. Ariz.). Mr. Friedman was one of the team of lawyers who represented the class of investors who purchased debentures and/or stock in American Continental Corp., the parent company of the now-infamous Lincoln Savings & Loan. The suit charged Charles Keating, Jr., other corporate insiders, three major accounting firms, law firms and others with racketeering and violations of the securities laws. Plaintiffs' counsel actively participated in bankruptcy proceedings, multi-district litigation and, ultimately, a jury trial in Tucson, Arizona. Plaintiffs successfully recovered $240 million of the $288 million in losses sustained by the investors. After trial, the jury rendered verdicts exceeding $1 billion against Keating and other defendants.

Mr. Friedman also served, along with other members of the firm, on the court-appointed Executive Committee in the *Prudential Limited Partnerships Multi-District Litigation*, representing investors in limited partnerships sponsored by Prudential Securities. This action, which alleged racketeering and securities fraud claims on behalf of a nationwide class, resulted in a settlement providing more than $125 million in benefits to defrauded investors.

Mr. Friedman has served as plaintiffs' counsel in many other securities fraud class actions, including the following major cases:  *Persky v. Pinnacle West Corp., et al.* (securities fraud class action - $35 million settlement); *Culligan International Company v. United Catalysts, Inc.* (Antitrust Action); *Sitgraves, et al. v. Allied Signal, Inc.*; *Stein v. Residential Resources, et al.* (Securities Fraud Class Action); *Gould v. Pinnacle West Corp., et al.*; *Shields v. Del Webb Corp., et al.* (Securities Fraud Class and Derivative Suit); *Hoexter v. Valley National Bank, et al.* (Securities Fraud Class Action); *Friedman, et al. v. Emerald Mortgage Investment Corporation, et al.* (Securities Fraud Class Action); *Marks, et al. v. Circle K* (Securities Fraud Class Action); *Krause v. Sierra Tucson, et al.* (Securities Fraud Class Action); *Braunstein, et al. v. Tucson Electric, et al.* (Derivative Suit); *Krause v. Sierra Pacific, et al.* (Securities Fraud Class Action); *Blinn v. Bech, et al.* (Securities Fraud Class Action); *Voss v. Cobra Industries, et al.* (Securities Fraud Class Action); *Hollywood Park Securities Litigation* (Securities Fraud Class Action); *In re America West Sec. Fraud Litig.* (Securities Fraud Class Action); *Orthologic Securities Fraud Litig.* (Securities Fraud Litigation); and *In re Vitamins Antitrust Litigation* (Antitrust Class Action).

Mr. Friedman also served as lead counsel in a number of class action cases seeking relief on behalf of investors victimized by fraudulent investment schemes, brought against professional defendants who allegedly substantially assisted in the fraud.  Mr. Friedman served as co-lead counsel for investors in *Facciola, et al. v. Greenberg Traurig LLP, et al.,* a class action asserting claims against law firms and

an auditor for allegedly aiding and abetting a Ponzi scheme leading to the collapse of Mortgages, Ltd. After class certification was granted and at the conclusion of discovery, Plaintiffs secured settlements with the defendants totaling $89 million.  At the conclusion of the case, the Hon. Frederick J. Martone observed:

> Class counsel were retained on a purely contingent basis in a complex case fraught with uncertainty.  Counsel advanced litigation costs in excess of $1.5 million in order to prosecute this action, shouldering the risk of non-payment.  Absent class counsels' willingness to advance these litigation costs, there likely would have been no common fund.  Finally, counsel have demonstrated outstanding expertise, diligence, and professionalism at every stage of this litigation.

Mr. Friedman also served as lead counsel in *Gordon Noble, et al. v. Greenberg Traurig LLP, et al.,* a class action in the California Superior Court asserting claims on behalf of investors against law firms, auditors and a lender for their involvement in an alleged Ponzi scheme orchestrated by a hard money lender.  After several years of hotly contested litigation, plaintiffs obtained settlements for the investor class members totaling $83 million.

Mr. Friedman and other members of the firm served as class counsel in *In re Apollo Group, Inc. Securities Litig.*, an open market securities fraud case seeking redress for allegedly false statements made by the Apollo Group, Inc. in publicly filed registration statements.  After trial, the jury returned a verdict of $275 million for the Apollo shareholders, one of the largest jury verdicts ever obtained in a securities fraud case prosecuted through trial.  At the conclusion of the trial, the presiding judge commented:

> [trial counsel] brought to this courtroom just extraordinary talent and preparation … [F]or the professionalism and the civility that you – and the integrity that you have all demonstrated and exuded throughout the handling of this case, it has just, I think, been very, very refreshing and rewarding to see that…[W]hat I have seen has just been truly exemplary.

**Deceptive Marketing of Insurance Products**

Mr. Friedman served as co-lead counsel for the certified nationwide plaintiff classes in *In re Conseco Life Insurance Company Cost of Ins. Litig.*, MDL 1610 (C.D. Cal.).  The suit charged that Conseco breached the terms of life insurance policies owned by over 90,000 class members. After nearly two years of litigation against an entrenched adversary, the class recovered over $400 million in damages.

Mr. Friedman and the firm were key members of a team of lawyers that brought landmark cases against major life insurance companies challenging the deceptive manner in which life insurance products were marketed to consumers during the 1980's. The first of these cases, against New York Life Insurance Co., arose from events uncovered in Arizona and resulted in a ground-breaking settlement providing benefits to class members exceeding $250 million. This settlement has been praised by regulators and commentators as an innovative solution to sales practice abuses. Subsequently, Mr. Friedman and co-counsel for plaintiffs prosecuted class actions and secured settlements against a host of other major insurance companies, including settlements with *Prudential Life Insurance Company* (exceeding $2 billion), *Metropolitan Life Insurance Company* (exceeding $1 billion), *Manulife* (exceeding $500 million) and more than 20 other companies. Mr. Friedman was

instrumental in the prosecution of these actions, was a member of the settlement negotiating team and briefed and argued class certification issues at the trial level and in the appellate courts.

Mr. Friedman served as co-lead counsel in a series of class actions against insurance companies challenging the sale of deferred annuities to senior citizens. These cases alleged RICO claims and other theories to obtain redress for allegedly false and misleading representations inducing elderly purchasers to invest their life savings in illiquid and poorly performing annuity products. Mr. Friedman and co-counsel for plaintiffs prosecuted class actions and secured settlements benefitting thousands of elderly consumers, including settlements with *Allianz Life Insurance Company of North America* ($251 million)*, American Equity Investment Life Insurance Company* ($129 million)*, Midland National Life Insurance Company* ($80 million)*,* as well as settlements with *Fidelity and Guaranty Life Insurance Company, National Western Life Insurance Company, Conseco Insurance Company; Jackson National Life Insurance Company,* and *American International Group, Inc.*

**Universal Life Cost of Insurance Increases**

Mr. Friedman served as co-lead counsel for the Plaintiff in *Yue v. Conseco Life Ins. Co*., CV08-1506 and *Yue v. Conseco Life Ins. Co.,* CV11-9506, class actions challenging the legality of cost of insurance ("COI") increases imposed on universal life policies. These cases alleged that Conseco Insurance Company unlawfully increased the COI charges in violation of the provisions of the universal life policies allowing such increases based only on worsening mortality experience. The actions alleged that mortality has improved, not worsened over the years (because people are living longer). Conseco withdrew the COI increases during the pendency of the first case but then sought to impose a new increase shortly thereafter. Accordingly, the Plaintiff initiated a new action against Conseco challenging the new COI increase. The Court certified the proposed class of policyholders and issued an injunction halting the challenged increase. Plaintiff thereafter moved for summary judgment against Conseco. A settlement was ultimately reached which required Conseco to roll back the challenged COI increases, thereby providing settlement benefits to class members with a total projected value of $65 million.

Mr. Friedman is currently serving as co-lead counsel for the Plaintiffs in *Feller, et al. v. Transamerica Life Insurance Company*, a class action challenging cost of insurance increases imposed by Transamerica on various universal life policies. Plaintiffs are seeking injunctive relief to invalidate the COI rate increases, which are alleged to violate the terms of the insurance policies.

