UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL EDENBOROUGH, <br><br> Plaintiff, <br><br> v. <br><br> ADT, LLC, <br><br> Defendant. | Case No. 16-cv-02233-JST <br><br> **ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** <br><br> ECF Nos. 93, 94 |

Before the Court is a Motion for Preliminary Approval of Class Action Settlement and a Motion for Leave to File a Second Amended Complaint filed by lead plaintiffs Michael Edenborough and Patricia Wilson (collectively "Plaintiffs"). ECF Nos. 93, 94. Both motions are unopposed. Id. The Court grants both motions.

**I.  BACKGROUND**

This is a class action against Defendant ADT Security Services, Inc. ("ADT" or "Defendant"), brought in this district by plaintiff Michael Edenborough ("Edenborough") on behalf of "himself and all others similarly situated." ECF No. 25 (hereinafter "Complaint") ¶ 1. Edenborough filed his initial complaint in this action in Alameda County Superior Court on March 18, 2015. ECF No. 1 at 1. On April 25, 2016, Defendant removed the case to this Court based on diversity jurisdiction under 28 U.S.C. § 1332(d)(2). On June 17, 2016, Edenborough filed the First Amended Complaint ("FAC"). ECF No. 25. On March 23, 2017, Edenborough filed a motion for leave to file a Second Amended Complaint ("SAC") which covers class actions filed in multiple jurisdictions and adds Patricia Wilson ("Wilson") as a second named plaintiff.[1] ECF No.

---

[1] Along with this Motion for Preliminary Approval of Class Action Settlement, this Court also grants Plaintiffs' Motion for Leave to File Second Amended Complaint. See ECF No. 93. This Court grants the Motion for Preliminary Approval of Class Action Settlement on the basis of the SAC.

93.

Plaintiffs Edenborough and Wilson assert claims under Florida's Deceptive and Unfair Trade Practices Act, California's Consumers Legal Remedies Act, and California's Unfair Competition Law. ECF No. 93-1 ¶¶ 53-91; Fla Stat. § 501.201 et seq; Cal. Civil Code §§ 1770 et seq.; Cal. Bus. & Prof. Code §§ 17200 et seq. Plaintiffs' claims arise from their purchase of wireless ADT home security services. Id. ¶¶ 28-38. Plaintiff generally alleges that Defendant: (1) did not fulfill its duty to disclose that the wireless home security systems sold by ADT are unencrypted, lack authentication, and are otherwise vulnerable to attack, and (2) deceived reasonable consumers by virtue of the company's lack of disclosure. Id.

After the exchange of discovery and mediation, the parties reached a proposed class action settlement valued at $16,000,000 for the benefit of settlement class members. ECF No. 94 at 9. Plaintiffs filed the motion for preliminary approval on March 23, 2017 seeking conditional certification of a settlement class pursuant to Federal Rule of Civil Procedure 23 and preliminary approval of the proposed class action settlement. Id. at 8-10. Defendant does not oppose the motion. Id. at 8.

Through this settlement, Plaintiffs and Defendant seek to resolve multiple cases in different jurisdictions that "share common factual allegations." Id. at 10. These additional cases include Baker v. ADT, filed in Illinois; Cheatham v. ADT, filed in Arizona; and Wilson v. ADT and Hernandez v. ADT, both filed in Florida. ECF No. 94 at 10. This settlement action serves as a nationwide settlement for all of these cases.[2] ECF No. 94 at 34. Plaintiffs stipulate to dismiss all other claims related to the facts alleged in this action through their Settlement Agreement, including the Baker, Cheatham, Wilson, and Hernandez actions. See Id. at 45, 51. All named plaintiffs from the preceding cases seek compensation with enhancement awards according to the current Settlement Agreement.[3] ECF No. 94-1 at 35-37.

