1  CHAVEZ & GERTLER LLP
   Mark A. Chavez (CA Bar No. 90858)
2  Nance F. Becker (CA Bar No. 99292)
   42 Miller Avenue
3  Mill Valley, CA 94941
   Tel:   (415) 381-5599
4  Fax:   (415) 381-5572
   (mark@chavezgertler.com)
5  (nance@chavezgertler.com)

6  ZIMMERMAN LAW OFFICES, P.C.
   Thomas A. Zimmerman, Jr. (*pro hac vice*)
7  77 West Washington Street, Suite 1220
   Chicago, IL 60602
8  Tel: (312) 440-0020
   (tom@attorneyzim.com)
9
   BONNETT, FAIRBOURN, FRIEDMAN & BALINT P.C.
10 Andrew Friedman (*pro hac vice*)
   Francis J. Balint, Jr. (*pro hac vice*)
11 2325 E. Camelback Rd., Suite 300
   Phoenix, AZ 85016
12 (afriedman@bffb.com)
   (fbalint@bffb.com)
13
   *Attorneys for Plaintiffs Michael Edenborough,*
14 *Patricia Wilson, and the Proposed Class*

15
                    **UNITED STATES DISTRICT COURT**
16
                    **NORTHERN DISTRICT OF CALIFORNIA**
17

18 | MICHAEL EDENBOROUGH and | Case No: 16-2233 JST |
   | PATRICIA WILSON, individually and on | |
19 | behalf of all others similarly situated, | **CLASS ACTION** |
   | | |
20 | Plaintiffs, | **SECOND AMENDED COMPLAINT** |
   | | |
21 | vs. | **JURY TRIAL DEMANDED** |
   | | |
22 | ADT, LLC d/b/a ADT SECURITY | **Hon. Jon S. Tigar** |
   | SERVICES, INC. a Florida limited liability | |
23 | company, and ADT CORPORATION, | |
   | | |
24 | Defendants. | |

25

26

27

28

Plaintiffs Michael Edenborough and Patricia Wilson ("Plaintiffs"), by and through their attorneys, bring this action on behalf of themselves and all others similarly situated against Defendants ADT, LLC, which does business as ADT Security Services, Inc., and ADT Corporation (collectively, "ADT"). Plaintiffs allege as follows:

## INTRODUCTION

1. This is a class action lawsuit filed by Plaintiffs on behalf of themselves and all others similarly situated who have suffered and will continue to suffer harm as a result of ADT's unlawful, unfair, and deceptive business practices relating to certain fundamental, material omissions made by ADT in connection with wireless home security systems that ADT selects, installs and monitors. ADT is well aware that, due to its use of unencrypted wireless signals and other vulnerabilities known to ADT, unauthorized third parties can easily disable or suppress ADT's wireless home security systems. ADT fails to disclose and actively conceals these vulnerabilities from its customers while simultaneously extolling and promoting the purported safety, security and peace of mind that ADT's systems will provide to its customers. (*See* ADT, Remote Security: Wireless Home & Apartment Systems, *at* http://www.adt.com/resources/understanding-wireless-home-security-systems).

2. ADT's knowing omissions and active concealment of the vulnerability of the wireless home security systems that it installs and monitors is an unfair, unlawful, and deceptive business practice that violates the laws of its home state of Florida as well as California law. Such violations entitle Plaintiffs and the class to damages, restitution, injunctive relief, attorneys' fees, and all costs of suit incurred herein.

## PARTIES

3. Plaintiff Michael Edenborough is a natural person over the age of 18 who at all relevant times resided in Oakland, California. Edenborough entered into an initial contract with ADT on March 30, 2012 to monitor the wireless home security system that ADT selected and installed in his home. Since the initial two year term of the initial contract lapsed, Edenborough has each month renewed his contract with ADT, paying ADT on a monthly basis to monitor his home through the ADT wireless home security system that ADT installed.

4.     Plaintiff Patricia Wilson is a natural person over the age of 18 who at all relevant times resided in Florida. On February 28, 2015, Wilson entered into a three-year Alarm Services Contract with ADT to install and monitor a home security system that included wireless components.

