CHAVEZ & GERTLER LLP
Mark A. Chavez (CA Bar No. 90858)
Nance F. Becker (CA Bar No. 99292)
42 Miller Avenue
Mill Valley, California 94941
Tel: (415) 381-5599
Fax: (415) 381-5572
(mark@chavezgertler.com)
(nance@chavezgertler.com)

BONNETT, FAIRBOURN, FRIEDMAN & BALINT P.C.
Andrew Friedman (*pro hac vice*)
Francis J. Balint, Jr. (*pro hac vice*)
2325 E. Camelback Rd., Suite 300
Phoenix, AZ 85016
Tel: (602) 274-1100
Fax: (602) 274-1199
(fbalint@bffb.com)
(afriedman@bffb.com)

ZIMMERMAN LAW OFFICES, P.C.
Thomas A. Zimmerman, Jr. (*pro hac vice*)
77 W. Washington St., Suite 1220
Chicago, Illinois 60602
Tel: (312) 440-0020
Fax: (312) 440-4180
(tom@attorneyzim.com)

*Attorneys for Plaintiffs Michael Edenborough and Patricia Wilson,*
*Representative Plaintiffs, and the Settlement Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL EDENBOROUGH and PATRICIA WILSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ADT, LLC d/b/a ADT SECURITY SERVICES, INC. a Florida limited liability company, and THE ADT CORPORATION, a Delaware corporation,<br><br>Defendants. | Case No: 16-2233 JST<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF ADDRESSING HYUNDAI ISSUES**<br><br>Judge:  Hon. Jon S. Tigar |

# TABLE OF CONTENTS

I.     Introduction................................................................................................................ 1

II.    Hanlon Remains the Controlling Precedent........................................................ 2

III.   The Assertion of a Nationwide FDUTPA Claim Would Have Been Permissible under a
       California Choice of Law Analysis...................................................................... 7

       A.     The FDUTPA Could Constitutionally Be Applied on Behalf of a Litigation Class
              in this Forum .............................................................................................. 7

       B.     California's Three-Step Governmental Interest Approach Permits Application of
              the FDUTPA to a Nationwide Class ........................................................ 8

              1.     Other than Nationwide Reach, There Is No Material Substantive
                     Difference in the Respective State's Law. ................................... 9

              2.     There Is No "True Conflict" in the Respective Interests of California
                     and Florida ............................................................................... 10

              3.     Florida's Interest Would Be More Impaired by Non-Application of the
                     FDUTPA to ADT........................................................................ 12

              4.     Choice-of-Law Conclusion ...................................................... 14

IV.    Variations in State Consumer Protection Laws Do Not in Any Event Necessarily
       Destroy Predominance ....................................................................................... 14

V.     Secondarily, the Court Should Defer Ruling Pending Further Ninth Circuit Review of
       Hyundai................................................................................................................. 15

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)....................................................................................................4, 14

*Dale Baker, et al. v. The ADT Corporation and ADT, LLC d/b/a ADT Security Services,*
    Case No. 15-cv-02038-CSB DGB (C.D. Ill.) ....................................................................1

*Bell Prods., Inc. v. Hosp. Bldg. & Equip. Co.,*
    No. 16-cv-04515-JSC, 2017 WL 282740 (N.D. Cal. Jan. 23, 2017)...................................5

*Castro v. Budget Rent-A-Car Sys., Inc.,*
    154 Cal. App. 4th 1162 (2007) .........................................................................................13

*Chavez v. Blue Sky Nat. Beverage Co.,*
    268 F.R.D. 365 (N.D. Cal. 2010)........................................................................................8

*Chen v. L.A. Truck Centers, LLC,*
    7 Cal. App. 5th 757 (2017) .........................................................................8, 10, 11, 13

*Clothesrigger, Inc. v. GTE Corp.,*
    191 Cal. App. 3d 605 (1987) .......................................................................................8, 10

*Danganan v. Guardian Prot. Servs.,*
    No. 36 WAP 2017, 2018 WL 987814 (Pa. Feb. 21, 2018)..................................................8

*Diamond Multimedia Sys., Inc. v. Superior Court,*
    19 Cal. 4th 1036 (1999) .....................................................................................................8

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ......................................................................1, 3, 4, 5, 14

*Hart v. Massanari,*
    266 F.3d 1155 (9th Cir. 2001) ............................................................................................4

*Hurtado v. Superior Court,*
    11 Cal. 3d 574 (1974) ............................................................................................. *passim*

*In re Hyundai & Kia Fuel Econ. Litig.,*
    881 F.3d 679 (9th Cir. 2018) .................................................................................. *passim*

*In re iPhone 4S Consumer Litig.,*
    No. C 12-1127 CW, 2013 WL 3829653 (N.D. Cal. July 23, 2013) ..................................13

*In re M3 Power Razor Sys. Mktg. & Sales Practices Litig.,*
   270 F.R.D. 45 (D. Mass. 2010)............................................................11

*In re Mex. Money Transfer Litig.,*
   267 F.3d 743 (7th Cir. 2001) ...............................................................1

*In re NJOY, Inc. Consumer Class Action Litig.,*
   120 F. Supp. 3d 1050 (C.D. Cal. 2015) ..........................................9, 13