**Captive Reinsurance Transactions**

Mr. Friedman represents plaintiffs in cases asserting that life insurance companies have offloaded insurance liabilities to affiliated captive reinsurance companies to weaken policy reserves and falsely inflate reported surplus. Plaintiffs allege that the defendant insurance companies used these fraudulent practices to misrepresent their true financial condition to induce consumers to purchase annuities and other insurance products. These cases, which assert claims under the federal anti-racketeering statutes, currently include *Ludwick v. Harbinger Group, et al.* and *Hudson v. Athene Annuity and Life Company, et al.*

**Health Insurance**

Mr. Friedman served as co-lead counsel representing health care providers in *In re Managed Care Litigation*, an MDL proceeding against major managed care companies seeking recovery for allegedly

improper claims payment practices.   Mr. Friedman represented the American Psychological Association, the American Podiatric Medical Society, the Florida Chiropractic Association and numerous individual providers in cases against Humana, Inc., CIGNA, numerous Blue Cross and Blue Shield companies and other managed care companies.   Mr. Friedman and his co-counsel secured settlements against CIGNA ($72 million) and Humana, Inc. ($20 million) in these MDL proceedings.

Mr. Friedman also is representing health care providers in proceedings against several major health care companies arising from the use of the Ingenix database to improperly reduce payments to patients, physicians and other providers.  Defendants in these class action proceedings include Aetna, CIGNA and WellPoint, Inc.  Mr. Friedman represents the New Jersey Psychological Association, the American Podiatric Medical Association, the California Chiropractic Association and the California Psychological Association, among other plaintiffs, in these actions.

Mr. Friedman also represents plaintiffs in class action proceedings in California against Blue Cross and Blue Shield for engaging in postclaims underwriting.  Postclaims underwriting is a practice by which insurance companies fail to conduct underwriting before accepting insurance applications but seek to find grounds to rescind health insurance policies when a claim for payment is submitted by the patient or doctor.

**Civil Rights**

Mr. Friedman and the firm, along with several other law firms, have represented African-American policy holders in class action proceedings against life insurance companies seeking relief under the Federal Civil Rights Act for racial discrimination in the sale and administration of life insurance policies. For many decades, life insurance companies routinely charged higher premiums to non-Caucasians for inferior life insurance policies. The first such action, against *American General Life & Accident Company*, resulted in a $250 million settlement providing benefits that included cash refunds, increased death benefits and reduced future premiums. Mr. Friedman and the firm also represent plaintiffs in similar race discrimination class actions against other life insurance companies, including *Metropolitan Life*, *Liberty National*, *American National*, *Monumental Life*, *Western & Southern Life* and *Jefferson-Pilot Life Insurance Company*.

Mr. Friedman served as lead or co-lead counsel in many other actions seeking to hold financial institutions responsible for racial discrimination against minorities.  He currently serves as co-lead counsel on behalf of proposed classes of African-American and Latino borrowers asserting claims against mortgage lenders for racial discrimination in violation of the Equal Credit Opportunity Act and the Fair Housing Act.  The bank defendants in these actions, among others, include:  *Countrywide Financial Corporation; Wells Fargo Bank, N.A.; GreenPoint Mortgage Funding, Inc.; GE Money Bank; First Franklin Financial Corp.; JP Morgan Chase & Chase Bank, U.S.A., N.A.; H&R Block, Inc.; IndyMac Bank, F.S.B.; HSBC Finance Co.,* and *Option One Mortgage Co.*  Mr. Friedman also has represented Plaintiffs in cases challenging the use of credit scoring by insurance companies and lenders in a manner that adversely impacts minority consumers.

**Data Breach Litigation**

Mr. Friedman and other lawyers of the firm have represented consumers and health care patients in cases arising from cyber-attacks against companies resulting in the theft of personal information, including credit card and personal health information.

Mr. Friedman represented the Chapter 7 trustee for CardSystems Solutions, Inc. in two separate actions in the Pima County Superior Court. CardSystems was a major credit and debit card processor that collapsed into bankruptcy in 2006.  CardSystems failed to properly encrypt credit card data and was the victim of a hacking intrusion resulting in the disclosure of confidential information and identity theft. The CardSystems security breach, which was the largest reported breach of personal data (exposing as many as 40 million credit cards), sparked a national scandal and hearings before the U.S. Senate.  After obtaining a judgment against former officers of CardSystems in the amount of $7.5 million, Mr. Friedman represented the bankruptcy trustee in an action against the insurance company and ultimately secured a payment of $1.25 million.

**Professional Associations**

Mr. Friedman has lectured at numerous continuing legal education programs, including panel discussions and presentations on the Private Securities Litigation Reform Act (1996 Federal Bar Convention), prosecution of nationwide class actions in state courts (1996 ABA Annual Convention), litigation of life insurance market conduct cases (1997, 1999 and 2000 PLI conferences), class action best practices (2011 Arizona State Bar), consumer rights litigation (2008), the Arizona Securities Act (2013 Arizona State Bar), mediation of complex cases (2016 American Bar Association) and other litigation programs sponsored by the Practicing Law Institute, ALI-ABA, American Bar Association, National Academy of Elder Law Attorneys .

Mr. Friedman testified before the U.S. Congress in connection with proposed legislation to limit the rights of consumers in class action cases.  He also has testified before the Arizona Legislature in connection with legislation on the Arizona Anti-Racketeering Act, the Arizona Securities Fraud Act and proposed legislation to limit the ability of consumers to obtain relief through class actions.

Mr. Friedman received his Bachelor of Arts Degree from the University of Rochester in 1975 (high distinction) and his Law Degree from Duke University School of Law in 1978 (Order of the Coif, high distinction).  He serves as a Board member of Public Justice, a public interest organization and is also a member of the American Association of Justice and Consumer Attorneys of California.   Mr. Friedman was a finalist for the Public Justice Trial Lawyer of the Year in 2008 and a finalist for the CAOC Consumer Attorney of the Year in 2009.

Mr. Friedman served as a Board member of the Public Justice Foundation and currently serves as a Board member of Public Citizen.  Mr. Friedman has performed *pro bono* services on behalf of non-profit organizations, including the Jewish Children and Family Services and private litigants.

Mr. Friedman is a founding member of Bonnett, Fairbourn, Friedman & Balint.

 **FRANCIS J. BALINT, JR.**'s practice focuses on consumer class action litigation, qui tam actions under the federal False Claims Act, insurance coverage and defense matters, and appellate work.  He has represented clients in class litigation involving federal and state securities laws, deceptive insurance sales practices, and other consumer claims.  In particular, Mr. Balint served as counsel for the relator in *Todarello v. Beverly Enterprises*, (D. Ariz. & N.D. Cal.) a qui tam action which led to a recovery by the United States Government of $170 million. Successful appellate decisions include: *Atchison, Topeka and Santa Fe Ry. Co. v. Brown & Bryant*, Inc., 159 F.3d 358 (9th Cir. [Cal.] Oct. 14, 1998); *Taylor AG Industries v. Pure-Gro*, 54 F.3d 555 (9th Cir. [Ariz.], Apr. 24, 1995); *Ranch 57 v. City of Yuma*, 152 Ariz. 218, 731 P.2d 113 (Ariz. App. Div. 1, Sept. 2, 1986).  Mr. Balint is a former President of the Arizona Association of Defense Counsel (1999-2000), a former member of its board of directors and former chairman of its Amicus Committee.

Mr. Balint served as co-counsel for the Lead Plaintiffs and the investor class in the litigation arising out of the collapse of the Baptist Foundation of Arizona, the largest charitable institution fraud case in United States history. The recovery achieved for investors, after four years of highly adversarial litigation, exceeded $250 million.

Mr. Balint also served as co-counsel for the Lead Plaintiff, the Policemen's Annuity and Benefit Fund of Chicago, and a class of shareholders seeking relief under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5. *In re Apollo Group, Inc.*, CV-04-2147-PHX-JAT (D. Ariz.) was one of only six such cases to have been taken to trial since the passage of the PSLRA. Lead Plaintiff successfully obtained a verdict of approximately $275 million for Apollo shareholders.

Other class action cases which Mr. Balint has litigated include *Cheatham v. ADT LLC* (Consumer Protection); *Harshbarger v. The Penn Mutual Life Insurance Company* (Policyholder Protection); *The Apple iPod iTunes Anti-Trust Litigation* (Antitrust); *Facciola v. Greenberg Traurig* (Securities Fraud); *In Re: Prudential Insurance Company of America SGLI/VGLI Contract Litigation* (Policyholder Protection); *Yue v. Conseco Life Insurance Company* (Policyholder Protection); *Orthologic Securities Fraud Litigation*. (Securities Fraud); *In re Skymall* (Securities Fraud); *Rogers v. American Family* (Policyholder Protection).

Mr. Balint received his Bachelor of Arts Degree with high distinction from the University of Virginia in 1979.  He received his law degree in 1982 from the University of Virginia.  Mr. Balint was admitted to the Bar in the Commonwealth of Virginia in 1982, the District of Columbia in 1982, the State of Arizona in 1983, and the Commonwealth of Massachusetts in 2010; he is admitted to practice before the U.S. Supreme Court, the U.S. Court of Appeals for the Fourth, Fifth, Seventh, Ninth and Tenth Circuits, and the U.S. District Court for the District of Arizona, the District of Colorado, the Eastern District of Virginia, the Central District of Illinois and the District of Massachusetts.