---

[2] In the Baker action, named plaintiff Dale Baker decided after reviewing and approving the settlement that he wanted to pursue his claims individually at trial. ECF No. 94-1 ¶ 15. Baker is still included as a Class Representative, may opt out or submit a claim form, and may seek a service award. Id.

[3] After the filing of the SAC, plaintiffs Edenborough and Wilson will serve as representative class

2

## II. JURISDICTION

This Court has jurisdiction on the basis of diversity over Plaintiffs' state-law claims under 28 U.S.C. § 1332(d)(2).

## III. CONDITIONAL CLASS CERTIFICATION

### A. Legal Standard

Class certification under Rule 23 of the Federal Rules of Civil Procedure is a two-step process. First, a plaintiff must demonstrate that the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy. "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." Wang v. Chinese Daily News, Inc., 737 F.3d 538, 543 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)).

Second, a plaintiff must establish that the action meets one of the bases for certification in Rule 23(b). Here, because Plaintiffs rely on Rule 23(b)(3), they must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

When determining whether to certify a class for settlement purposes, a court must pay "heightened" attention to the requirements of Rule 23. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997). Indeed, "[s]uch attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Id. (citations omitted).

### B. Analysis

For the reasons discussed below, this Court will grant the request to conditionally certify the class for settlement purposes.

---

members for the nationwide class action settlement, but all named plaintiffs in the previous cases will be compensated with enhancement awards for their efforts as class representatives. ECF No. 94 at 8; ECF No. 94-1 at 15-16.

### 1. Rule 23(a)(1): Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, Plaintiffs allege that the exact number of class members is unknown because Plaintiffs lack information regarding specific components used in different security systems. ECF No. 94 at 23. ADT's records, however, indicate that there are potentially 6.4 million potential settlement class members. Id. Joinder of this many members would be impracticable.

In addition, while not enumerated in Rule 23, "courts have recognized that 'in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.'" Vietnam Veterans of Am. v. C.I.A., 288 F.R.D. 192, 211 (N.D. Cal. 2012) (quoting DeBremaecker v. Short, 433 F. 2d 733, 734 (5th Cir. 1970)). "[A] class definition is sufficient if the description of the class is 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member.'" Id. (quoting O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998)).

Here, the settlement class is defined as:

> All current and former ADT customers who between November 13, 2009 and August 15, 2016 entered into a contract with ADT or an ADT dealer for installation of a residential security system, or who had ADT or an ADT dealer install a residential security system, that includes at least one wireless peripheral sensor.

ECF No. 94 at 22. The potential class members are customers who purchased ADT security systems and services with a wireless peripheral sensor that may have been susceptible to a third party attack. Id. This group should be easily identifiable without administrative difficulty. The relevant time period is clearly identified as from November 13, 2009 until August 15, 2016. Id. The Court finds the class definition to be adequately defined and easily ascertainable.

### 2. Rule 23(a)(2): Commonality

A Rule 23 class is certifiable only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). For purposes of Rule 23(a)(2), "even a single common question" is sufficient. Wal-Mart, 564 U.S. at 359 (quotations and internal alterations omitted). The common contention, however, "must be of such a nature that it is capable of class-wide

4

resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 350. "What matters to class certification . . . is not the raising of common 'questions'–even in droves–but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Id. (quotation omitted).

Plaintiffs argue that several questions of law and fact are "common to all settlement class members," including:

> (1) whether ADT's wireless residential security systems are unencrypted or otherwise vulnerable to attack by unauthorized third parties;
>
> (2) whether ADT's omissions constitute the concealment, suppression, or omission of a material fact likely to mislead a consumer acting reasonably under the circumstances, to the consumer's detriment under [state law];
>
> (3) whether ADT's omissions regarding its wireless systems constitute an unfair and/or deceptive practice under [state law]; and
>
> (4) whether Plaintiffs and members of the Settlement Class were damaged as a result of ADT's alleged conduct and in what amount.