5.     Defendant ADT, LLC is a limited liability corporation organized under the laws of Florida that does business as ADT Security Services, with its principal place of business at 1501 Yamato Road, Boca Raton, Florida 33431. Defendant does business in California as "ADT Security Services, Inc."

6.     Defendant ADT Corporation is a Delaware corporation, with its principal place of business at 1501 Yamato Road, Boca Raton, Palm Beach County, Florida 33431.

7.     ADT provides home security, home automation equipment, and monitoring and other services in various States throughout the United States, including California.

8.     Plaintiffs are informed and believe and on that basis allege that each of the Defendants acted in concert with each and every other Defendant, intended to and did participate in the events, acts, practices and courses of conduct alleged herein, and proximately caused damage and injury thereby to Plaintiffs as alleged herein.

## JURISDICTION AND VENUE

9.     This Court has original subject matter jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. §1332(d)(2). Plaintiffs and ADT are of diverse citizenship, the amount in controversy exceeds $5 million, exclusive of interests and costs, and there are well over 100 class members.

10.    Jurisdiction and venue are proper in this Court because ADT conducts business in this judicial district and maintains offices in this judicial district, and because the acts and practices challenged by Plaintiffs occurred in part in this judicial district.

11.    With respect to the claim for violations of California Civil Code section 1780, subdivision (d), Plaintiff Edenborough has separately filed a declaration stating facts showing that this action was commenced in a proper place for the trial of this action.

//

**FACTUAL BACKGROUND**

12. ADT markets home security systems to consumers in California and throughout the United States. Among the systems that ADT monitors are wireless home security systems that it installs. According to ADT, "[a] wireless home security system gives you the features you need, plus greater flexibility." ADT thus markets the wireless home security systems as providing the same—if not more—security than wired systems.

13. The wireless peripheral sensors that ADT uses and installs in its residential security systems use radio transmissions to communicate with the alarm panel. Those transmissions are transmitted over known frequencies. They are also unencrypted and unauthenticated. Left open to the world, the transmissions are insufficiently protected from intrusion and interference by unauthorized third parties who can readily turn the wireless sensors off. Such hacking can easily be accomplished by anyone who obtains software and electronics that are easily available, in some cases for free.

14. Throughout the putative class period, ADT knew or at least should have known that its wireless home security systems are vulnerable to such attack. The wireless home security equipment that ADT has selected to install is designed to operate over fixed radio frequencies using unsecured and unencrypted protocols that ADT developed and/or customized for its own purposes.  Through communications with the manufacturers of the home security equipment that ADT installs, ADT has known since at least 2009 that its home wireless security systems are vulnerable to disruption, suppression and circumvention.

15. ADT's business model requires that ADT sign up as many customers as possible for its services. Accordingly, ADT determined that it would trade off cost and security with regard to wireless home security systems to lower the barriers to entry for customers and encourage more customers to sign up for ADT's services.

16. In July 2014, ADT was contacted by reporters from *Forbes* investigating the vulnerability of ADT's wireless home security systems. Despite knowing that the wireless home security systems it was installing were in fact vulnerable, ADT deflected the questions, responding instead that "[s]afety and security is a top priority at ADT, and we have spent the past

140 years earning the trust of our customers." ADT's spokesperson Jason Shockley continued to deflect, stating "[b]ecause we have yet to see the details of this particular research, we are unable to comment on the specifics." In deflecting the *Forbes* questions, and on information and belief inquiries made by class members, ADT actively concealed the vulnerabilities of its wireless home security systems.

17. Only after ADT was sued, first in Illinois, and then in Arizona, did ADT finally admit in its February 2, 2016 Form 10-Q statement for the quarter ending December 31, 2015 that its "products may be subject to potential vulnerabilities of wireless and Internet of Things devices" and that its "service may be subject to hacking or other unauthorized access." (ADT Corporation, Form 10-Q (Dec. 31, 2015), p. 26.)

18. However, it is not that wireless security systems cannot be made secure. They can. For instance, ADT offers business customers certain wireless security systems that utilize encryption and authentication to prevent transmissions from being read or spoofed. These systems also use anti-jamming technology like spread-spectrum technology that allows transmissions to hop between different frequencies.