*Latman v. Costa Cruise Lines, N.V.,*
   758 So. 2d 699 (Fla. 3rd DCA 2000)...............................................10, 12

*Mazza v. Am. Honda Motor Co.,*
   666 F.3d 581 (9th Cir. 2012) ................................................................13

*McCann v. Foster Wheeler LLC,*
   48 Cal. 4th 68 (2010) ...........................................................................13

*Offshore Rental Co. v. Cont'l Oil Co.,*
   22 Cal. 3d 157 (1978) .....................................................................12, 13

*Parkinson v. Hyundai Motor Am.,*
   258 F.R.D. 580 (C.D. Cal. 2008) ...........................................................8

*Pecover v. Elec. Arts Inc.,*
   No. C 08-2820 VRW, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010)........10, 12

*Phillips Petroleum Co. v. Shutts*
   472 U.S. 797 (1985)...............................................................................7

*Poertner v. Gillette Co.,*
   618 F. App'x 624 (11th Cir. 2015) .........................................................1

*Pokorny v. Quixtar, Inc.,*
   601 F.3d 987 (9th Cir. 2010) ................................................................11

*Romero v. Producers Dairy Foods, Inc.,*
   235 F.R.D. 474 (E.D. Cal. 2006) .........................................................14

*Ross v. Trex Co.,*
   No. 5:09-CV-00670-JF, 2010 WL 11484525 (N.D. Cal. Apr. 7, 2010)............5

*Valentino v. Carter-Wallace, Inc.,*
   97 F.3d 1227 (9th Cir. 1996) ...............................................................15

*Wash. Mut. Bank, FA v. Superior Court,*
   24 Cal. 4th 906 (2001) ...................................................................10, 12

iii

**Rules**

Cal. R. Ct. 8.1115(e)(1) .................................................................................................................8

1    **I.     Introduction**

2         Plaintiffs respectfully submit this supplemental briefing regarding the impact of *In re*

3    *Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679 (9th Cir. 2018) on the Court's final approval

4    determination for the proposed nationwide class settlement of Plaintiffs' consumer economic loss

5    claims premised on the alleged failure of Defendants ADT, LLC and the ADT Corporation

6    (collectively, "ADT") to disclose certain electronic vulnerabilities of ADT's wireless residential

7    security systems.

8         As detailed in Plaintiffs' earlier briefing, Plaintiffs have consistently alleged a deceptive

9    omission claim on behalf of a putative nationwide class of consumers based ***not*** on the aggregated

10   law of multiple states, but rather on the extraterritorial reach of the Florida Deceptive and Unfair

11   Trade Practices Act ("FDUTPA"). ECF No. 143. After that claim survived ADT's motion to

12   dismiss in *Dale Baker, et al. v. The ADT Corporation and ADT, LLC d/b/a ADT Security Services*,

13   Case No. 15-cv-02038-CSB DGB (C.D. Ill.) (the "*Baker* Action"), Plaintiffs there moved for

14   certification of a nationwide litigation class premised on the FDUTPA claim.  Facing a genuine risk

15   of nationwide liability in the *Baker* Action, ADT through mediation agreed to a nationwide class

16   settlement. *See, e.g., Poertner v. Gillette Co.*, 618 F. App'x 624 (11th Cir. 2015) (upholding

17   nationwide class settlement based ***solely*** on alleged FDUTPA claim). At the time, both the Seventh

18   and the Ninth Circuits had long approved nationwide settlements of consumer fraud claims,

19   notwithstanding variations in the elements and remedies among state consumer protection laws.

20   *See, e.g., In re Mex. Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001); *Hanlon v. Chrysler Corp.*,

21   150 F.3d 1011 (9th Cir. 1998).

22        After careful consideration and supplemental briefing, this Court preliminarily approved the

23   proposed nationwide consumer class settlement, noting in particular that individual claims based

24   on personal injury or property loss are excluded from the proposed class release. ECF No. 114, at

25   11. After notice to millions of probable and potential class members, only one objection was

26

27

28

PLS' SUPPLEMENTAL BRIEF ADDRESSING HYUNDAI ISSUES                    Case No. 16-2233 JST

pending at the time of the Final Approval hearing.[1] Importantly, no member of the Settlement Class raised any choice of law objection to the Settlement or otherwise questioned the assertion of a nationwide claim under the FDUTPA.

Nine days before the Final Approval hearing, however, a divided panel of the Ninth Circuit issued the 2-1 decision in *Hyundai*. Partisans on both sides quickly attempted to spin the *Hyundai* majority's holding in their preferred direction, declaring it everything from a sea-change in Rule 23(e) jurisprudence to an inconsequential decision limited to its facts.  As always, the ultimate impact of *Hyundai* may fall somewhere in between, and – given the *Hyundai* parties' vows to seek *en banc* review – it is too early to assess its longevity or ultimate consequence.