Mr. Balint was a sole practitioner in Virginia for a short period of time before becoming associated with Evans, Kitchel & Jenkes, P.C., a large Phoenix law firm.  In 1984, Mr. Balint became a founding member of Bonnett, Fairbourn, Friedman & Balint, P.C.

**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**

**ATTORNEYS**

**JERRY C. BONNETT**, born Canton, Illinois, April 3, 1946; admitted to bar, 1973, Arizona; 1977, United States Supreme Court; U.S. Court of Appeals, Seventh, Eighth and Ninth Circuits; U.S. District Court, District of Arizona, and U.S. Tax Court.  Education: University of Illinois (B.S., with highest honors, 1969; LL.M., 1974); Arizona State University (J.D., *magna cum laude*, 1973).  Articles Editor, *Arizona State Law Journal*, 1972-1973.  Judge Pro Tem, Arizona Court of Appeals, Division One, 1986 and 1992.  Member, American Law Institute.

**WILLIAM G. FAIRBOURN**, born Salt Lake City, Utah, April 21, 1947; admitted to bar, 1973, Arizona; Arizona Supreme Court; U.S. District Court, District of Arizona; United States Court of Appeals, Ninth Circuit.  Education:  University of Utah (B.S., 1970); Arizona State University (J.D., 1973).  Member: Maricopa County Bar Association (Member, Board of Directors, 1984-1986); Arizona Association of Defense Counsel (Member, Board of Directors, 1981-1989; President, 1986); American Board of Trial Advocates (President Phoenix Chapter, 1994); Fellow, American College of Trial Lawyers.

**ANDREW S. FRIEDMAN**, born Plainfield, New Jersey, September 26, 1953; admitted to bar, 1978, Arizona; U.S. Court of Appeals, Ninth Circuit; U.S. District Court, District of Arizona; U.S. Supreme Court.  Education:  University of Rochester (B.A., with high distinction, 1975); Duke University (J.D., with high distinction, 1978).  Order of the Coif.  Member: State Bar Committee on Civil Practice and Procedure (1980-1984); State Bar Committee on Bench-Bar Relations (1991); State Bar Bankruptcy Section; National Association of Commercial Trial Attorneys (1991-present); American Bar Association, Trial Practice Committee, Subcommittees and Class and Derivative Actions.

**FRANCIS J. BALINT, JR.**, born Pittsburgh, Pennsylvania, January 9, 1957; admitted to bar, 1982, Virginia and District of Columbia; 1983, Arizona; U.S. District Court, Districts of Arizona and Virginia; U.S. Court of Appeals, Fourth and Ninth Circuits; U.S. Supreme Court.  Education: University of Virginia (B.A., with high distinction, 1979; J.D., 1982).  Former President: Arizona Association of Defense Counsel (Member, Board of Directors 1988 - 2001).

**VAN BUNCH**, born Chattanooga, Tennessee, April 28, 1957; admitted to bar, 1984, Arizona; 2007, West Virginia; U.S. District Court, District of Arizona.  Education: Vanderbilt University (B.A., 1979); University of Tennessee at Knoxville (J.D., with high honors, 1984).  Order of the Coif.

**MICHAEL N. WIDENER**, born Mt. Ranier, Maryland, June 10, 1950; admitted to bar, 1983, Arizona and Tennessee; United States Supreme Court; U.S. Court of Appeals, Ninth Circuit; U.S. District Court, District of Arizona.  Education: University of Virginia (B.A., with distinction, 1972); University of Illinois (M.S., 1974); University of Arizona (J.D., 1982).  Articles Editor, *Arizona Law Review*, 1980-1982.  Law Clerk to Hon. James Duke Cameron, Supreme Court of Arizona, 1982-1983.  (Certified Specialist, Real Estate Law, Arizona Board of Legal Specialization).  Adjunct Professor (Land Use and Water Law), Arizona Summit Law School; Zoning Adjustment Hearing Officer, City of Phoenix.

**ROBERT J. SPURLOCK**, born Janesville, Wisconsin, November 23, 1954; admitted to Arizona bar, 1984; U.S. District Court, District of Arizona.  Education: University of Wisconsin-Madison (B.S., with honors, 1976), Arizona State University (J.D., 1984).  Law Clerk to the Honorable D.L. Greer, Arizona Court of Appeals, 1984-1985; Member: Phoenix Association of Defense Counsel; Defense Research Institute; Arizona Association of Defense Counsel; American Bankruptcy Institute.  Adjunct Professor, Sandra Day O'Connor School of Law, Arizona State University.

**C. KEVIN DYKSTRA**, born Phoenix, Arizona, March 30, 1964; admitted to Arizona bar, 1989; U.S. Court of Appeals, Ninth Circuit; U.S. District Court, District of Arizona.  Education: Northern Arizona University (B.S., 1986); California Western School of Law (J.D., 1989).   Director, Arizona Association of Defense Counsel.

**ELAINE A. RYAN**, born Emmetsburg, Iowa, June 15, 1963; admitted to Arizona bar, 1989; Texas bar, 2008; Kansas bar, 2010; Missouri bar, 2010; Washington bar, 2010; Colorado bar, 2011; Utah bar, 2011; Idaho bar, 2011; U.S. District Court, District of Arizona; U.S. District Court, District of Eastern Michigan; U.S. District Court, District of Idaho; U.S. District Court, Western District of Wisconsin; U.S. District Court, Northern District of Illinois.  Education: University of Iowa (B.S., with distinction, 1986); Duke University (J.D., 1989).

**ANDREW Q. EVERROAD**, born Phoenix, Arizona, August 8, 1969; admitted to Arizona bar, 1995; U.S. District Court, District of Arizona.  Education: University of Arizona (B.A., 1992); University of London – Bloomsburg, 1990; Arizona State University (J.D., 1995).  Law Clerk to the Honorable Thomas C. Kleinschmidt, Arizona Court of Appeals, 1995-1996.

**PATRICIA N. SYVERSON**, born San Diego, California, July 16, 1975; admitted to California bar, 1999; Arizona bar, 2000; U.S. District Court, Central and Southern Districts of California; U.S. District Court, District of Arizona.  Education: University of California at San Diego (B.A., 1996); California Western School of Law (J.D., 1999).

**KIMBERLY C. PAGE**, born Washington, D.C., February 16, 1968; admitted to Georgia bar, 1993; Alabama bar, 1993; Arizona bar, 2004; U.S. District Court, Northern, Middle and Southern Districts of Alabama; U.S. Court of Appeals, Eleventh Circuit.  Education: Miami University (B.A., 1990); Cumberland School of Law of Samford University (J.D., *magna cum laude*, 1993).

**CHRISTINA L. BANNON**, born Ames, Iowa, September 16, 1968; admitted to Arizona bar, 1995; U.S. Court of Appeals, Ninth Circuit, 1997; U.S. District Court, District of Arizona.  Education: Arizona State University (B.A., *summa cum laude*, 1989); Arizona State University College of Law (J.D., *cum laude*, 1995).  Associate Articles Editor, *Arizona State University Law Journal*, 1994-1995. Law Clerk to Hon. E. G. Noyes, Jr., Arizona Court of Appeals, 1995-1996.

**MANFRED P. MUECKE**, born Inglewood, California, August 28, 1971; admitted to California bar, 2002; U.S. District Court, Southern District of California.  Education: California State University Northridge (B.A., 1996); University of San Diego (J.D., 2002); San Diego State University (M.B.A., 2009).

**WILLIAM F. KING,** born Phoenix, Arizona, October 21, 1978; admitted to Arizona bar, 2005; U.S. District Court, District of Arizona.  Education: Rockhurst College (B.A., 2001); Creighton University School of Law (J.D., *cum laude,* 2005).  Lead Articles Editor, *Creighton Law Review*, 2004-05.

**TONNA K. FARRAR**, born Sedalia, Missouri, April 9, 1972; admitted to Missouri bar, 1997; Kansas bar, 1998, California bar, 2005; U.S. District Court, Eastern and Western Districts of Missouri; U.S. District Court, District of Kansas; U.S. District Court, Central, Eastern, Northern and Southern Districts of California.   Education: University of Missouri, Columbia (B.A. 1994); University of Missouri, Kansas City School of Law (J.D. 1997).