ECF No. 94 at 23-24. The Court agrees that the issues Plaintiffs identify – whether Defendant's wireless security systems were vulnerable to attack and whether the omissions misled and damaged consumers – will be central to the resolution of the case and are commonly shared by all class members. The resolution of these issues will turn on factual determinations, such as the internal technology used in the security systems and the representations to consumers, likely to be common to all class members. Thus, the Court finds that the settlement satisfies the commonality requirement.

### 3. Rule 23(a)(3): Typicality

In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). "The test of typicality 'is whether other members have the same or similar

injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Id. (quotation omitted).

The Court finds that Plaintiffs are typical of the class they seek to represent. Their claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members" and their "claims are based on the same legal theory." Hunt v. Check Recovery Sys., Inc., 241 F.R.D. 505, 511 (N.D. Cal. 2007) (quotation omitted). This is because Plaintiffs challenge the failure to disclose the risks associated with the wireless home security systems that ADT sold to all potential class members. Plaintiffs purchased ADT security services without knowledge or disclosure from ADT regarding vulnerabilities in the wireless security system, and the same can be said for other class members. ECF No. 25 at 8-9. Plaintiffs do not allege any other individual claims in this matter. Plaintiffs have satisfied the typicality requirement.

### 4. Rule 23(a)(4): Adequacy of Representation

"[T]he adequacy of representation requirement . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir. 2000). The requirement "'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)." Amchem, 521 U.S. at 626 n.20 (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 158 n.13 (1982)). Among other functions, these requirements serve to determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Falcon, 457 U.S. at 158 n.13.

Here, Plaintiffs allege the exact same injury as the rest of the proposed class, and their claims are not based on any conduct that is unique to them. Plaintiffs are typical of the class and their claims completely overlap with those of the proposed class. No evidence in the record suggests that Plaintiffs have a conflict of interest with other class members. Plaintiffs therefore have interests that "are so interrelated" with absent class members' interests that the latter "will be fairly and adequately protected." Id.

Further, the evidence demonstrates that counsel for all Plaintiffs are adequate legal representatives of the class, including: Mark Chavez and Nance Becker of Chavez & Gertler LLP, Andrew Friedman and Francis Balint of Bonnett, Fairbourn, Friedman & Balint, and Thomas Zimmerman of Zimmerman Law Offices. Chavez & Gerter is a "nationally recognized law firm" that "represents plaintiffs in consumer, civil rights, and employment class actions." ECF No. 94-1 at 86. Mark Chavez has served or is serving as lead or co-lead counsel in over 120 class actions filed in federal and state court, and Nance Becker has participated in "numerous lawsuits to enforce consumers' rights." Id. at 87-89. Bonnett, Fairbourn, Friedman & Balint have handled more than 100 class action cases over the past twenty years. Id. at 92. Andrew Friedman heads the firm's class action, securities fraud, and consumer fraud practice groups and is "devoted primarily to litigation of major class action cases in federal court." Id. at 94. Francis Balint has served as lead and co-lead counsel on a variety of class actions ranging from consumer protection to securities fraud and antitrust. Id. at 94-99. The Zimmerman Law Offices "focus on class action litigation," and Thomas Zimmerman has practiced for over twenty years, obtaining multi-million dollar jury verdicts as lead counsel in national and state-wide class action litigation. Id. at 75.

There is no information in the record to suggest that Plaintiffs' counsel have any conflicts that would prevent them from representing the class, and the Court has no reason to believe that Plaintiffs' counsel are otherwise less than qualified and competent. The Court finds that the proposed class counsel and the named Plaintiffs have and will continue to prosecute this action vigorously on behalf of the class. See Lilly v. Jamba Juice Co., 308 F.R.D. 231, 240 (N.D. Cal. 2014). The adequacy requirement is therefore satisfied.

### 5. Rule 23(b)(3): Predominance and Superiority

To certify a Rule 23 damages class, the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can

be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (quotation omitted).