19. ADT furthermore recognizes that encrypting the wireless signals used in its wireless home security systems is feasible. In other recent litigation, though, ADT has admitted that it made an internal cost-benefit determination not to encrypt the wireless signals in its home security systems or otherwise secure the wireless systems from their vulnerabilities.

20. Despite its knowledge and the tradeoffs it made, ADT has never disclosed to Plaintiffs or any class member that the wireless home security systems use signals that are unencrypted and unauthenticated and can easily be jammed, leaving Plaintiffs and class members in the dark as they continue to pay for equipment and monitoring services that do not provide the level of protection they are lead to believe they are receiving. Instead, ADT has actively concealed the vulnerabilities, electing to tout its wireless home security systems as safe, reliable, and secure. For example, ADT represents and continues to represent on its website that it uses "advanced" and "innovative" technology even though the wireless home security systems technically use decades old legacy technology, from the late 1990s and early 2000s.

1    21.    ADT also touts its wireless home security systems over the more traditional wired systems even though the wired systems cannot be similarly defeated. Thus, ADT states on its website that "[t]raditional systems can be just as effective as a wireless alarm system, but one disadvantage is that they run off electricity supplied through electrical wires." The only stated disadvantages for wireless systems is that "[s]ensors will need batteries to operate, so there is a possibility that the batteries will die if they are not checked often" and that "[c]omponents need to be close to the central control panel [which] . . can limit where some sensors are placed."[1]

22.    ADT's marketing materials on its website further emphasize ADT's purported advanced technology. In those materials, ADT represents:

(a)    "ADT takes pride in using the most advanced technology…";

(b)    "Only ADT has the most security industry experience, is the leader in innovative security technology, and can provide you with the fastest response times";

(c)    "Our experience, technology and people make the difference in your security protection"; and

(d)    "You invest in ADT home security and automation systems to help protect your loved ones. Your satisfaction is important to us, and is the reason we are committed to providing you with state-of-the-art equipment and service."

23.    ADT's marketing materials are designed to give customers the overall impression that ADT provides the highest and most advanced level of safety and that customers can feel secure in trusting that their security systems will work as advertised. Those materials emphasize safety and security, and give the impression that ADT would not ever install a security system that could be easily breached or interfered with. As a consequence of ADT's marketing, Plaintiffs and class members had a reasonable belief that they would be protected and that their wireless home security systems would be secured against outside interference.

---

[1] http://www.adt.com/resources/understanding-wireless-home-security-systems (last visited March 7, 2016.)

5
SECOND AMENDED CLASS ACTION COMPLAINT

1      24.    The specific workings and technological details of a wireless security system are outside the realm of knowledge of the average consumer. In selecting and installing wireless security systems in customers' homes, ADT unquestionably has greater knowledge of the workings and vulnerabilities of those systems than the average consumer. Plaintiffs and members of the class, therefore, can reasonably expect to rely on ADT's representations regarding the safety and reliability of its wireless security systems. ADT—as a provider of security systems and monitoring services—has had reason to know that consumers such as Plaintiffs and members of the class—who are simple consumers—would rely on ADT's skill or judgment to furnish suitable goods.

      25.    Especially given these pervasive assurances of safety and security of the monitoring afforded by its wireless home security systems, ADT is under a duty to disclose the omitted information regarding its wireless home security systems' lack of encryption, lack of authentication and other severe vulnerabilities that undermine the truthfulness of those assurances.

      26.    Yet ADT does not warn customers in its marketing materials that its wireless systems can readily be hacked, or even to take precautions against hacking. Nor does ADT disclose that its wireless signals are unencrypted and unauthenticated or that the signals can easily be jammed. ADT's omissions regarding the *insecurity* of its wireless systems is especially material because they leave customers believing that they and their families have a layer of protection guarding them when the wireless systems are activated, whereas, in truth, that protection is easily disabled, circumvented, or otherwise turned against the customers.

      27.    ADT's omissions regarding the security of its wireless systems were deliberate and intentional, and were designed to mislead customers as to the security and quality of its wireless home security systems and to actively conceal the systems' shortcomings. Because the primary if not sole function of ADT's wireless systems is to provide safety and security, ADT's omissions directly pertain to that primary function and are undeniably material to ADT customers like Plaintiffs and the other members of the putative class.