Nevertheless, the Court has at least tentatively concluded that *Hyundai* requires "that in assessing a nationwide class action settlement, district courts must consider whether variations in state law destroy predominance because class members who reside in various states might be subject to different substantive laws or have different remedies available." ECF No. 152, at 1 (citing *Hyundai*, 2018 WL 505343, at *3).  Accordingly, the Court has requested briefing "(1) to explain, if possible, why *Hyundai* does not apply, if there are additional reasons not discussed in Plaintiff's supplemental brief at ECF No. [143], and (2) to conduct the step-by-step choice of law analysis *Hyundai* envisions." *Id.* at 2.

## II.   *Hanlon* Remains the Controlling Precedent

The *Hyundai* majority's fundamental choice of law concern was that the trial court had failed to address the timely, persistent and express objections of Virginia class members (the "Gentry plaintiffs") to the proposed release of what they perceived to be superior claims under the law of their home state. 881 F.3d at 701-02. Despite earlier acknowledging the need to conduct a choice of law analysis at the final approval hearing given the Gentry plaintiffs' objections, the

---

[1] The sole objection at the time of the Final Approval hearing was premised on unique purported claims the objector contends exist for him and other physically disabled ADT customers. The Parties have confirmed, on the record, that such claims were not alleged by the Plaintiffs, were not litigated in the actions filed by Plaintiffs, and are not encompassed by the class release contained in the Settlement Agreement.  ECF No. 139, at 6; Transcript of Final Approval hearing, February 1, 2018, at 32-33.

1    district court ultimately "did not conduct a choice of law analysis, and did not apply California law

2    or the law of any particular state in deciding to certify the [nationwide] class for settlement." *Id.* at

3    702.  According to the *Hyundai* majority, "[b]ecause the district court [had earlier] made clear that

4    it would be unlikely to certify the same class for litigation purposes … both class counsel and court

5    [were] disarmed," such that Defendants Hyundai and Kia "knew that there was little risk that they

6    would face a nationwide litigation class action if they did not reach a settlement agreement."  *Id.* at

7    702-03. Under these circumstances, and given the Gentry plaintiffs' objections, the *Hyundai*

8    majority held it was legal error for the district court to forego a choice of law analysis simply

9    because the case had progressed to the settlement stage. *Id.* at 703. However, the *Hyundai* majority

10   specifically noted that the trial court was not foreclosed from certifying a class on remand. *Id.*

11           *Hyundai* thus did not purport to impose a new (and unworkable) burden on parties settling

12   a nationwide claim to conduct a choice of law analysis of every conceivable claim that ***could have***

13   ***been brought*** by class members in other states, particularly where, as here, no court has made any

14   prior determination "that it would be unlikely to certify the same class for litigation purposes," and

15   no class member has objected to the scope of the settlement class.  Nor could *Hyundai* do so without

16   contradicting and effectively (but impermissibly) overruling the binding prior precedent of *Hanlon*.

17           In *Hanlon*, as in *Hyundai*, multiple state common and statutory law claims had been alleged

18   against Chrysler in several state court class actions, seeking damages "under various state-law

19   warranties and theories of recovery." 150 F.3d at 1018. The state class actions were eventually

20   consolidated into one class action proceeding, in which the parties reached an agreement to settle

21   the aggregated claims asserted under the laws of ***every*** state, through the certification of a single

22   national settlement class. *Id.*; *see also id.* at 1020 ("The representative parties comprise persons

23   from every state…."). Notably, in *Hanlon* the district court had not previously indicated that it

24   would be unlikely to certify the proposed class for litigation purposes, and all personal injury and

25   wrongful death claims were excluded from the proposed class settlement. *Id.* at 1018.

26           In addressing the district court's obligation to conduct the predominance analysis required

27   under Rule 23(b)(3), the Ninth Circuit wrote:

28
PLS' SUPPLEMENTAL BRIEF ADDRESSING HYUNDAI ISSUES            Case No. 16-2233 JST

***Variations in state law do not necessarily preclude a 23(b)(3) action, but class counsel should be prepared to demonstrate the commonality of substantive law applicable to all class members.*** *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821–23, 105 S. Ct. 2965, 86 L.Ed.2d 628 (1985). In this case, although some class members may possess slightly differing remedies based on state statute or common law, the actions asserted by the class representatives are not sufficiently anomalous to deny class certification. On the contrary, to the extent distinct remedies exist, they are local variants of a generally homogenous collection of causes which include products liability, breaches of express and implied warranties, and "lemon laws." ***Individual claims based on personal injury or wrongful death were excluded from the class.*** Thus, the idiosyncratic differences between state consumer protection laws ***are not sufficiently substantive to predominate*** over the shared claims. Indeed, at the November 30, 1995 fairness hearing, ***the objectors acknowledged that independent of any variations in state law, there were still sufficient common issues to warrant a class action, particularly questions of Chrysler's prior knowledge of the latch deficiency, the design defect, and a damages remedy.***

*Hanlon*, 150 F.3d at 1022-23 (emphasis added).

*Hanlon* thus holds that differences in state consumer protection laws do not destroy predominance in the context of settled claims that share fundamentally common factual issues, especially where individual claims for personal injury or loss are excluded. *Accord, Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."). Moreover, *Hanlon* describes the burden on class counsel as being "prepared to demonstrate" – i.e., in the event of an objection – "the commonality of substantive law applicable to all class members." 150 F.3d at 1022.