**T. BRENT JORDAN**, born Urbana, Illinois, November 21, 1967; admitted to Minnesota bar, 1993, Pennsylvania bar, 2003; U.S. District Court, Eastern District of Pennsylvania.   Education: University of Illinois (B.A., B.S., *magna cum laude*, 1990); University of Minnesota Law School (J.D., *cum laude*, 1993).   Judicial Clerk, U.S. Magistrate Judge Raymond L. Erickson, U.S. District Court, District of Minnesota, 1993-1995.

**ANDREW M. EVANS**, born Hanover, New Hampshire, September 26, 1973; admitted to Arizona bar, 2006.   Education: University of Colorado at Boulder (B.S., *cum laude*, 1997); Arizona State University College of Law (J.D., 2006).

**TY D. FRANKEL**, born Phoenix, Arizona, November 13, 1983; admitted to Arizona bar, 2009; U.S. District Court, District of Arizona; U.S. Court of Appeals, Ninth Circuit.   Education: Boston College (B.A., Dean's List, 2006); Boston College Law School (J.D., *cum laude*, 2009).

**ERIC D. ZARD**, born Brainerd, Minnesota, April 4, 1984; admitted to Arizona bar, 2009; U.S. District Court, District of Arizona.   Education: University of Minnesota (B.S., 2006); University of Saint Thomas, Minneapolis (J.D., 2009).

**KENDALL K. WILSON**, born Tacoma, Washington, August 7, 1981; admitted to Arizona bar, 2009; U.S. District Court, District of Arizona.   Education: Brigham Young University (B.S., 2006); Arizona State University College of Law (J.D., *summa cum laude*, 2009).

**LAURA A. VAN BUREN**, born Tucson, Arizona, July 16, 1989; admitted to Arizona bar, 2014; U.S. District Court, District of Arizona.   Education: Rice University (B.A., 2011); Arizona State University College of Law (J.D., *cum laude*, 2014).

**CARRIE A. LALIBERTE**, born Juneau, Alaska, December 9, 1989; admitted to Arizona bar, 2015; U.S. District Court, District of Arizona.   Education: Washington State University (B.S., *magna cum laude,* 2012); Arizona State University College of Law (J.D., *cum laude*, 2015).

# EXHIBIT 5



# SAXENA WHITE

"A highly experienced group of lawyers with national reputations in large securities class actions…"

*– United States District Court Judge Alan S. Gold*

# FIRM RESUME

## SAXENA WHITE

Saxena White P.A. was founded in 2006 by Maya Saxena and Joseph White. After spending many years at one of the country's largest class action law firms, we wanted to do business a different way. Our goal in forming the firm was to become big enough to handle prominent and complex litigation while remaining small enough to offer each client responsive, ethical, and personalized service.

Today our firm's capabilities rival those of our largest competitors. We obtain victories against major corporations represented by the nation's top defense firms. We represent some of the largest pension funds in major securities fraud cases and have recovered almost $2 billion on behalf of injured investors. We have succeeded in improving how corporations do business by requiring the implementation of significant corporate governance reforms. We have formed long-lasting relationships with our clients who know we are only a phone call away. However, the most important attribute of the firm, and the key to its continued success, is the people. Saxena White was built upon the quality, integrity, and camaraderie, of its people — attributes that continue to be its greatest legacy.

*What Makes us Different?*

- *We are proud to be the only certified minority and female-owned firm in the securities litigation business representing institutional investors and have an ongoing commitment to diversity.*

- *We take a selective approach to litigation, recommending only a few fraud cases per year and litigating them aggressively.*

- *The securities fraud cases in which we have served as lead counsel are rarely dismissed due to our careful selection criteria.*

- *We offer tailored portfolio monitoring services to our clients that reflect their individual philosophies toward litigation.*

- *We emphasize community outreach and welcome opportunities to support our clients in their communities.*

## RECENT RECOVERIES

### In re Jefferies Group, Inc. Shareholders Litigation

Saxena White served as co-lead counsel in a class action involving breach of fiduciary duty claims against the board of directors of Jefferies Group, Inc., in connection with that company's merger with Leucadia National Corporation. In 2012, Jefferies entered into a merger agreement with Leucadia, a holding company which owned 28% of Jefferies and whose founders served on Jefferies' board.  Leucadia's founders had a longstanding personal and professional relationship with Jefferies CEO, Richard Handler, which included lucrative joint ventures, personal investment advice and support, numerous financing transactions, and off-market stock purchases. As Leucadia's founders neared retirement, Handler recognized an opportunity to merge his company with Leucadia and serve as CEO of the much larger, combined company. Negotiating in secret for months before informing the independent board members, Handler and Leucadia's founders structured a deal that greatly benefitted Leucadia, to the detriment of Jefferies shareholders.

After aggressively litigating this case for almost two years and defeating the defendants' motion to dismiss and motion for summary judgment, the plaintiffs ultimately negotiated a settlement which required Leucadia to pay $70 million to class members, an outstanding result for former Jefferies shareholders.

### City Pension Fund for Firefighters and Police Officers in the City of Miami Beach v. Aracruz Celulose S.A., et al.

One of our firm's areas of expertise is litigating cases against foreign corporations. We recently obtained a significant victory against a Brazilian corporation, Aracruz Celulose. Accomplishing what no other law firm has ever done, Saxena White successfully served process on all three individual executives under the Inter-American Convention on Letters Rogatory. Our efforts included working closely with a Brazilian law firm to defeat the defendants' challenges to service in both the Brazilian trial and appellate courts.

After defeating three motions to dismiss filed by the foreign defendants, Saxena White began the massive and highly technical discovery process. Because the vast majority of the documents were in Portuguese, we hired native Brazilian attorneys to analyze and translate the tens of thousands of documents that were produced. These documents were also incredibly complex, dealing with five dozen separate financial derivative instruments. Simply valuing one instrument required approximately 50,000 calculations. We consulted closely with highly-respected industry and academic experts to gain an unprecedented understanding of the workings of these instruments and how they were valued.

In the end, our hard work paid off. Saxena White successfully negotiated a $37.5 million settlement against Aracruz and its executives. This represents up to 50% of maximum provable damages – an outstanding result compared to the average national recovery of just 2.2% in cases of this magnitude.

### In re Bank of America Securities, Derivative and ERISA Litigation

This derivative case arose out of Bank of America's acquisition of Merrill Lynch during the height of the financial crisis in late 2008.  After successfully defending the complaint's core allegations against multiple motions to dismiss, Saxena White embarked on an extensive discovery process that included 31 depositions of senior BofA and Merrill executives and their attorneys, the review and analysis of 3 million pages of documents from BofA, Merrill and

multiple third parties, and close consultation with nationally recognized financial and economic experts.

On January 11, 2013, the Court approved the Settlement, which includes a $62.5 million cash component and fundamental corporate governance reforms. The cash component alone ranks this Settlement among the top ten derivative settlements approved by federal courts. The extensive corporate governance reforms include the creation of a Board-level committee tasked with special oversight of mergers and acquisitions, which is aimed at preventing the alleged deficiencies surrounding the Merrill Lynch acquisition. The corporate governance reforms also include other components, including revisions to committee charters and director education requirements, which caused one noted scholar to observe that BofA is now at the forefront of corporate governance practices.

### In re Lehman Brothers Equity/Debt Securities Litigation

After conducting an extensive investigation into Lehman and its executives, Saxena White was the first firm to file a complaint alleging violations of the federal securities laws. Subsequent events, including the largest bankruptcy filing in U.S. history, interjected unique challenges to prosecuting this case – not the least of which was that because Lehman itself was in bankruptcy, damaged shareholders could not recover damages from it.

Despite these formidable obstacles, we continued to prosecute the case. Our efforts paid off. In the spring of 2012, the Court approved a $90 million partial settlement with Lehman's senior executives and directors, and a $426 million settlement with several dozen underwriters of its securities. After nearly two more years of hard-fought litigation, we reached a $99 million settlement with E&Y, Lehman's outside auditor, which was approved in the spring of 2014. The $99 million settlement ranks among the largest ever obtained from an outside auditor and is an outstanding recovery for damaged shareholders.

### FindWhat Investor Group v. FindWhat.com

Saxena White also has significant appellate experience. In this Eleventh Circuit appeal, we won a precedent-setting opinion with the court holding that corporations and their executives who make fraudulent statements that prevent artificial inflation in a company's stock price from dissipating are just as liable under the securities laws as those whose fraudulent statements introduce artificial inflation into the stock price in the first place. The Eleventh Circuit rejected the defendants' position that the mere repetition of lies already transmitted to the market cannot damage investors. "We decline to erect a per se rule," wrote the court, that "once a market is already misinformed about a particular truth, corporations are free to knowingly and intentionally reinforce material misconceptions by repeating falsehoods with impunity."