As noted above, the central issues in this case are commonly shared by the members of the class. The issues Plaintiffs identify, including whether Defendant's wireless security systems were vulnerable to attack and whether the omissions misled and damaged consumers, will be central to the resolution of the case and are commonly shared by all class members. ECF No. 94 at 23-24. These issues appear to predominate over any individual issues that might affect Plaintiffs or any particular class member. Therefore, resolving these disputes in a single class action, or in this case a single class settlement, would be more efficient than resolving them on an individual level. The proposed class satisfies the requirements of Rule 23(b)(3).

Because each element of Rules 23(a) and 23(b)(3) is satisfied, this Court finds that conditional certification of the proposed settlement class is appropriate.

### 6. Appointment of Class Representatives and Class Counsel

Because the Court finds that Plaintiffs meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints them as class representatives.

In addition, when a court certifies a class, the court must appoint class counsel and must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Additionally, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs' counsel has thus far vigorously prosecuted this action by: (1) filing and amending the complaint; (2) investigating class members' potential claims; (3) propounding and reviewing discovery; (4) participating in the depositions of seventeen fact witnesses; (5) participating in two mediation sessions with Defendant; and (6) negotiating and reaching this Settlement Agreement. ECF No. 94-1 ¶¶ 12-20. In addition, as discussed above, Plaintiffs'

counsel has experience in class action litigation, including in cases involving consumer protections. The Court will therefore appoint the following class counsel pursuant to Federal Rule of Civil Procedure 23(g): Mark Chavez and Nance Becker of Chavez & Gertler LLP, Andrew Friedman and Francis Balint of Bonnett, Fairbourn, Friedman & Balint, and Thomas Zimmerman of Zimmerman Law Offices.

## IV.     PRELIMINARY APPROVAL

### A.     Legal Standard

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Courts generally employ a two-step process in evaluating a class action settlement. First, courts make a "preliminary determination" concerning the merits of the settlement. See Manual for Complex Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." Class Plaintiffs, 955 F.2d at 1276 (quotation omitted).

Where the parties reach a class action settlement prior to class certification, courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir. 2012) (citation and internal quotations omitted); see also In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, the court must ensure that "the settlement is not the product of collusion among the negotiating parties." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946-47 (9th Cir. 2011) (internal quotation marks and citations omitted). Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." Id. at 947.

The court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quotation omitted); see also MCL, 4th § 21.632 (explaining that courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of

the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing"). Second, courts must hold a hearing to make a final determination of whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Here, Plaintiffs ask the Court to take the first step in granting preliminary approval of the proposed settlement, and schedule a final approval and fairness hearing on a date 107 days after preliminary approval. ECF No. 94-1 at 42; ECF No. 113.

Preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." In re Tableware, 484 F.Supp.2d at 1079 (quotation omitted). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with a plaintiff's fiduciary obligations to the class. Hanlon, 150 F.3d at 1027 (explaining that "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion"). To assess a settlement proposal, courts must balance a number of factors, including:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

See id. at 1026 (citations omitted); see also Molski v. Gleich, 318 F.3d 937, 953 (9th Cir. 2003). The proposed settlement must be "taken as a whole, rather than the individual component parts" in the examination for overall fairness. See Hanlon, 150 F.3d at 1026. Courts do not have the ability to "delete, modify, or substitute certain provisions" because the settlement "must stand or fall in its entirety." Id. (citations omitted).