//

## FACTS SPECIFIC TO PLAINTIFFS

### Plaintiff Edenborough

28.  Plaintiff Edenborough purchased a house in 2012. The house did not come with any home security system. Concerned for the safety of his family and their belongings, Edenborough responded to an advertisement from ADT for home security services and called ADT to purchase such services.

29.  Edenborough signed an initial contract for home security services on March 30, 2012, which included installation of a wireless home security system. The initial contract had a two-year term. Since then the contract has been automatically renewed each month. Edenborough paid a deposit and an installation charge. He has since the installation paid, and continues to pay, a monthly service fee of at least $47.99.

30.  Before signing the contract, Edenborough reviewed the advertisement to which he responded. He also reviewed ADT's website. Nowhere did Edenborough see any disclosures that the signals transmitted within the wireless home security system were unencrypted, lacked authentication, or were otherwise readily susceptible to suppression or circumvention. Accordingly, when the ADT "Senior Security Consultant" recommended that Edenborough go with a wireless system, Edenborough agreed. Among the items installed at Edenborough's house were four wireless door sensors and three wireless motion sensors. Under the terms of the contract, the equipment continues to be owned by ADT.

31.  Had Edenborough known that the wireless home security systems could easily be suppressed or circumvented, he would not have agreed to the contract with ADT for monitoring services. At no time prior to 2016 was Edenborough aware of the *Forbes* article or of the vulnerabilities of the wireless home security system. Since learning of the vulnerabilities, Edenborough is considering replacing the wireless system with a wired system in order to maintain the level of safety and security he desires.

32.  As a result of ADT's action, Edenborough has thus suffered and continues to suffer out-of-pocket losses of at least $47.99 for each month since March 2012.

//

**Plaintiff Wilson**

33. In determining whether to enter into a contract with ADT, Plaintiff Wilson researched various security and alarm companies, including ADT. When researching ADT, Wilson reviewed, *inter alia*, ADT's marketing and advertising materials, including the statements made on ADT's website regarding the security of its wireless systems.

34. Based on the deceptive and misleading representations and omissions made by ADT as detailed above, Wilson entered into an Alarm Services Contract with ADT. The term of the contract is three (3) years. Upon information and belief, the terms of Wilson's contract were the same or substantially similar to all class members' contracts, as ADT uses standard, uniform contracts for all of its customers.

35. Additionally, in connection with the contract, Wilson and the class members purchased the corresponding ADT wireless security equipment, such as sensors, a wireless device, and a control box.

36. None of the marketing materials Wilson saw prior to entering into the contract disclosed that ADT's wireless security equipment was unencrypted, unauthenticated, or otherwise insecure and easily hacked.

37. Had Wilson or the class members known the truth about ADT's misleading representations, or the insecurity of ADT's wireless security equipment, they would not have entered into the contract or purchased any of the associated equipment.

38. Wilson and the class members continue to suffer harm as a result of ADT's aforementioned acts and practices, as they remain bound by their contract with ADT, and will have to pay a penalty if they cancel it.

**TOLLING OF THE STATUTE OF LIMITATIONS**

39. The causes of action alleged herein accrued upon discovery of the vulnerabilities in ADT's wireless home security systems. Plaintiffs and members of the class did not discover and could not have discovered the factual bases of their claims through the exercise of reasonable diligence because ADT knowingly and actively concealed the facts alleged herein. Moreover, knowledge of the underpinning of the vulnerabilities is beyond the ken of the average consumer.

1 By virtue of ADT's actions, Plaintiffs and members of the class have been kept ignorant of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part.

40. Despite the fact that ADT knew or should have known about the vulnerabilities in its wireless home security systems, ADT failed to inform Plaintiffs and members of the class of these facts.

41. ADT has been under a continuous duty to disclose to Plaintiffs and members of the class material information regarding the vulnerabilities in ADT's wireless home security systems. The existence of the vulnerabilities in the wireless home security systems is material information that a reasonable purchaser would consider important when selecting a home security system.

42. Since Plaintiffs and members of the class had no way of knowing or suspecting that ADT's wireless home security systems were vulnerable, ADT is estopped from relying on any statute of limitations in its defense of this action.