Notably, the *Hyundai* majority did not purport to reverse or even question the viability of the holding in *Hanlon*. In fact, it even quoted *Hanlon*'s statement that "[v]ariations in state law do not necessarily preclude a 23(b)(3) action." 881 F.3d at 691. Nor could any single panel of the Ninth Circuit undermine *Hanlon*'s precedential weight, much less a 2-1 majority. *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) (once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the Ninth Circuit sitting *en banc*, or by the Supreme Court). To whatever extent *Hyundai* contradicts *Hanlon*, therefore, *Hanlon* remains

4

1    controlling precedent, binding on this Court, and trumping any ruling to the contrary in *Hyundai*.

2    *See*, *e.g., Bell Prods., Inc. v. Hosp. Bldg. & Equip. Co.*, No. 16-cv-04515-JSC, 2017 WL 282740,

3    at *4 (N.D. Cal. Jan. 23, 2017) (to the extent they are inconsistent, a district court must follow the

4    earlier of two panel decisions of the Ninth Circuit, particularly where the second panel did not

5    purport to expressly overrule the first).

6          Just as in *Hanlon*, here the proposed class settlement expressly excludes personal injury and

7    property loss claims that could implicate seriously material differences in state law. Moreover,

8    *Hanlon* applies with even more force here, because Plaintiffs' nationwide settlement is not premised

9    on the aggregated assertion of multi-state claims. Instead, Plaintiffs alleged a cognizable nationwide

10   FDUTPA claim against ADT under the law of a single state, Florida, based on allegations of

11   misconduct emanating from ADT's headquarters in Florida.  Plaintiffs are of course masters of their

12   complaint and need not allege every conceivable claim. *Hyundai*, 881 F.3d at 691 (citing *In re Mex.*

13   *Money Transfer Litig.*, 267 F.3d at 747 (class representatives met the predominance requirement in

14   part by limiting their theories to federal claims and aspects of state law that are uniform; "It is best

15   to bypass marginal theories if their presence would spoil the use of an aggregation device that on

16   the whole is favorable to holders of small claims.")); *Ross v. Trex Co.,* No. 5:09-CV-00670-JF,

17   2010 WL 11484525, at *4 (N.D. Cal. Apr. 7, 2010) (plaintiffs need not allege claims that would

18   undermine class certification). Unlike in *Hyundai*, here no court had determined that the proposed

19   nationwide FDUTPA claim could not be certified in a litigation context. By alleging a viable

20   nationwide claim under the law of a single state, rather than a conglomeration of disparate state law

21   claims, Plaintiffs satisfied their uncontested burden under *Hanlon* to demonstrate "the commonality

22   of [the applicable] substantive law" sufficient to satisfy Rule 23(b)(3)'s predominance requirement.

23   *Hanlon*, 150 F.3d at 1022.

24         In its order, the Court observed that this case "closely resembles *Hyundai* in that both

25   involve efforts to assert a nationwide class under a single state's law: in *Hyundai*, California law,

26   in this case, Florida law." ECF No. 152, at 2.  But as shown above, there are fundamental differences

27   between this case and *Hyundai*, rendering *Hyundai* ultimately inapposite.  In *Hyundai*, the plaintiffs

28

5

1  sought to aggregate state law claims, and ***did not*** seek certification of the ***settlement*** class through

2  the extraterritorial application of California law. *Hyundai*, 881 F.3d at 702 (the district court "did

3  not apply California law or the law of any particular state in deciding to certify the [nationwide]

4  class for settlement").

5       Here, however, Plaintiffs did not in the litigation context allege or otherwise attempt to

6  aggregate multi-state claims in support of nationwide class certification. Instead, in contrast to the

7  defendants in *Hyundai*, ADT faced a genuine risk of certification of a nationwide FDUTPA

8  litigation class in the *Baker* Action by the same judge who had sustained that claim on ADT's

9  motion to dismiss. Certainly Plaintiffs should not be forced now, after reaching a settlement of the

10  nationwide FDUTPA claim and in the absence of any choice of law objection, to address theoretical

11  differences among state consumer protection law claims that Plaintiffs never asserted, let alone

12  aggregated as the basis for either a nationwide litigation class or a nationwide settlement class.[2]

13       In sum, given the facts and circumstances here, *Hanlon* rather than *Hyundai* controls, and

14  *Hanlon* fully supports certification of the nationwide settlement class. The *Hyundai* panel was

15  simply not confronted with the situation presented in this case, in which the defendant faced a viable

16  nationwide class claim under a single state's law already recognized to have extraterritorial reach,

17  in which there has been no earlier determination that the proposed class could not be certified for

18  litigation purposes, in which all personal injury and property loss claims have been excluded from

19  the class settlement, and in which there has been no objection to the settlement suggesting any

20  material variation in state law sufficient to undermine predominance. Under these circumstances,

21  neither *Hanlon* nor *Hyundai* requires this Court to undertake a choice of law analysis with respect

22  to unalleged, purely hypothetical consumer protection claims under law of 49 other states in order

23  to satisfy predominance for purpose of certifying a nationwide settlement class.