The Eleventh Circuit's opinion is a significant win for aggrieved investors. It is the first such ruling from any of the Courts of Appeals in the nation, and will help defrauded investors seeking to recover damages due to fraud.

### Central Laborers' Pension Fund v. Sirva

Saxena White served as sole lead counsel in this case, which was litigated in the Northern District of Illinois (SIRVA is the parent company of North American Van Lines). After two and a half years of hard-fought litigation, an extensive investigation which involved conducting nearly 120 witness interviews, and the review of approximately 2.7 million documents produced by Defendants, a two day mediation was conducted at which we were able to reach a global $53.3 million settlement on behalf of the proposed shareholder class. In addition, Saxena White conducted a comprehensive review of SIRVA's corporate governance procedures in an effort to ensure that securities fraud and

accounting violations were less likely to occur at the Company in the future. This careful and comprehensive review, which was spearheaded in conjunction with retained corporate governance experts, confirmed that SIRVA had made great strides in improving its governance standards over the course of our lawsuit. This was especially true in the area of its internal controls, which was a primary concern. The company formally recognized, in writing, that the lawsuit was one of the main reasons it reformed its governance standards, which confirmed that Saxena White was the key catalyst compelling SIRVA to recognize the need to change the way it does business.

In addition, Saxena White was able to obtain even more governance improvements by convincing the Board to discard their plurality (also known as "cumulative") standard for the election of their directors in favor of a modified majority standard (also known as the "Pfizer model"). This important change gives every SIRVA shareholder a greater voice, as well as improving director accountability, by forcing directors who do not receive a majority of the votes to tender their resignation for the Board's consideration. Furthermore, SIRVA also agreed to strengthen its requirements regarding director attendance at shareholder meetings, which created more director accountability and increased shareholder input. Importantly, judges are unable to order these types of governance changes – it was only the negotiation and litigation pressure that we imposed upon the Company that allowed these changes to be implemented.

## In re Sadia S.A. Securities Litigation

Sadia was a Brazilian company specializing in poultry and frozen goods that exported a majority of its products. Like Aracruz, it engaged in wildly speculative currency hedging while telling investors that its hedges were conservative and used to protect against sudden changes in currency fluctuation. The Plaintiffs filed a securities fraud complaint against Sadia and its senior executives and board members alleging violations of the federal securities laws. Because the individual Defendants in this case were also citizens of Brazil, they had to be served pursuant to the Inter-American Convention on Letters Rogatory.  We were successful in serving the individuals, once again accomplishing what few other law firms have been able to do.

We prevailed on the motion to dismiss and on the motion for class certification. Discovery was greatly complicated by the fact that the vast majority of the documents were in Portuguese, and the Court had no subpoena power to force witnesses to appear for deposition. In spite of this, we hired attorneys fluent in Portuguese to help us with the review, and we were able to depose one of the Company's executives. After three mediations over the course of eight months, we were able to reach a $27 million cash settlement with the Defendants.

## In re Cox Radio, Inc. Shareholders Litigation

Saxena White represented a Florida Police Pension Plan in an action against Cox Radio. The Pension Plan alleged that the initial price offered to public shareholders in the tender offer was unfair and did not properly value the assets of Cox Radio. After considerable discovery and expedited motion practice, we were instrumental in raising the price of the deal by nearly 30%, creating nearly $18 million in additional value for all public shareholders, including the Pension Plan. We also obtained the issuance of additional meaningful disclosures regarding the valuation process used in the deal.

*In re Clear Channel Outdoor Holdings, Inc. Derivative Litigation*

On March 23, 2012, Saxena White, on behalf of an institutional investor client, filed a derivative action on behalf of nominal defendant Clear Channel Outdoor Holdings ("Outdoor" or the "Company") against certain of the Company's current and former directors; its majority stockholder, Clear Channel Communications, Inc. ("Clear Channel"); and other entities with respect to a 2009 agreement between the Company and Clear Channel. The derivative action brought forth claims that Outdoor's directors breached their fiduciary duties by approving a $1 billion unsecured loan on highly unfavorable terms to Clear Channel. In response to the claims brought forth in the derivative action, the Company's Board of Directors established a Special Litigation Committee (the "SLC") and empowered it to investigate the matters and claims raised in the action.

After an extensive evaluation and investigation of the derivative claims, the SLC initiated discussions with certain of the Defendants to explore the prospects of settlement. The SLC also initiated discussions with Plaintiffs in order to explore the prospects of settling the derivative action. After several months of working with the SLC, the parties to the derivative action reached an agreement in principle to resolve the action on terms that will provide substantial and meaningful benefits to the Company and its shareholders, including an agreement that would provide a dividend to shareholders in the amount of $200 million, as well as additional corporate governance reforms. The settlement agreement acknowledges that Plaintiffs' involvement in the settlement negotiations was a factor in achieving the benefits received by Outdoor and its shareholders as a result of the settlement.

ATTORNEYS

# Maya S. Saxena

Maya Saxena, co-founder of the firm, has been practicing exclusively in the securities litigation area for over seventeen years, representing institutional investors in shareholder actions involving breaches of fiduciary duty and violations of the federal securities laws. She is a frequent speaker at educational forums involving public pension funds and advises public and multi-employer pension funds on how to address fraud-related investment losses.

Ms. Saxena has been instrumental in recovering hundreds of millions of dollars for defrauded shareholders including cases against Sirva Inc. ($53.3 million recovery), Helen of Troy ($4.5 million settlement), and Sunbeam (settled with Arthur Andersen LLP for $110 million - one of the largest settlements ever with an accounting firm - and a $15 million personal contribution from former CEO Al Dunlap).

Prior to forming Saxena White, Ms. Saxena served as the Managing Partner of the Florida office of one of the nation's largest securities litigation firms, successfully directing numerous high profile securities cases. Ms. Saxena gained valuable trial experience before entering private practice while employed as an Assistant Attorney General in Ft. Lauderdale, Florida. During her time as an Assistant Attorney General, Ms. Saxena represented the State of Florida in civil cases at the appellate and trial level and prepared amicus curiae briefs in support of state policies at issue in state and federal courts. In addition, Ms. Saxena represented the Florida Highway Patrol and other law enforcement agencies in civil forfeiture trials.

Ms. Saxena graduated from Syracuse University *summa cum laude* in 1993 with a dual degree in policy studies and economics, and graduated from Pepperdine University School of Law in 1996.

Ms. Saxena is a member of the Florida Bar, and is admitted to practice before the U.S. District Courts for the Southern, Northern, and Middle Districts of Florida, as well as the Fifth and Eleventh Circuit Courts of Appeal. She was recently recognized in the *South Florida Business Journal*'s "Best of the Bar" as one of the top lawyers in South Florida, and has been selected to the Florida Super Lawyers list five years in a row. Ms. Saxena was also selected by her peers for inclusion in *The Best Lawyers in America* © 2016 in the field of Commercial Litigation.

# Joseph E. White III

Joseph E. White, III, co-founder of Saxena White, has represented shareholders as lead counsel in major securities fraud class actions and merger litigation nationwide. He has represented lead and representative plaintiffs in front-page cases, including actions against Bank of America, Lehman Brothers, and Washington Mutual. He has successfully settled cases yielding over $1 billion against numerous publicly traded companies. Mr. White has developed an expertise in litigating precedent setting cases against foreign publicly traded companies, and recently settled two cases involving Brazilian corporations: *In re Sadia S.A. Securities Litigation*, ($27 million) and *In re Aracruz Cellulous Sec. Litig,* ($37.5 million). Mr. White has also helped achieve meaningful corporate governance and monetary recoveries for shareholders in merger related and derivative lawsuits. Most recently, in *In re Clear Channel Outdoor Holdings Der. Litig.*, Mr. White's efforts obtained repayment of a $200 million loan from Outdoor's parent company which was then paid as a special dividend to Outdoor shareholders.

Mr. White regularly lectures on topics of interest to pension trustees, and advises municipal, state, and international institutional investors on instituting effective systems to monitor and prosecute securities and related litigation.

Mr. White earned an undergraduate degree in Political Science from Tufts University before obtaining his Juris Doctor from Suffolk University School of Law. He is a member of the bar of the Commonwealth of Massachusetts, the State of Florida, and the State of New York, as well as the United States District Courts for the Southern, Middle, and Northern Districts of Florida, the Southern District of New York, and the District of Massachusetts. Mr. White is also a member of the United States Supreme Court and the United States Circuit Courts of Appeal for the First, Second, and Eleventh Circuits.

## Steven B. Singer

Steven B. Singer is the Director of Litigation at Saxena White. Prior to joining the Firm, Mr. Singer was employed for more than twenty years at Bernstein Litowitz Berger & Grossmann LLP, a well-known plaintiffs' firm, where he served as a senior partner and member of the firm's management committee.