### B. Terms of the Settlement

Under the terms of the agreement, Defendant agrees to pay no more than $16,000,000 as a gross settlement amount, inclusive of Plaintiffs' attorneys' fees and costs, the cost of class notice

10

and settlement administration, and class representative service awards. ECF No. 94 at 9. After these deductions, settlement payments will be allocated to "Settlement Class Members who submit valid claim forms." Id. The net settlement amount will be exhausted through this process so that no money reverts to ADT. Id. The amount of the individual award to each class member will be $15 for class members who contracted with ADT during the period from November 13, 2009 until July 23, 2014, when ADT allegedly did not know about the system vulnerability, and $45 for those who contracted with ADT between July 24, 2014 and August 15, 2016, when ADT allegedly did know about the system vulnerability. Id. at 13. Both payment amounts will be subject to any pro-rata adjustment up or down that is necessary to ensure that all claims get paid and the settlement fund is exhausted. Id. Plaintiffs' counsel seeks a "benchmark" fee request of 25% of the net settlement amount to pay for the costs and expenses that Class Counsel have incurred through prosecution of the actions.[4] ECF No. 112 at 8-9. The agreement provides for enhancement awards of up to $2,500 or $10,000 for each plaintiff that served as class representative. ECF No. 94 at 15.[5]

In exchange for the settlement awards, the class members will release Defendant from liability as to "all claims predicated on the facts alleged in the Actions." Id. at 14. The release, however, explicitly excludes any claims for personal injuries or from damages or loss to property. Id. at 14.

**C.　Analysis**

Plaintiffs argue that the agreement "achieves an excellent result for the Settlement Class, especially when measured against considerable risks for continued litigation." ECF No. 94-1 at 6. These risks include:

---

[4] Originally, Plaintiffs' counsel requested one-third of the gross settlement amount in fees, but revised its request to 25% in a subsequent declaration. See ECF No. 112 at 8-9.

[5] Plaintiffs do not explain why two named plaintiffs will receive $2,500 and three will receive $10,000, and are encouraged to do so in their motion for final approval. ECF No. 94-1 at 25; see also Wren v. RGIS Inventory Specialists, 2011 WL 1230826 at *32 (N.D. Cal. 2011) (when considering a request for service award a court should consider: (1) the actions the plaintiff took on behalf of the class, (2) the degree the class benefitted from those actions, (3) the amount of time and effort the plaintiff expended, and (4) the risk to the plaintiff in commencing the litigation).

11

> (1) the expense and length of time necessary to prosecute the Actions through trial; (2) the uncertainty of outcome at trial and the possibility of an appeal by either side following the trial; (3) the possibility that a contested class might not be certified, and if certified, the possibility that such certification would be reversed on appeal; (4) the risk that ADT could file a motion for summary judgment that, if granted, could dispose of all or many of the claims in the Actions; (5) the risk in establishing a premium price paid by Settlement Class members which is hotly contested in this litigation; and (6) the risk in establishing a class-wide measure of damages.

Id.

Further, Plaintiffs claim that the settlement agreement was informed by discovery provided by Defendant, including 45,000 pages of documents and class data, depositions of seventeen fact witnesses and the Class Representatives, and expert witness reports assessing the alleged security flaws. Id. at 4. Plaintiffs also claim the agreement is fair because over several months, the parties engaged in arms-length discussions, including two mediations sessions months apart that resulted in the successful Settlement Agreement. Id. at 5.

### 1. The Settlement Process and Amounts

Turning to the damages calculation, Plaintiffs allege that the total settlement amount of $16 million is fair in light of the aforementioned expenses, risks, and negotiations. ECF No. 112. At the Court's urging, ECF No. 102, Plaintiffs provided additional details on the damages calculations, including importantly, that the settlement only applies to class claims that Plaintiffs allege against ADT for the "economic loss attributable to payment for monitoring services, not for any actual damages to property or persons attributable to an actual home intrusion due to any exploitation of the vulnerability." ECF No. 112 at 3.