## **CLASS ALLEGATIONS**

43. Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of themselves and a putative class of similarly situated consumers. Plaintiffs seek certification of the following class:

> All current and former ADT customers who, between November 13, 2009 and August 15, 2016, entered into a contract with ADT or an ADT dealer for installation of a residential security system, or who had ADT or an ADT dealer install a residential security system, that includes at least one wireless peripheral sensor.

44. In the alternative, and in the event the Court declines to certify the national class, Plaintiff Edenborough also brings this action on behalf of himself and a putative California subclass defined as:

> All current and former ADT customers who, between November 13, 2009 and August 15, 2016, entered into a contract with ADT or an ADT dealer for installation of a residential security system in California, or who had ADT or an ADT dealer install a residential security system in California, that includes at least one wireless peripheral sensor.

//

9
SECOND AMENDED CLASS ACTION COMPLAINT

45. Members of the class and subclass (generally referred to hereinafter as the "class") are so numerous that joinder of all class members is impracticable. Plaintiffs are informed and believe, and on that basis allege, that the proposed class contains thousands of members. ADT sells and services thousands of home security systems throughout the United States, and claims to have more than a 25% share of the $11 billion residential security industry. The precise number of class members is unknown to Plaintiffs and can only be obtained through discovery. However, the numbers are clearly more than can be consolidated in one complaint and impractical for each to bring suit individually. The individual class members are ascertainable as the names and addresses of all class members can be identified from ADT's business records. Plaintiff does not anticipate any difficulties in the management of the action as a class action.

46. Common questions of law and fact exist as to all members of the class that predominate over questions affecting only individual class members. The common legal and factual questions include, but are not limited to, the following:

    (a)    whether ADT's wireless home security systems are vulnerable to attack by unauthorized third parties;

    (b)    whether ADT has a duty to disclose that its wireless home security systems are vulnerable to attack by unauthorized third parties;

    (c)    whether ADT has ever disclosed to consumers that its wireless home security systems are vulnerable to attack by unauthorized third parties;

    (d)    whether ADT has committed unlawful, unfair and/or deceptive business practices;

    (e)    whether Plaintiffs and members of the class were damaged as a result of ADT's conduct alleged herein; and

    (f)    whether Plaintiffs and members of the class are entitled to other appropriate remedies, including restitution, injunctive, declaratory or other equitable relief.

47. Plaintiffs' claims are typical of the claims of the members of the class because of the similarity, uniformity, and common purpose of Defendants' conduct. Each class member has

1   sustained, and will continue to sustain injuries in the same manner as a result of Defendants'
2   conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and
3   all members of the class. Upon information and belief, the terms of each Plaintiff's contract were
4   the same or substantially similar to all class members' contracts because Defendants use
5   standardized, uniform contracts for all of their customers. Moreover, Defendants' website and
6   marketing materials were disbursed generally to all potential customers.

7       48.    Plaintiffs will fairly and adequately represent and protect the interests of the
8   members of the class. Plaintiffs have retained counsel competent and experienced in both
9   consumer protection and class litigation.

10       49.    A class action is superior to other available methods for the fair and efficient
11   adjudication of this controversy. The expense and burden of individual litigation would make it
12   impracticable or impossible for proposed class members to prosecute their claims individually. It
13   would thus be virtually impossible for the class, on an individual basis, to obtain effective redress
14   for the wrongs done to them. Furthermore, even if class members could afford such
15   individualized litigation, the court system could not. Individualized litigation would create the
16   danger of inconsistent or contradictory judgments arising from the same set of facts.
17   Individualized litigation would also increase the delay and expense to all parties and the court
18   system from the issues raised by this action. By contrast, the class action device provides the
19   benefits of adjudication of these issues in a single proceeding, economies of scale, and
20   comprehensive supervision by a single court, and presents no unusual management difficulties
21   under the circumstances here.

22       50.    The class also may be certified because Defendants have acted or refused to act on
23   grounds generally applicable to the class thereby making appropriate final declaratory and/or
24   injunctive relief with respect to the members of the class as a whole.

25       51.    Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf
26   of the entire class, on grounds generally applicable to the entire class, to enjoin and prevent
27   Defendants from engaging in the acts described, and to require that Defendants to provide full
28   restitution to Plaintiffs and members of the class.