24

25

26  [2] This was the intended point of Plaintiff's earlier statement, quoted by the Court in its order
directing supplemental briefing, that "the present case is not one 'in which the parties are attempting
27  to settle disparate state law claims on a nationwide basis by throwing them together without
consideration of their differences.'" ECF No. 152 (quoting ECF No. 143, at 5).
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III.     The Assertion of a Nationwide FDUTPA Claim Would Have Been Permissible under a California Choice of Law Analysis**

For the reasons just explained, the *Hyundai* majority remanded the matter to the district court to assess Rule 23(b)(3) predominance under the unique circumstances of that case. The Court has directed Plaintiffs here to likewise "conduct the step-by-step choice of law analysis *Hyundai* envisions," specifically in the context of the proposed application of the FDUTPA in this California forum. ECF No. 152, at 2. As the forum state in a diversity action California's choice of law principles govern, and in the litigation context Plaintiffs would, under California law, admittedly bear the burden of demonstrating the appropriateness of applying a foreign state's law. *Hurtado v. Superior Court*, 11 Cal. 3d 574, 581 (1974). As shown below, assuming *arguendo* that *Hyundai* requires such an analysis here, California's choice of law rules would indeed permit the FDUTPA to be applied to all plaintiffs in a hypothetical nationwide litigation class.

**A.     The FDUTPA Could Constitutionally Be Applied on Behalf of a Litigation Class in this Forum**

The threshold matter is whether the FDUTPA could constitutionally be applied to ADT on behalf of non-Florida claimants. *Hyundai*, 881 F.3d at 691-92. In *Phillips Petroleum Co. v. Shutts* 472 U.S. 797 (1985), the Supreme Court held that a state's substantive law may be applied to the claims of a nationwide class without violating the federal due process clause or full faith and credit clause if the state has a "'significant contact or significant aggregation of contacts'" to the claims of each class member such that application of the forum law is "not arbitrary or unfair." 472 U.S. at 821-22 Here, there is nothing arbitrary or unfair in subjecting ADT to FDUTPA claims when the misconduct allegedly emanates from ADT's headquarters in Florida, nor in affording consumers in every state an additional avenue of judicial recourse against ADT. As noted in earlier briefing, federal courts have consistently upheld the extraterritorial reach of the FDUTPA based on allegations of misconduct emanating from a defendant's Florida headquarters without any hint of constitutional impropriety. ECF No. 143, at 3 (citing cases).[3]

---

[3] Just last week, the Pennsylvania Supreme Court confirmed the viability of nationwide consumer protection claims brought under Pennsylvania's Unfair Trade Practices and Consumer Protection

1    Moreover, California courts have just as consistently held that California law may

2  constitutionally be applied to the claims of residents and non-residents alike where the claims arise

3  out of alleged conduct of a corporate defendant at its headquarters in California. *Clothesrigger, Inc.

4  v. GTE Corp.*, 191 Cal. App. 3d 605, 612-13 (1987); *Diamond Multimedia Sys., Inc. v. Superior

5  Court,* 19 Cal. 4th 1036, 1064–1065 (1999) (approving *Clothesrigger*); *see also, e.g., Chavez v.

6  Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (extraterritorial application of

7  California law constitutional; certifying nationwide litigation class based on extraterritorial

8  application of California law); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 598-99 (C.D.

9  Cal. 2008) (same). By the same rationale, California courts would perceive no constitutional

10  impediment to the assertion of a nationwide FDUTPA claim against Florida-based ADT.

11    **B.    California's Three-Step Governmental Interest Approach Permits Application
12         of the FDUTPA to a Nationwide Class**

13    "[G]enerally speaking the forum will apply its own rule of decision unless a party litigant

14  timely invokes the law of a foreign state. In such event [the party] must demonstrate that the latter

15  rule of decision will further the interest of the foreign state and therefore that it is an appropriate

16  one for the forum to apply to the case before it." *Hurtado*, 11 Cal. 3d at 581. As shown below, the

17  application of the FDUTPA to a nationwide class would further the stronger interests of Florida

18  without impairing the lesser interests of California, rendering the application of Florida law

19  permissible under California's three-step governmental interest approach, particularly given the

20  lack of material difference between the FDUTPA and California consumer protection laws. *Chen

21  v. L.A. Truck Centers, LLC*, 7 Cal. App. 5th 757, 766, *review granted*, 390 P.3d 1132 (2017).[4]

22

23 ─────────────────
Law ("UTPCPL"), allowing a California resident to assert a UTPCPL claim against a Pennsylvania-
24  headquartered defendant based on transactions that occurred out-of-state. *Danganan v. Guardian
Prot. Servs.*, No. 36 WAP 2017, 2018 WL 987814, at *7 (Pa. Feb. 21, 2018).

25 [4] *See* Cal. R. Ct. 8.1115(e)(1) ("Pending review and filing of the Supreme Court's opinion, unless
26  otherwise ordered by the Supreme Court under (3), a published opinion of a Court of Appeal in the
matter has no binding or precedential effect, and may be cited for potentially persuasive value only.
27  Any citation to the Court of Appeal opinion must also note the grant of review and any subsequent
action by the Supreme Court.").