During his career Mr. Singer has been the lead partner responsible for prosecuting many of the most significant and high-profile securities cases in the country, which collectively have recovered billions of dollars for investors. He led the litigation against Bank of America relating to its acquisition of Merrill Lynch, which resulted in a landmark settlement shortly before trial of $2.43 billion, one of the largest recoveries in history. Mr. Singer's work on that case was the subject of extensive media coverage, including numerous articles published in The New York Times. He also has substantial trial experience, and was one of the lead trial lawyers on the WorldCom Securities Litigation, which settled for more than $6 billion after a four-week jury trial.

In addition, Mr. Singer has been lead counsel in numerous other actions that have resulted in substantial settlements, including cases involving Citigroup Inc. ($730 million, representing the second largest recovery in a case brought on behalf of bond purchasers), Lucent Technologies ($675 million), Mills Corp. ($203 million), WellCare Health Plans ($200 million), Satyam Computer Services ($150 million), Biovail Corp. ($138 million), Bank of New York Mellon ($180 million) and JP Morgan Chase ($150 million).

Mr. Singer has been consistently recognized by industry observers for his legal excellence and achievements. He has been selected by Lawdragon magazine as one of the "500 Leading Lawyers in America," by Benchmark Plaintiff as a "litigation star", and by the Legal 500 US guide as one of the "Leading Lawyers" in securities litigation – one of only seven plaintiffs' attorneys so recognized.

Mr. Singer graduated cum laude from Duke University in 1988, and from Northwestern University School of Law in 1991. He is an active member of the New York State and American Bar Associations.

## Lester R. Hooker

Lester Hooker is a Director of Saxena White and serves as the firm's Manager of Case Origination. Mr. Hooker is involved in all of Saxena White's practice areas, including securities class action litigation, shareholder derivative actions, merger & acquisition litigation and class actions on behalf of consumers. During his tenure at Saxena White, Mr. Hooker has obtained substantial monetary recoveries and secured valuable corporate governance reforms on behalf of investors nationwide.

Mr. Hooker has served on the litigation teams that successfully prosecuted securities fraud class actions such as *In re Jefferies Group, Inc. Shareholders Litigation*, No. 8059-CB (Del. Chanc.) ($70 million settlement); *Central Laborers' Pension Fund v. Sirva, Inc.*, No. 04 C-7644 (N.D. Ill.) ($53.3 million settlement along with the adoption

of important corporate governance reforms); *City Pension Fund for Firefighters and Police Officers in the City of Miami Beach v. Aracruz Celulose S.A., et al.*, No. 08-23317 (S.D. Fla.) ($37.5 million settlement); *In re Sadia, Inc. Securities Litigation*, No. 08 Civ. 9528 (S.D.N.Y.) ($27 million settlement); and *In re Tower Group International, Ltd. Securities Litigation*, No. 13-cv-05852 (S.D.N.Y.) ($20.5 million settlement). Mr. Hooker is currently part of the litigation teams prosecuting prominent securities fraud class actions such as *In re Wilmington Trust Securities Litigation* (D. Del.), *In re Iconix Brand Group, Inc.* (S.D.N.Y.) and *In re Rayonier Inc. Securities Litigation* (M.D. Fla.).

Mr. Hooker received a Bachelor of Arts degree with a major in English from the University of California at Berkeley. He earned his Juris Doctor from the University of San Diego School of Law, where he was awarded the Dean's Outstanding Scholar Scholarship. Mr. Hooker received his Master's degree in Business Administration with an emphasis in International Business from the University of San Diego School of Business, where he was awarded the Ahlers Center International Graduate Studies Scholarship.

Mr. Hooker is a member of the State Bars of California and Florida, and is admitted to practice law in the United States District Courts for the Northern, Central, Southern and Eastern Districts of California, the Southern, Middle and Northern Districts of Florida, and the Western District of Michigan. Mr. Hooker is also admitted to practice law in the United States Courts of Appeal for the Ninth and the Eleventh Circuits.

# Jonathan M. Stein

Jonathan Stein serves as Senior Counsel at Saxena White where he is involved in all aspects of complex litigation, including shareholder class and derivative actions, consumer fraud, and commercial litigation. A substantial portion of Mr. Stein's practice is dedicated to the representation of public shareholders of companies whose shares are acquired through management buyouts, leveraged buyouts, mergers, acquisitions, tender offers, and other change-of-control transactions.

Mr. Stein has been successful in restructuring many transactions and recovering millions of dollars in additional value for shareholders. For example, he was co-lead counsel in *In re Jefferies Group, Inc. Shareholders Litigation*, where after defeating a summary judgment motion, the case settled for $70 million. He was also co-lead counsel in *In re UnitedGlobalCom Shareholders Litigation*, where on the eve of trial, the case settled for $25 million in additional compensation for the UnitedGlobalCom shareholders. Additionally, Mr. Stein was also counsel for the plaintiff in *Charter Township of Clinton Police and Fire Ret. Sys. v. OSI Rest. Partners, Inc.*, et al., where as part of the settlement, the defendants provided the public shareholders with additional material information about the transaction, helping the shareholders hold out for an additional $68 million in consideration for their shares.

Mr. Stein has also been successful in prosecuting consumer fraud class actions. For instance, Mr. Stein was Class Counsel in *Gemelas v. The Dannon Co., Inc.*, which resulted in the largest food-related class action settlement ever, wherein Dannon agreed to make certain changes to the labels for Activia® and DanActive® and agreed to pay up to $45 million to reimburse consumers for their purchases of the products. He was also co-lead counsel in *Smith v. Wm. Wrigley, Jr. Co.*, which settled in the spring of 2010, which caused Wrigley to establish a settlement fund of up to $7 million to reimburse consumers for their Eclipse® gum purchases and to remove the misleading "germ killing" message from the product label and in advertising.

Prior to joining Saxena White, Mr. Stein began his practice of law in Fort Lauderdale as a prosecutor in the State Attorney's Office for the Seventeenth Judicial Circuit of Florida, handling numerous jury trials. Before concentrating his practice in class action litigation, he practiced as a litigator fighting insurance fraud with one of Florida's largest

law firms. Mr. Stein also previously ran his own class action firm and was a partner with the largest class action firm in the country.

Mr. Stein earned a degree in Business Administration from the University of Florida, where he concentrated his studies in Finance. While at the University of Florida, he was selected to join the honor society of Omicron Delta Epsilon, recognizing outstanding achievement in Economics. Mr. Stein earned his Juris Doctor degree from Nova Southeastern University, where he was the recipient of the American Jurisprudence Book Award in Federal Civil Procedure and served as Chief Justice of the Student Honor Court.

Mr. Stein is licensed to practice law in the state courts of Florida, as well as in the Supreme Court of the United States, the Circuit Courts of Appeal for the Eleventh and Third Circuits, and the United States District Courts for the Northern, Southern, and Middle Districts of Florida, and the District of Colorado. In addition to these courts and jurisdictions, Mr. Stein regularly works on cases with local counsel throughout the country. Mr. Stein has been or is a member of the Association of Trial Lawyers of America, the American Bar Association, the Palm Beach County Bar Association, and the South Palm Beach County Bar Association.

## Rhonda Cavagnaro

Rhonda Cavagnaro is Special Counsel to Saxena White and a member of the firm's Institutional Outreach group. She brings extensive expertise in many areas of employee benefits and pension administration with nearly two decades of public fund experience. Ms. Cavagnaro frequently speaks at industry conferences to further trustee education on fiduciary issues facing institutional investors.

Ms. Cavagnaro began her legal career as an Assistant District Attorney ("ADA") in New York City, where she was instrumental in creating the office's General Crimes Unit, covering major crimes. As an ADA, Ms. Cavagnaro gained valuable trial experience and prosecuted hundreds of misdemeanor and felony cases.

Ms. Cavagnaro started her career serving public pensions as Assistant General Counsel at the New York City Employees' Retirement System (NYCERS). She then went on to become the first General Counsel to the New York City Police Pension Fund in February 2002, where she worked for over 11 years, providing advice to the Board of Trustees and 140 member staff with respect to benefits administration, fiduciary issues, employment issues, legislation, and transactional matters. Ms. Cavagnaro last served as the Assistant CEO for the Santa Barbara County Employee's Retirement System (SBCERS), where under the general direction of the CEO and Board of Trustees, she oversaw the day to day operations of the System.

Ms. Cavagnaro graduated with a Bachelor of Arts in Political Science and History from the University of Rochester, in Rochester, New York and earned her Juris Doctor from the California Western School of Law in San Diego, California. She is a member of the New York and New Jersey State Bars and is admitted in the Southern and Eastern Districts of New York, and is a current member of the National Association of Public Pension Attorneys (NAPPA).