Plaintiffs argue that in reaching an overall settlement value and a settlement value for each individual class member, they accounted for considerable uncertainties and risks. First, Plaintiffs recognize that the damages calculations account for an uncertainty related to whether disclosure of information by ADT would have impacted consumer behavior given a lack of suitable alternatives in the market. Id. at 4-5. Based on a survey conducted by Plaintiffs' expert witness, Plaintiffs believe that 48-53.2% of consumers would have paid less for service or dropped ADT entirely given the pertinent security information, but 30% of respondents would have paid the same amount. Id. at 5. Based on an average monthly payment of $28 for ADT customers, and the

12

results of the expert survey, Plaintiffs estimate that a reasonable overcharge amount is 12.5% or $3.50 per month. Id. at 5. Plaintiffs temper this estimation, however, with the knowledge that the customer records are incomplete. Based on the available data, Plaintiffs estimate that only 2.25 million ADT customers "probably" purchased wireless systems while 3 million additional customers "possibly" purchased wireless systems. Id. at 6-7. Plaintiffs also factor in that the average contract duration for ADT service varied from two to three years depending on the state. Id. at 7. Finally, Plaintiffs discounted their initial damages estimation by a risk factor of at least 75% based on ADT's "vigorous" opposition to class certification and its substantive legal defenses on the merits. Id. at 7-8. Given these variables, and Defendant's legal arguments pushing for "zero damages," Plaintiffs estimated a reasonable recovery range from $0 to $47.5 million. Id. at 7.

Accordingly, when determining the appropriate settlement value for individual class members, Plaintiffs concluded that the "rough equivalent of two month's service fee would be a reasonable compromise target," meaning approximately $56 per class member. Id. at 8. Plaintiffs feel that they "accomplished [their] objective" on the basis of a total settlement amount of $16 million, which results in individual payouts of $45 and $15 for class members, depending on the timing and strength of their claims. Id. at 8. These settlement amounts are approximately 36% (for the $45 payment) and 12% for the ($15 payment) of the amount that class members might reasonably expect to recover at trial. ECF No. 112 at 8. The Court finds that the gross settlement amount is within the range of possible approval given the significant costs, time, and risks involved in litigation.

Further, the Court finds that the parties' agreement with respect to attorneys' fees and costs falls "within the range of possible approval." In re Tableware, 484 F.Supp.2d at 1079. The Plaintiffs' amended request for 25% of the total settlement amount matches the 25% benchmark established by the Ninth Circuit. See In re Bluetooth, 654 F.3d at 942.

Additionally, the proposed enhancement awards for the named Plaintiffs are within the range of possible approval. The Court, however, notes that the award, not to exceed $10,000, is approximately 222 times the size of the stated award for class members receiving $45 and 667

13

times the size of the stated award for class members receiving $15. The Court also notes that $10,000 is twice the $5,000 figure typical for enhancement awards in this district. See Harris v. Vector Mktg. Corp., No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount."); Ko v. Natura Pet Prods., Inc., No. C 09-02619 SBA, 2012 WL 3945541, at *14-15 (N.D. Cal. Sept. 10, 2012) (denying a $20,000 enhancement award request, and instead awarding $5,000; though class representative expended approximately 100 hours and attended mediation, the average award to class members was $35); cf. Boring v. Bed Bath & Beyond, No. 12-CV-05259-JST, 2014 WL 2967474, at *3 (N.D. Cal. June 30, 2014) (holding that $7,500 was a reasonable enhancement award when average payment to class members was approximately $170.83; class representative traveled to, and attended mediation, risked backlash from defendant (his employer), contributed a significant amount of time and energy to the litigation, and signed a broader release than did other class members).

The Court need not resolve the specific amount of the incentive award at this time as the matter will be conclusively determined at the Final Fairness and Approval Hearing. However, Plaintiffs should be mindful of addressing these issues and providing appropriate detail and documentation in connection with their motion for final approval and motion for a service enhancement award.