52. Unless a class is certified, Defendants will retain monies received as a result of their conduct that were taken from Plaintiffs and members of the class. Unless a class-wide injunction is issued, Defendants will continue to commit the violations alleged.

**FIRST CAUSE OF ACTION**
**Violation of Florida Deceptive and Unfair Trade Practices Act**
**(Asserted on behalf of all Plaintiffs and the class)**

53. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

54. Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §501.201 *et seq.*, protects consumers from "unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

55. Plaintiffs and class members are "consumers" as defined by § 501.203(7) of the FDUTPA, and the subject transactions with ADT are "trade or commerce" as defined by § 501.203(8).

56. ADT is a "person" within the meaning of the FUDTPA and, at all pertinent times, was subject to the requirements and proscriptions of the FUDTPA with respect to all of its business and trade practices described herein.

57. ADT violated and continues to violate the FDUPTA by engaging in the herein described unconscionable, deceptive, and/or unfair acts or practices. ADT's affirmative misrepresentations, omissions, and practices described herein were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

58. ADT has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of its trade and commerce by, *inter alia*, knowingly misrepresenting the security and advanced technology of its wireless services, failing to notify customers of the insecurity of their wireless systems, and failing to encrypt or otherwise secure their wireless systems, which was deceptive and misleading, and reasonably likely to deceive the public.

//

59. ADT's deceptive and unfair marketing campaign detailed herein was uniform to consumers, including Plaintiffs and class members. Through this extensive and exhaustive marketing campaign, ADT has conveyed one uniform deceptive and misleading message: consumers and businesses who purchase ADT wireless security systems are more secure than they actually are.

60. ADT's marketing campaign is intentionally designed to induce consumers to purchase its products and accompanying services as a result of its misrepresentations and omissions.

61. ADT knows about the insecurity and susceptibility to hacking of its wireless systems, yet continues to make the misrepresentations and omissions detailed herein, and continues to provide insecure wireless systems to customers

62. Unless injunctive relief is granted and ADT is required to encrypt its wireless systems, Plaintiffs and class members will continue to suffer harm throughout the duration of their contracts. Plaintiffs and class members do not have an adequate remedy at law for this continued harm, and the balance of the equities weighs in favor of Plaintiffs and the class.

63. Unless injunctive relief is granted and ADT is required to rectify its misleading marketing materials, consumers will continue to be harmed by purchasing ADT wireless systems as a result of ADT's deceptive and misleading practices, and by being less secure than they otherwise would be.

64. Plaintiffs and the class have suffered ascertainable losses as a direct result of ADT's employment of unconscionable acts or practices, and unfair or deceptive acts or practices.

65. The injuries to Plaintiffs and the members of the class were caused by ADT's conduct in deceptive and misleading marketing that originated in Florida, including the marketing materials described above. All of the marketing and promotional activities and literature were coordinated at, emanate from, and are developed at ADT's Florida headquarters. All critical decisions regarding ADT's marketing were made in Florida.

66. Furthermore, most of the misrepresentations and omissions alleged herein were contained on ADT's website, which is maintained in Florida.

67. When Plaintiff and the members of the Class entered into ADT Alarm System Contracts and purchased related equipment, those payments were processed and the money was sent to ADT's headquarters in Florida.

68. As a result of the foregoing actions, Plaintiffs and class members are entitled to:

    (a) preliminary and permanent injunctive relief;

    (b) restitution of all monies paid as a result of Defendants' deceptive and unlawful practices, including but not limited to, the monthly fees paid for monitoring services;

    (c) interest as allowable by law; and

    (d) an award of attorneys' fees and costs and expenses incurred in filing and prosecuting this action

WHEREFORE, Plaintiffs pray for relief as set forth below.

## SECOND CAUSE OF ACTION
### Violation of California Consumers Legal Remedies Act
**(Asserted on behalf of Plaintiff Edenborough and the California subclass)**

69. Plaintiff incorporate the preceding paragraphs as if fully set forth herein.

70. At all relevant times, Plaintiff and members of the subclass subcontracted with ADT in California to install and monitor ADT wireless homes security systems. Plaintiff and members of the subclass contracted for these services primarily for personal, family, or household purposes.