28

1

   **1.   Other than Nationwide Reach, There Is No Material Substantive Difference in
          the Respective State's Law.**

2

3          Under the first step of California's governmental interest test, the Court determines whether

4  there are "material differences between the plaintiffs' California … claims and the laws of other

   states." *Hyundai,* 881 F.3d at 693.

5          Here, the FDUTPA has been found substantively neither more nor less advantageous to

6  consumers than California consumer protection laws. *In re NJOY, Inc. Consumer Class Action*

7  *Litig.*, 120 F. Supp. 3d 1050, 1123 (C.D. Cal. 2015) ("the factors required to prove claims under

8  the UCL, CLRA, and FDUTPA are essentially indistinguishable").  Appraising the elements of the

9  respective claims one-by-one, the court in *NJOY* found no significant difference: (a) as to proof of

10 reliance and causation, 120 F. Supp. 3d at 1103 ("as is the case under the CLRA and UCL, to satisfy

11 the FDUTPA's causation requirement, each plaintiff is required to prove only that the deceptive

12 practice is sufficiently material to deceive an objective reasonable consumer"); (b) as to materiality,

13 *id.* at 1111 (under both statutes, materiality is established if a reasonable man would attach

14 importance to the existence or nonexistence of a fact in determining his choice of action in the

15 transaction in question); and (c) as to damages, *id.* at 1122 (damages under the UCL, CLRA and

16 FDUTPA are determined by taking the difference between the market price actually paid by

17 consumers and the true market price that reflects the impact of the unlawful, unfair, or fraudulent

18 business practices). Because the first step under California's choice-of-law test is determining

19 whether the laws of the two jurisdictions materially differ, the substantial substantive similarity

20 between the Florida and California consumer protection claims obviates any Rule 23(b)(3)

21 predominance concerns. *Hurtado*, 11 Cal. 3d at 580 ("There is obviously no problem where the

22 laws of the two states are identical.").

23         In short, the only material difference between the application of California and Florida

24 consumer protection law is that, given ADT's headquarters and operations in Florida, the FDUTPA

25 affords aggrieved consumers a nationwide avenue of judicial recourse that California laws cannot

26 (but would had ADT been headquartered and operating out of California).

27

28

                                          9

1

## 2. There Is No "True Conflict" in the Respective Interests of California and Florida

2

3        The second step of California's governmental interest approach considers what interest, if

4    any, each state has in having its own law applied to the case. *Wash. Mut. Bank, FA v. Superior*

5    *Court*, 24 Cal. 4th 906, 920 (2001). In *Hurtado*, the California Supreme Court identified three

6    governmental interests of primary concern: (1) a state's interest in compensating its injured

7    residents; (2) a state's interest in deterring wrongful conduct within its borders; and (3) a state's

8    interest in protecting its resident defendants from excessive damages. *Hurtado*, 11 Cal. 3d at 583-

9    86; *but see*, *Chen*, 7 Cal. App. 5th at 770-71 (noting that these are not necessarily the only

10   governmental interests in play, depending upon the nature of the claims asserted). In the context of

11   consumer protection claims, consideration of all three state governmental interests supports the

     proposed application of the FDUTPA to a nationwide class in this case.

12        First, California courts recognize the important interest of a state in providing an avenue of

13   judicial recourse to all aggrieved consumers, including nonresident consumers, for misconduct

14   emanating from the state.  *Clothesrigger*, 191 Cal. App. 3d at 616 (trial court erred in stating

15   California has no interest in providing nonresident plaintiffs greater protection than their home

16   states provide).  California courts furthermore recognize that one state's more favorable laws may

17   properly apply to benefit non-resident plaintiffs when their home states have no identifiable interest

18   in denying them full recovery. *Clothesrigger*, 191 Cal. App. 3d at 616; *Hurtado*, 11 Cal.3d at 580–

19   581, 586–587; *accord, Pecover v. Elec. Arts Inc.*, No. C 08-2820 VRW, 2010 WL 8742757, at *20

20   (N.D. Cal. Dec. 21, 2010) (certifying nationwide class under extraterritorial application of

21   California law, since other states have no legitimate interest in denying recoveries to their residents)

22   (citing *Wash. Mut. Bank*). California courts would therefore support application of the FDUTPA as

23   an avenue of recourse for all consumers, whether or not they are residents of California.

24        Florida, on the other hand, shares not only that same interest in affording recourse to injured

25   consumers (again, whether or not residents of Florida), but also has the further, strong interest in

26   deterring wrongful conduct by corporations operating within its borders, particularly those

27   headquartered there. *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 701 (Fla. 3rd DCA 2000).

28

                                                      10

Florida thus has a weighty interest in the alleged deceptive and unfair trade practices by ADT, a company with its base of operations in Florida for many years. California, by contrast, has no interest in shielding ADT or other companies operating outside of California from consumer protection liability; indeed, California does not necessarily have an interest in limiting the damages even resident defendants must pay. *See, Chen*, 7 Cal. App. 5th at 774.