## Jorge A. Amador

Jorge A. Amador is Special Counsel to Saxena White and Director of Forensic Accounting. He has extensive experience in analyzing and litigating complex accounting cases. Mr. Amador is a Certified Public Accountant, and Certified in Financial Forensics.

For over 15 years, Mr. Amador has prosecuted class actions and private actions on behalf of defrauded investors, particularly in the area of accounting fraud. Previously, he served as the Director of Forensic Accounting of one of the nation's largest securities litigation firms, where he led a group of accounting professionals that investigated private securities lawsuits involving complex financial issues. He has participated in the litigation of highly complex accounting scandals involving some of America's largest corporations including Enron, Tyco, Rite Aid, Countrywide, and Xerox.

Prior to beginning his legal career, Mr. Amador was a practicing CPA where he directed audits of public companies and closely-held businesses, ranging from financial services to construction companies. In addition, he led a variety of engagements including due diligence in mergers and acquisitions, investigations related to white-collar crime, and consulted and/or testified in business disputes involving valuation issues and piercing of the corporate veil.

Mr. Amador regularly lectures on a variety of accounting and legal topics. He was an adjunct lecturer at Baruch College where he taught undergraduate and graduate level courses in Financial Accounting, Financial Statement Analysis, and Forensic Accounting. He has also been a speaker and the co-chair of the Practising Law Institute's Accounting for Lawyers two-day conference.

Mr. Amador is currently a member of the California State Bar, admitted in the Northern District of California, and a member of the American Institute of Certified Public Accountants (AICPA). He graduated with a Bachelor of Science in Business Administration (Accounting) from Norwich University, in Northfield, Vermont and earned his Juris Doctor from Concord School of Law in Los Angeles, California. Mr. Amador is also fluent in Spanish.

## Brandon Grzandziel

Brandon Grzandziel focuses his practice on representing institutional investors in class action securities fraud and complex shareholder derivative cases.  He is currently a member of the teams prosecuting cases against Wilmington Trust, Knight Capital, and the Bank of New York Mellon.

Recently, Mr. Grzandziel has been a member of the teams securing significant recoveries for investors in *City Pension Fund v. Aracruz Celulose S.A.* ($37.5 million recovery against a foreign defendant), *In re Bank of America* ($62.5 million settlement, which ranks among the top ten derivative settlements approved by the federal courts); and *In re Sadia, S.A. Securities Litigation* ($27 million settlement against foreign defendants). Mr. Grzandziel also has extensive appellate experience. As a member of the appellate team in *FindWhat Investor Group v. FindWhat. com*, he successfully secured important new precedent for the protection of investors.

Mr. Grzandziel earned his Bachelor of Arts from Wake Forest University, where he graduated with Honors in 2005. In 2008, he received his Juris Doctor from the University of Miami School of Law. While at the University of Miami, Mr. Grzandziel was Executive Editor of the University of Miami Business Law Review. His article, "A New Argument for Fair Use Under the Digital Millennium Copyright Act," was published in the Spring/Summer 2008 issue.

Mr. Grzandziel is a member of the Florida Bar, the United States District Courts for the Southern and Middle Districts of Florida, and the United States Court of Appeals for the Second Circuit.

## Adam Warden

Adam Warden focuses his practice on merger and acquisition litigation, shareholder derivative actions, and consumer class actions. During his tenure at Saxena White, Mr. Warden has served as a member of the litigation

team on *In re Jefferies Group, Inc. Shareholders Litigation*, a case involving conflicts of interest arising from the merger of an investment bank and a holding company. The Jefferies case ultimately settled for $70 million, one of the largest settlements in the history of the Delaware Court of Chancery. He was also part of the litigation team on *In re Lender Processing Services, Inc., Shareholder Litigation*, where the defendants agreed to provide shareholders with significant corporate governance reforms and additional financial disclosures related to a proposed merger, which allowed the shareholders to make a more fully informed vote on the transaction. Further, Mr. Warden served on the litigation team in *In re Sunoco Inc.*, where the defendants agreed to provide the public shareholders of Sunoco with additional material information about the proposed sale of the company, along with $100,000 in outplacement assistance services to local employees laid off within one year of the merger.

Mr. Warden earned his Bachelor of Arts degree from Emory University in 2001 with a double major in Political Science and Psychology. He received his Juris Doctor from the University of Miami School of Law in 2004.  During law school, Mr. Warden served as the Articles Editor of the *University of Miami International and Comparative Law Review*. His article, "The Battle in Seattle and Beyond: A Brief History of the Antiglobalization Movement" was published in the Review's Winter 2004 issue.

Mr. Warden is a member of the Florida Bar and the District of Columbia Bar. He is admitted to the United States District Courts for the Southern, Middle, and Northern Districts of Florida.

# KATHRYN WEIDNER

Kathryn Weidner is currently a member of the team prosecuting *In re Wilmington Trust Securities Litigation*. She has a strong background in e-discovery, providing project management and litigation support services to national organizations and Fortune 500 companies for large-scale corporate litigations, mergers, and acquisitions. Prior to joining Saxena White, Ms. Weidner developed valuable litigation skills as a full-time Certified Legal Intern for the Department of Homeland Security.

Ms. Weidner earned a Bachelor of Business Administration from the University of Miami in 2003, with a major in Political Science. During college, she studied abroad at Oxford University, England as part of an Honors program for law and politics. Ms. Weidner received her Juris Doctor from Nova Southeastern University in 2006, where she graduated *cum laude* with a concentration in International Law. While at Nova, her outstanding course work regularly earned Dean's List and Provost Honor Roll, and she was honored with CALI Book Awards for Secured Transactions and Business Planning Law. Upon graduation, Ms. Weidner was the recipient of the Larry Kalevitch Scholarship Award for exhibiting the most promise in Business and Bankruptcy law.

Ms. Weidner is a member of the Florida Bar, and the United States District Courts for the Southern and Northern Districts of Florida.

# DIANNE ANDERSON

Ms. Anderson is currently a member of the litigation teams prosecuting significant securities fraud class actions, such as *In re Wilmington Trust Securities Litigation* and *Fernandez v. Knight Capital Group, Inc., et al*. Before joining Saxena White, Ms. Anderson was a legal intern for both Jack in the Box, Inc. and Alliant Insurance Services, Inc. She worked extensively with their in-house departments, assisting in a variety of corporate, employment, and government regulation matters. Ms. Anderson was an intern for Jewish Family Service of San Diego and a legal intern for Housing Opportunities Collaborative, two San Diego pro bono legal organizations. Additionally, she

served as a legal intern for the San Diego City Attorney's Office with their Advisory Division, Public Works Section.

Ms. Anderson graduated from the University of California, San Diego in 2008, where she received a Bachelor of Arts degree, majoring in Political Science with a minor in Law and Society. In 2012, she received her Juris Doctor from the University of San Diego School of Law. While attending law school, Ms. Anderson earned various scholarships and awards, including the San Diego La Raza Lawyers Association Scholarship and Frank E. and Dimitra F. Rogozienski Scholarship for outstanding academic performance in business law courses. Her exceptional law school academic achievements culminated in two CALI Excellence for the Future Awards for receiving the top grade in her Fall 2011 International Sports Law and Entertainment Law classes. Ms. Anderson is an alumnus of Phi Delta Phi, the international legal honor society and oldest legal organization in continuous existence in the United States.

Ms. Anderson is a member of the Florida and California State Bars. She is admitted to practice before the United States District Courts for the Southern and Northern Districts of Florida and the Northern, Central, Southern, and Eastern Districts of California.

## Manuel Miranda

Prior to joining Saxena White, Mr. Miranda gained valuable experience working as a law clerk for the Honorable Daniel R. Dominguez, United States District Judge for the District of Puerto Rico, and as an intern for the U.S. Department of Justice Civil Division. During his time as a law clerk, he researched and drafted opinions and orders, and participated and advised in civil and criminal hearings and conferences.

Mr. Miranda graduated from Bentley University in May 2010, where he received a Bachelor of Science degree in Finance. He received his Juris Doctor from the American University Washington College of Law 2013. During law school, Mr. Miranda had the highest GPA for civil trial advocacy and was a member of the Mock Trial Honor Society.

Mr. Miranda is a member of the Florida and New York Bars and is admitted to practice before the United States District Court for the District of Puerto Rico. He is fluent in Spanish.