Finally, because this settlement was reached prior to class certification, the Court must also examine the settlement for evidence of collusion with a higher level of scrutiny. In re Bluetooth, 654 F.3d at 946. The Court concludes that the negotiations and agreement were non-collusive. As Plaintiffs note, the parties reached agreement on settlement terms following considerable discovery and two separate days of mediation before an experienced mediator. ECF No. 94-1 at 5. These facts support the conclusion that the settlement is non-collusive and likely to benefit the class members. Harris v. Vector Mktg. Corp., No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (explaining that use of an experienced mediator "suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of

14

collusion or bad faith by the parties or counsel"). Other signs support the conclusion that the settlement was not the product of collusion. The settlement does not contain a reversionary clause, meaning that all of the net settlement award will be distributed to the class and settlement money that goes uncollected will be distributed pro-rata to class members. ECF No. 94 at 26; see In re Bluetooth, 654 F.3d at 947 (discussing reversionary clauses as a sign of collusion). The settlement also does not contain a clear sailing provision. In re Bluetooth, 654 F.3d at 947 (discussing clear sailing provisions as another sign of collusion).

### 2. Notice Requirements

The class notice in a Rule 23(b)(3) class action must comport with the requirements of due process. "The plaintiff[s] must receive notice plus an opportunity to be heard and participate in litigation, whether in person or through counsel." Philips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985). The notice must be "the best practicable, 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Id. (citations omitted). "The notice should describe the action and the plaintiffs' rights in it." Id. Rule 23(c)(2)(B) provides, in relevant part:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed notice forms meet all these requirements. ECF No. 94-1 at 43-64. Plaintiffs have appointed Dahl Administration, a class action notice provider with significant experience, to handle provisions of notice. ECF No. 94 at 30. For the 2.25 million "probable" class members, the notice program provides for direct postcard notice and, to the extent possible, email notice. ECF No. 112 at 8. If any postcards are returned the Settlement Administrator will take reasonable effort to forward the notice to an identifiable address. Id. For the 3 million "possible" class members, the notice program provides, to the extent possible, email notice, along with publication in USA Today, the settlement website, and a tweet by ADT. Id. The Settlement administrator

15

will provide a dedicated Settlement Website (www.ADTHomeSecuritySettlement.com), which the administrator will update regularly with relevant case information and telephone contact information. ECF No. 94 at 31.

**CONCLUSION**

Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Motion for Leave to File Second Amended Complaint are granted. Accordingly, the Court hereby:

1. Grants leave to file the Second Amended Complaint;
2. Conditionally certifies the proposed settlement class;
3. Approves the proposed notice procedure, and the content of the notices;
4. Appoints plaintiff Michael Edenborough and Patricia Wilson as class representatives;
5. Appoints Mark Chavez and Nance Becker of Chavez & Gertler LLP, Andrew Friedman and Francis Balint of Bonnett, Fairbourn, Friedman & Balint, and Thomas Zimmerman of Zimmerman Law Offices as class counsel;
6. Appoints Dahl Administration as the claims administrator;
7. Sets the following dates, pursuant to the proposed settlement timeline at ECF No. 113:
   a. By October 24, 2017 ADT will transfer $1.5 million to the settlement administrator;
   b. By October 27, 2017, ADT will give a list of names and contact information to the settlement administrator;
   c. By November 16, 2017, notice will be disseminated;
   d. By December 19, 2017, the petition for fees and service awards will be filed;
   e. By January 2, 2018, objections and opt-outs are due;
   f. By January 11, 2018, the settlement administrator will provide counsel the list of opt-outs and notice information;
   g. By February 1, 2018, at 2:00 pm, this Court will conduct a fairness hearing;
   h. By February 26, 2018, claims are due;
   i. By March 5, 2018, the settlement will be effective;
   j. On March 12, 2018, ADT will transfer $14.5 million to the settlement

16

administrator;

k. Also by March 12, 2018, the settlement administrator will provide a list of claims to counsel;

l. By March 22, 2018, the settlement administrator will pay claims;

m. By April 23, 2018, class counsel will file an accounting;

n. On September 22, 2018, the settlement checks will void.

**IT IS SO ORDERED.**

Dated: October 16, 2017

<br>

                                      JON S. TIGAR
                                  United States District Judge