71. In offering the monitoring of wireless home security systems to the public, ADT has not disclosed, and will continue to not disclose, that the wireless home security systems are unencrypted, lack authentication and are otherwise vulnerable to attack by unauthorized third parties in ways that prevent the systems from properly alerting the monitoring center of an intrusion or break in.

72. At all relevant times, ADT knew that Plaintiff and members of the subclass did not know or could not have reasonably discovered the vulnerability prior to entering into or renewing a monitoring agreement with ADT featuring a wireless home security system.

//

14
SECOND AMENDED CLASS ACTION COMPLAINT

73. A reasonable person contracting for home security services would attach importance to the ease with which a wireless home security system can be readily defeated in determining whether to contract for such services. Plaintiff Edenborough would not have entered into his contracts with ADT for monitoring a wireless home security system had he known that the wireless home security system that ADT selected and installed in his house could be easily defeated.

74. At all relevant times, ADT had a duty to disclose the vulnerabilities of its wireless home security systems clearly and conspicuously prior to the time of sale given (1) the materiality of the information; (2) the risks and expenses posed by the security flaws inherent in the wireless home security systems ADT selected and installed; (3) ADT's knowledge of material facts not known to Plaintiff and members of the class; (4) ADT's active concealment of material facts from Plaintiff, and (5) ADT's partial representations regarding the security and reliability of wireless home security systems while suppressing the vulnerabilities of such systems.

75. By virtue of ADT's ongoing practices and course of conduct, Defendants have violated and will continue to violate California's Consumers Legal Remedies Act ("CLRA"), Civil Code section 1750 *et seq.*, and, in particular, section 1770, subdivision (a)(7), by misrepresenting through omission that ADT's monitoring service and wireless home security systems are of a particular standard or quality when they are not of that standard or quality.

76. By virtue of ADT's ongoing omissions, practices and course of conduct, Defendants have violated and will continue to violate Civil Code section 1770, subdivision (a)(5), by misrepresenting through omission that ADT's monitoring service and wireless home security systems have characteristics, uses and benefits which they do not have.

77. By virtue of ADT's ongoing practices and course of conduct, Defendants have violated and will continue to violate Civil Code section 1770, subdivision (a)(16), by misrepresenting through omission that ADT's monitoring service and wireless home security systems have been supplied in accordance with ADT's representations about being "innovative," "state-of-the-art" and "secure" when they are not.

//

78. Defendants' violations of the CLRA present a continuing threat to Plaintiff and members of the subclass in that Defendants continue to engage in the above-referenced omissions and practices, and unless enjoined from doing so by this Court, will continue to do so. Had Plaintiff and members of the subclass been informed of the vulnerabilities of the home wireless security systems, they would not have contracted with ADT for the monitoring services.

79. Pursuant to Civil Code section 1780, subdivision (a), the Court should enjoin Defendants from continuing to market and install home wireless security systems without disclosing the vulnerabilities of such systems and to take appropriate steps to secure Plaintiff's and subclass members' wireless home security systems against such vulnerabilities.

WHEREFORE, Plaintiff prays for relief as set forth below.

### THIRD CAUSE OF ACTION
**Unfair Competition in Violation of the California UCL**
**(Asserted on behalf of Plaintiff Edenborough and the California subclass)**

80. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

81. California's Unfair Competition Law ("UCL"), Business & Professions Code section 17200, *et seq.*, prohibits unfair competition in the form of any unlawful, unfair or fraudulent business acts or practices. The UCL provides that a Court may enjoin acts of unfair competition, and order restitution to affected members of the public.

82. California Business and Professions Code section 17203 allows a person injured by unfair business acts or practices to prosecute a civil action for violation of the UCL. Plaintiff has lost money or property as a result of Defendants' unfair business practices by virtue of paying for services that do not have the features and quality ADT misleadingly misrepresents through omission.

83. Beginning at an exact date unknown to Plaintiff, but at least since four years prior to the filing of this suit, Defendants entered into contracts with Plaintiff and members of the subclass to provide monitoring of wireless home security systems that Defendants have installed that Defendants knew are readily vulnerable to attack and easily defeated. Defendants, however, never disclosed to Plaintiff and members of the subclass prior to entering into the contract that the

wireless home security systems that it would install were vulnerable to attack and could be easily defeated, including the complete lack of encryption of the wireless signals.