Accordingly, in this instance California has no compelling interest in having its law applied in lieu of the FDUTPA. *Hurtado*, 11 Cal. 3d at 580 ("Although the two potentially concerned states have different laws, there is still no problem in choosing the applicable rule of law where only one of the states has an interest in having its law applied."). There is, in short, no "true conflict" of governmental interests preventing the application of the FDUTPA on a nationwide basis in this case, particularly given the "essentially indistinguishable" elements of the California and Florida consumer protection claims. *Chen*, 7 Cal. App. 5th at 775 (where one state has a strong interest which would be impaired by the application of the law of a state which has no interest, there is no true conflict); *see e.g., Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010) (finding no "true conflict" between the interests of the states under the second step of California's governmental interest analysis).

In this regard, the Court may find helpful the analysis in *In re M3 Power Razor Sys. Mktg. & Sales Practices Litig.*, 270 F.R.D. 45 (D. Mass. 2010). There, the plaintiffs moved for certification of a nationwide settlement class, premised on the extraterritorial reach of Massachusetts' consumer protection law, the Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A ("Chapter 93A"), on the ground that the allegedly deceptive communications originated from Defendant Gillette's Massachusetts-based headquarters. 270 F.R.D at 51; *id.* at 56 ("Chapter 93A of the Massachusetts General Laws provides a cause of action common to all class members against the defendant."). One objector ("Corrales") opposed certification of a nationwide class premised on Chapter 93A, arguing differences in California law precluded predominance and required separate treatment of California consumers. *Id.* at 57. After conducting a detailed comparison of the elements and remedies of the consumer protection laws in

PLS' SUPPLEMENTAL BRIEF ADDRESSING HYUNDAI ISSUES                    Case No. 16-2233 JST

California, Massachusetts and other states, the court concluded that certification of a nationwide class was appropriate based solely on Chapter 93A. *Id.* at 58-62. The court specifically concluded that "given the current state of California consumer protection law, Corrales has failed to demonstrate that California plaintiffs have materially stronger claims than other potential members of the class or otherwise are in conflict with other class members." *Id.* at 61-62; *see also, id.* at 62 ("Especially given the commonality of the Chapter 93A claim for all class members, there are no particular advantages or disadvantages applicable to class members in any of the several jurisdictions and consequently no potential for conflicts of interest."). The same reasoning supports the nationwide application of the FDUTPA in lieu of California law here.

### 3. Florida's Interest Would Be More Impaired by Non-Application of the FDUTPA to ADT

"Only if the trial court determines that the laws are materially different and that each state has an interest in having its own law applied, thus reflecting an actual conflict, must the court take the final step and select the law of the state whose interests would be 'more impaired' if its law were not applied." *Wash. Mut. Bank, FA*, 24 Cal. 4th at 920; *see e.g., Offshore Rental Co. v. Cont'l Oil Co.*, 22 Cal. 3d 157, 167 (1978) (undertaking such a "comparative impairment" analysis).

Here, Florida's governmental interests would be more directly frustrated if corporations like ADT headquartered and actively operating within its borders were not answerable for consumer fraud to the full extent authorized under the FDUTPA. *Latman*, 758 So. 2d at 701. Neither California nor any other state has a stronger interest than Florida in regulating the activities or limiting the liability of a company that has deliberately chosen to locate its operations in Florida. Where all implicated states have some interest in compensating injured consumers, the further interest of deterring wrongful conduct within a state's borders prevails. *See, e.g., Pecover*, 2010 WL 8742757, at *21 ("Applying the laws of foreign states will not vindicate California's legitimate interests in deterring harmful conduct within its borders, whereas applying California law to nonresident plaintiffs will vindicate foreign states' interests in compensating their residents.").

PLS' SUPPLEMENTAL BRIEF ADDRESSING HYUNDAI ISSUES          Case No. 16-2233 JST

1    Plaintiffs acknowledge that, as recognized in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581,

2    592 (9th Cir. 2012), other states may have a legitimate interest in shielding corporate defendants to

3    attract business to the state. As shown above, however, California is not such a state. Moreover,

4    *Mazza*'s recognition is rooted in the "principle of federalism that each State may make its own

5    reasoned judgment about what conduct is permitted or proscribed within its borders." 666 F.3d at

6    591 (internal quotes and citation omitted). To whatever extent a state may take a more "business-

7    friendly" approach to consumer protection than Florida, such an interest in ***prospective*** commerce

8    pales in comparison to Florida's interest in deterring to the fullest extent possible wrongful conduct

9    by those ***currently operating within its own borders*** – that is, companies such as ADT that have

10   ***already*** decided to base their operations in Florida ***despite*** the existence of more lenient consumer

11   protection laws elsewhere. *See, e.g., Chen*, 7 Cal. App. 5th at 772; *see also, In re iPhone 4S*

12   *Consumer Litig.*, No. C 12-1127 CW, 2013 WL 3829653, at *9 (N.D. Cal. July 23, 2013)

13   (concluding that *Mazza* does not explicitly foreclose any argument that one state's consumer

14   protection statutes can be applied to a nationwide class, because the facts and circumstances of each

15   case must be independently analyzed).