## Tyler A. Mamone

Prior to joining Saxena White, Mr. Mamone gained valuable experience working as a Judicial Extern for the Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, and as an intern for the Federal Deposit Insurance Corporation ("FDIC") Legal Division, Litigation and Resolutions Branch. During his time with the FDIC, he worked closely with FDIC and Department of Justice attorneys on the management of claims and settlements regarding failed financial institutions.

Mr. Mamone graduated from the University of Toledo in 2011, where he received a Bachelor of Arts degree in History. He received his Juris Doctor from the University of Toledo College of Law in 2014. During law school, Mr. Mamone served as an Associate Member and Articles Editor of the University of Toledo Law Review. His article, "No Simple Compromise: Reconciling Duty and Discretion Under Colorado River Abstention in Claims for Mixed Relief" was published in the Winter 2014 issue. Mr. Mamone also served as a teaching assistant and research assistant, and received the top grade in State and Local Government Law and Taxation and Constitutional Law II.

Mr. Mamone is a member of the Florida Bar and is admitted to practice before the United States District Courts for the Northern and Southern Districts of Florida.

# Jordan Utanski

Mr. Utanski focuses his practice on merger and acquisitions litigation, shareholder derivative suits, and securities fraud class actions. Prior to joining Saxena White, Mr. Utanski gained valuable experience as an intern with the public companies and securities group of a national law firm in Ft. Lauderdale. During his time as a clinical intern, he conducted due diligence on various merger transactions, private placements, and debt restructuring exchange offers. Mr. Utanski also reviewed state broker-dealer applications under the Florida blue sky laws and registration statements, purchase agreements, and shareholder rights plans as filed with the Securities and Exchange Commission.

In 2011, Mr. Utanski graduated from the University of Florida with a Bachelor of Science in Business Administration, majoring in Economics with a minor in Mathematics. In 2014, he earned his Juris Doctor from Nova Southeastern University, Shepard Broad School of Law, where he was a member of the *Nova Law Review*.

Mr. Utanski is a member of the Florida Bar.

## PROFESSIONALS

### Marc Grobler
*Director of Case Analysis*

Marc Grobler joined Saxena White as the Director of Case Analysis in 2012. Prior to joining the firm, he served as the Senior Business Analyst in the New York office of a leading securities class action law firm and has worked within the securities litigation industry for over ten years. Mr. Grobler plays a key role in new case development including performing in-depth investigations into potential securities fraud class actions, derivative, and other corporate governance related actions. By using a broad spectrum of financial and legal industry research tools, Mr. Grobler analyzes information that helps support the theories behind our litigation efforts. Mr. Grobler is also responsible for protecting the financial interests of our clients by managing the firm's client portfolio monitoring services and performing complex loss and damage calculations.

Mr. Grobler graduated *cum laude* from Tulane University's A.B. Freeman School of Business in 1997, with a concentration in Accounting. With fifteen years of overall professional financial experience, Mr. Grobler started his career in New York at PricewaterhouseCoopers performing audit within the Financial Services Group (audit clients included Prudential Financial and Wasserstein Perella). Prior to entering the securities litigation industry, Mr. Grobler worked within the asset management group at Goldman Sachs where he was responsible for the financial reporting of a group of billion dollar fund-of-fund investments. Mr. Grobler also previously worked at UBS Warburg as a Financial Analyst in the investment banking division that focused on financial institutions such as banks, asset managers, insurance and start-up financial technology companies.

### Stefanie Leverette
*Manager of Client Services*

Stefanie Leverette is Saxena White's Manager of Client Services. In this role, she manages the firm's client outreach and developmental programs. She also oversees the firm's portfolio monitoring program services to institutional clients, the majority of which are public pension funds, state retirement systems, and Taft-Hartley Funds.  Since joining Saxena White in 2008, Ms. Leverette has coordinated the firm's presence at industry conferences attended by representatives of various institutional clients throughout the United States. In addition, Ms. Leverette is responsible for the timely dissemination of all reports, notifications, and all new cases and class action settlements that may have an impact to an investment portfolio. Ms. Leverette's main role is acting as the liaison between institutional clients and the firm.

Ms. Leverette earned her undergraduate degree in Business Administration with a focus on Management from the University of Central Florida, and her Master's degree in Business Administration with a focus on International Business at Florida Atlantic University.

### Chuck Jeroloman
*Client Services*

Mr. Jeroloman is Saxena White's Director of Marketing for Public Pension and Taft-Hartley Funds. He is currently a member of the FPPTA Advisory board and exhibits at various conferences nationwide. Mr. Jeroloman regularly speaks at the FPPTA Trustee School, American Alliance conferences, and other national pension conferences. Mr.

Jeroloman has authored several articles about pension benefits and issues. He is also an active board member for Our Fallen, a national non-profit organization which raises money for families of police officers who died in the line of duty.

Prior to joining Saxena White in 2010, Mr. Jeroloman served as a police officer for the Delray Beach Police Department for 23 years. He was a homicide/robbery detective, street level narcotics investigator, field training officer, and a member of the S.W.A.T. and Terrorists Task Force. During this time, Mr. Jeroloman spent five years as a deputy sheriff with the Rockland County Sheriff's Department. He was also a member of the Joint Terrorists Task Force with the FBI, NYPD, and Rockland County Sheriff's Department.

Mr. Jeroloman served on the Delray Beach Police and Fire Pension Board for 14 years and was a Chairman during his last five years. Additionally, he is a past member of the Delray Beach Fire and Police Voluntary Employees Beneficiary Association (VEBA) Board. Mr. Jeroloman also served 23 years as the President and union representative for the Fraternal Order of Police (FOP) and Police Benevolent Association (PBA), where he was the union treasurer.

Mr. Jeroloman earned his Associate Degree in Criminal Justice. He was an associate scout with the Anaheim Angels and Texas Rangers, and volunteered as a youth baseball coach for high school levels. He also served as a Director Vice President for the Okeeheelee Athletic Association. Mr. Jeroloman started and was Chairman to both the Wellington High Baseball Booster Association and Palm Beach Central Baseball Booster Association.

# EXHIBIT 6

# The Wright Law Office, P.A.

301 Clematis Street, Suite 3000 • West Palm Beach, Florida 33401
Telephone: 561–514–0904 • Facsimile: 561–514–0905
wrightlawoffice.com

The Wright Law Office specializes in the nationwide prosecution of class action lawsuits to obtain recoveries for its clients and correct corporate wrongdoing. We enforce the rights of consumers, insurance policy holders, homeowners, small businesses and investors in state and federal courts throughout the country.

The Wright Law Office is devoted to helping the consumer and investor. The firm, managed by William C. Wright, is dedicated to consumer, antitrust and securities class-action, as well as the firm's investment-loss practice. Mr. Wright has over 15 years of experience prosecuting class-action cases. Before joining the firm, Mr. Wright practiced at one of the leading plaintiffs' class-action firms in the United States. Prior to his career as a consumer advocate, Mr. Wright served as associate in-house counsel with United Space Alliance, a multi-billion dollar aerospace company charged with handling all space shuttle operations.

The firm has experience in dozens of high-profile class-action lawsuits of national scope, where settlements of hundreds of millions of dollars have been reached. Mr. Wright was involved in numerous nationwide class-action cases brought by dissatisfied policyholders against life insurance companies seeking redress for deceptive sales practices involving insurance products during the 1980's and 1990's. Mr. Wright has also represented African-American policyholders in class-action proceedings against life insurance companies seeking redress for racial discrimination in the sale of life insurance policies. Mr. Wright has also been meticulously involved in numerous other consumer class actions in the telecommunications, pharmaceutical, automotive, and food labeling industries for deceptive business practices.

More recently, The Wright Law Office was named co-lead counsel in a nationwide consumer class action against one of the leading baby formula manufacturers.

The firm pursues antitrust class actions in a variety of industries to protect consumers and businesses, which rely on America's free-market system, from unfair trade practices. Cases can be brought by businesses or ordinary consumers whom have suffered the anti-competitive impact of antitrust violations. These cases often reveal concealed, unlawful conduct such as price-fixing, monopolization, monopoly leveraging, essential facilities, tying arrangements, vertical restraints and exclusive dealing.

The firm also prosecutes shareholder derivative actions. Mismanagement is rampant among today's publicly-traded companies. In a shareholder derivative action, current shareholders can "stand in the shoes" of the company and take action against the officers and directors responsible for mismanagement of the company. This is the usual manner in which to bring justice to aggrieved shareholders for the failures of directors or officers that have harmed the company, and to accomplish corporate governance to rectify that mismanagement.

And on an individual basis, the firm also handles cases involving stock broker or financial advisor misconduct involving investment losses due to unsuitable investing, variable-annuity investment scams, stock churning, excessive trades, margin-trading violations, pyramid schemes and other investment frauds.