84. Defendants' conduct as alleged above has been and will continue to be unlawful in that the conduct constitutes and will continue to constitute a violation of the CLRA as alleged herein.

85. Defendants' conduct as alleged above has been and will continue to be unfair in that the harm to Plaintiff and members of the subclass arising from Defendants' conduct outweighs the utility, if any, of the conduct alleged above.

86. Defendants' conduct as alleged above has been and will continue to be fraudulent and likely to deceive reasonable consumers in that Defendants have omitted and/or failed to disclose, and will continue to omit and/or fail to disclose, material facts regarding the vulnerabilities of the wireless home security systems. Defendants' failure to disclose the vulnerabilities constitutes deception by omission. Defendants had a duty to disclose these material facts yet there is no mention of the vulnerabilities in any of the marketing and promotion materials that Defendants disburse prior to contracting.

87. The facts concealed and omitted are material facts that a reasonable consumer would have considered important in deciding whether or not to enter into the contract with ADT for monitoring a wireless home security system.

88. Business and Professions Code § 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition. Injunctive relief is necessary and appropriate to prevent Defendants from repeating and continuing their unlawful, unfair and fraudulent business acts and business practices alleged above. If Defendants are not enjoined from this conduct, they will continue to engage in these unlawful practices.

89. Plaintiff's success in this action will enforce important rights affecting the public interest and in that regard Plaintiff sues on behalf of himself as well as others similarly situated. Plaintiff and the subclass seek and are entitled to declaratory and injunctive relief, and all other equitable remedies owing to them.

90. Plaintiff herein takes upon himself enforcement of these laws and lawful claims. There is a financial burden involved in pursuing this action, the action is seeking to vindicate a public right, and it would be against the interests of justice to penalize Plaintiff by forcing him to pay attorneys' fees from the recovery in this action. Attorneys' fees are appropriate pursuant to Code of Civil Procedure § 1021.5 and otherwise.

91. As a result of Defendants' practices, Plaintiff and members of the subclass have suffered and will continue to suffer injury in fact and have lost money or property, including specifically monthly monitoring fees paid out-of-pocket to ADT. As a direct and proximate result of the acts and practices alleged above, pursuant to California Business & Professions Code section 17203, Plaintiff Edenborough and the subclass are therefore entitled to:

 (a) preliminary and permanent injunctive relief;
 (b) restitution of all monies paid as a result of Defendants' deceptive and unlawful practices, including but not limited to, the monthly fees paid for monitoring services;
 (c) interest as allowable by law; and
 (d) an award of attorneys' fees and costs and expenses incurred in filing and prosecuting this action, pursuant to, *inter alia*, California Code of Civil Procedure section 1021.5.

WHEREFORE, Plaintiff prays for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek judgment in favor of themselves and the proposed class for the following:

1. an order certifying the proposed class and appointing Plaintiffs Edenborough and Wilson and their counsel to represent the class;
2. in the alternative, an order certifying the proposed subclass and appointing Plaintiff Edenborough and his counsel to represent the subclass;
3. injunctive and declaratory relief as pled or as the Court may deem proper;
4. an award of restitution in favor of Plaintiffs and the class;

5. interest as allowable by law;

6. an award of reasonable attorneys' fees as provided by applicable law;

7. litigation expenses and costs of suit; and

8. such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: October 18, 2017     CHAVEZ & GERTLER LLP

ZIMMERMAN LAW OFFICES, P.C.

BONNETT, FAIRBOURN, FRIEDMAN & BALINT P.C.

By: _____
     Mark A. Chavez

*Attorneys for Plaintiffs and the Proposed Class*

### DEMAND FOR JURY TRIAL

Plaintiffs request a jury trial for any and all causes of action for which a trial by jury is permitted by law.

Respectfully submitted,

Dated: October 18, 2017     CHAVEZ & GERTLER LLP

ZIMMERMAN LAW OFFICES, P.C.

BONNETT, FAIRBOURN, FRIEDMAN & BALINT P.C.

By: _____
     Mark A. Chavez

*Attorneys for Plaintiffs and the Proposed Class*