16   California courts have consistently been willing to apply foreign law over California law

17   where the foreign state's governmental interests are comparatively more impaired. *See, e.g.,*

18   *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 102 (2010) (concluding that the foreign state's

19   interest would be more impaired if its law were not applied under the circumstances of the case

20   than would be California's interest if its law were not applied); *Castro v. Budget Rent-A-Car Sys.,*

21   *Inc.*, 154 Cal. App. 4th 1162, 1182 (2007) (same); *Offshore Rental,* 22 Cal. 3d at 169 (same). Under

22   California's comparative interest analysis, therefore, California's interest in the application of its

23   law to California consumers is in this instance not so compelling as to prevent an accommodation

24   to the more extensive governmental interest of Florida in deterring misconduct by defendants

25   headquartered and actively operating in Florida, particularly when the factors required to prove

26   claims under California consumer protection law and the FDUTPA are "essentially

27   indistinguishable." *In re NJOY*, 120 F. Supp. 3d at 1123.

28

1

#### 4. Choice-of-Law Conclusion

2

In sum, had Plaintiffs hypothetically moved in this forum for certification of a nationwide

3

litigation class based on the FDUTPA, each step of California's governmental interest approach

4

would have called for application of the FDUTPA. Under these circumstances, the threat to

5

predominance that concerned the *Hyundai* majority dissipates. *See*, *Hyundai*, 881F.3d at 692 ("[I]f

6

the forum state's choice-of-law rules require the application of only one state's laws to the entire

7

class, then the representation of multiple states within the class does not pose a barrier to class

8

certification.") (citation omitted).

9
10

## IV. Variations in State Consumer Protection Laws Do Not in Any Event Necessarily Destroy Predominance

11

Alternatively, as recognized in *Hanlon* predominance can be satisfied based on common

12

factual issues **notwithstanding** differences in state consumer protection laws. *Hanlon*, 150 F.3d at

13

1023 ("the objectors acknowledged that independent of any variations in state law, there were still

14

sufficient common issues to warrant a class action, particularly questions of Chrysler's prior

15

knowledge of the latch deficiency, the design defect, and a damages remedy"). "Because no precise

16

test can determine whether common issues predominate, the Court must pragmatically assess the

17

entire action and the issues involved." *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474,

18

489 (E.D. Cal. 2006). The proper focus is on whether the proposed class is "sufficiently cohesive

19

to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623.

20

Here, the alleged technical vulnerability of ADT's wireless residential security systems,

21

and the nature and timing of ADT's awareness of that vulnerability, present overwhelmingly

22

predominant common factual issues in the context of the alleged class claims premised on non-

23

disclosure under the law of Florida, California or any other state consumer protection statute. Given

24

the uniform lack of disclosure until ADT in August 2016 amended its contracts in response to this

25

litigation, the fundamental factual issues are indeed resolvable "in one stroke": what did ADT

26

know, and when did it know it?  *Hanlon*, 150 F.3d at 1019 (courts must remain sensitive to the

27
28

14

1    "common core" of issues among plaintiffs, even if coupled with "disparate legal remedies within

2    the class").

3            Because Plaintiffs' claims were premised on a common omission, the fundamental

4    cohesiveness required for predominance under Rule 23(b)(3) exists here notwithstanding the

5    theoretical application of varying state consumer protection laws. At the absolute minimum, ADT

6    would have faced a credible threat of an "issue only" litigation class under Rule 23(c)(4)(A), which

7    allows the common adjudication of disputed factual issues in which all ADT customers share an

8    interest, regardless of which state's law is ultimately applied. *Valentino v. Carter-Wallace, Inc.*, 97

9    F.3d 1227, 1234 (9th Cir. 1996) ("Even if the common questions do not predominate over the

10   individual questions so that class certification of the entire action is warranted, Rule 23 authorizes

11   the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and

12   proceed with class treatment of these particular issues.").

13   **V.      Secondarily, the Court Should Defer Ruling Pending Further Ninth Circuit Review of**
14   ***Hyundai***

15           Finally, if notwithstanding the foregoing briefing the Court construes the panel's opinion in

16   *Hyundai* as foreclosing its ability to approve the proposed Class Settlement in this action, Plaintiffs

17   respectfully request that the Court defer ruling until the possibility of *en banc* review of *Hyundai*

18   has run its course, not only as a matter of judicial economy but also to avoid confusion among the

19   Settlement Class Members, over 420,000 of whom have submitted claim forms to date in response

20   to the Class Notice.

21   Dated: February 26, 2018.                    BONNETT, FAIRBOURN, FRIEDMAN &
22                                                BALINT P.C.

23                                                CHAVEZ & GERTLER LLP

24                                                ZIMMERMAN LAW OFFICES, P.C.

25                                                By:     */s/ Francis J. Balint, Jr.*
                                                         Francis J. Balint, Jr.
26                                                       Andrew S. Friedman
                                                         2325 E. Camelback Rd. Ste. 300
27                                                       Phoenix, AZ 85016

28
                                                    15

Telephone: (602) 274-1100
Facsimile: (602) 274-1199

*Attorneys for Plaintiffs, Representative*
*Plaintiffs and the Proposed Settlement Class*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

/s/ Francis J. Balint, Jr.
Francis J. Balint, Jr.
Andrew S. Friedman
2325 E. Camelback Rd. Ste. 300
Phoenix, AZ 85016
Telephone: (602) 274-1100
Facsimile: (602) 274-1199
*Attorneys for Plaintiffs, Representative Plaintiffs and the Proposed Settlement Class*

17