UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL EDENBOROUGH, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ADT, LLC, et al.,<br><br>    Defendants. | Case No. 16-cv-02233-JST<br><br>**ORDER GRANTING FINAL APPROVAL AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES**<br><br>Re: ECF Nos. 121, 122 |

Before the Court are Plaintiffs' unopposed motions for final approval of the class action settlement, ECF No. 121, and for attorney's fees, costs, and incentive awards, ECF No. 122. The Court granted preliminary approval of the settlement on October 16, 2017, ECF No. 114, and held a final fairness hearing on February 1, 2018, ECF No. 148. The Court will grant final approval, and it will grant Plaintiffs' motion for attorney's fees, costs, and incentive awards in part and deny it in part.

## I.      BACKGROUND

Plaintiffs Michael Edenborough and Patricia Wilson bring this consumer rights case against Defendant ADT Security Services, Inc., on behalf of themselves and all other individuals similarly situated. Plaintiffs' claims arise from their purchase of wireless ADT home security services. ECF No. 93-1 ¶¶ 28-38. Plaintiffs generally allege that ADT did not fulfill its duty to disclose that the wireless home security systems sold by ADT are unencrypted, lack authentication, and are otherwise vulnerable to attack, and that ADT deceived reasonable consumers by virtue of the company's lack of disclosure. *Id.*

On October 16, 2017, the Court conditionally certified a settlement class and granted preliminary approval of the class action settlement agreement. ECF No. 114. The settlement class

is defined as:

> All current and former ADT customers who between November 13, 2009 and August 15, 2016 entered into a contract with ADT or an ADT dealer for installation of a residential security system, or who had ADT or an ADT dealer install a residential security system, that includes at least one wireless peripheral sensor.

ECF No. 94 at 22.

The settlement provides for a common fund of $16 million. ECF No. 121 at 9. The settlement releases class-wide nondisclosure claims but expressly preserves the right of settlement class members to pursue claims for property damages or personal injury. *Id.* Class member payouts will vary depending on the date the class member executed their first ADT contract; class members who purchased their systems after the date on which ADT was alerted to the identified security vulnerabilities will receive more than class members who purchased their systems before that date. *Id.* Thus, class members who contracted with ADT between November 13, 2009, and July 23, 2014, are projected to receive $15.08 each, and those who contracted with ADT between July 24, 2014, and August 15, 2016, are projected to receive $45.22 each. ECF No. 159 at 2. No portion of the settlement will revert to ADT. ECF No. 121 at 9-10. ADT paid $1.5 million into the common fund seven days after the Court entered the preliminary approval order, and it will make a second payment of $14.5 million seven days after the effective date of the settlement. ECF No. 121 at 10.

The required notice to federal and state attorneys general under the Class Action Fairness Act, 28 U.S.C. § 1715(b), was sent on March 29, 2017. ECF No. 146-1 ¶¶ 2-3. This notice occurred more than 90 days before the date of this order, as required by 28 U.S.C. § 1715(d).

Following the final fairness hearing, the Court ordered Plaintiffs to submit supplemental briefing on the applicability of *In re Hyundai & Kia Fuel Economy Litigation*, 881 F.3d 679 (9th Cir. 2018), and invited ADT to do the same. ECF No. 152. Both parties requested that the Court defer further consideration of the settlement pending potential en banc proceedings in the Ninth Circuit. ECF No. 154 at 20; ECF No. 155 at 3. The Court granted that request and stayed this case pending completion of the Ninth Circuit's proceedings in *Hyundai*. ECF No. 157 at 1. The Ninth Circuit's en banc proceedings have concluded, *In re Hyundai & Kia Fuel Econ. Litig.*, 926

1  F.3d 539 (9th Cir. 2019) (en banc), and the Court now proceeds to evaluate the final fairness of the
2  proposed settlement.

## II.   FINAL APPROVAL OF CLASS ACTION SETTLEMENT

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026. To assess a settlement proposal, the district court must balance a number of factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). There is no governmental participant in this case, so the Court need not consider that factor.

### A.   Adequacy of Notice

"The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). The Court approved the parties' proposed notice procedures when it granted preliminary approval. ECF No. 114 at 15-16.

The settlement administrator, Dahl Administration, LLC, carried out the notice procedures as outlined in the preliminary approval order. ECF No. 121-1. Dahl established a website that contained claim forms and information on the settlement on November 16, 2017. *Id.* ¶ 8. Dahl compiled mailing lists based on the National Change of Address database maintained by the United States Postal Service ("USPS"). *Id.* ¶ 10. On November 16, 2017, Dahl sent an email notice to 2,746,606 potential settlement class members, and a notice via USPS first-class mail to 2,587,471 potential settlement class members. *Id.* ¶ 12. After 281,414 notices were returned as

3

undeliverable and without forwarding addresses by the USPS, Dahl used a professional address location service and re-mailed notices to 280,877 updated addresses. *Id.* ¶ 14; ECF No. 138 ¶ 5. In sum, 96.3% short-form notices were sent to potential settlement class members. ECF No. 138 ¶ 15. The notice was also published in *USA Today*. ECF No. 121-1 ¶ 16. Banner notices appeared on the internet from November 16, 2017, to December 13, 2017. *Id.* ¶ 18. ADT placed a notice on its homepage and posted a tweet. *Id.* ¶ 19-20. Dahl also established a toll-free hotline. *Id.* ¶ 24. In sum, Dahl estimates that the notice reached 78% of potential class members more than two times each. *Id.* ¶ 23.

In light of these actions, and the Court's prior order granting preliminary approval, the Court finds that the parties have provided adequate notice to class members.

### B.   Fairness, Adequacy, and Reasonableness

With the exception of the reaction of class members, the Court analyzed the necessary factors and found the settlement to be fair, adequate, and reasonable when it granted preliminary approval to the agreement. ECF No. 114 at 9-15. The Court likewise found it proper to conditionally certify the proposed settlement class. *Id.* at 3-9.

The Court finds no reason to alter either of these conclusions now that class members have been provided notice and an opportunity to be heard and the settlement is before the Court for final approval. The reaction of the class was overwhelmingly positive. The Court received three objections and one opt-out as of January 2, 2017, the last day for objections and opt-outs. ECF Nos. 117, 119, 120, 132. The Court received a late opt-out on January 16, 2018. ECF No. 135. Dahl has received two objections, both of which this Court received, and 122 opt-outs. ECF No. 138 ¶ 11-12. Collectively, these objections and opt-outs constitute less than 0.002% of the potentially 6.4 million member class. ECF No. 94 at 23. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

4

One objection was voluntarily withdrawn. ECF Nos. 120, 133. The Court received another letter attached to a notice of claim form, which the Court construes as an objection. ECF No. 119. The letter objects to the settlement amount because the homeowner suffered damage to her home when ADT installed a security system in 2010. *Id.* This concern falls outside of scope of the settlement. A third letter objected to the settlement, at great length, on the basis that ADT targeted persons with disabilities with promises of security. ECF No. 132. The authors of that letter also submitted supplemental briefs, and their counsel appeared at the final fairness hearing to present their objections. ECF Nos. 141, 153, 156. The Court overruled those objections on March 29, 2018. ECF No. 157. No objectors raised any choice-of-law issues, and neither class counsel nor this Court are "obligated to address choice-of-law issues beyond those raised by the objectors." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 562.

After reviewing all of the required factors, the Court continues to find the settlement to be fair, reasonable, and adequate, and certification of the settlement class to be proper. Plaintiffs' motion for final approval of the settlement is granted.

### III.   ATTORNEY'S FEES AND COSTS

#### A.   Attorney's Fees

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorney's fees. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). "Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id.* "Applying this calculation method, courts [in the Ninth Circuit] typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *Id.* (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). The benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.

5

When using the percentage-of-recovery method, courts consider a number of factors, including whether class counsel "'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-50 (9th Cir. 2002)). "[T]he most critical factor [in determining appropriate attorney's fee awards] is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

Plaintiffs' counsel seek a fee award of 25% of the common fund, or $4 million. The Court concludes that this award is appropriate and reasonable in light of the benchmark and factors discussed above. In addition to obtaining a strong result of $16 million in the face of significant defenses mounted by ADT, this litigation caused ADT to enhance its disclosures to specifically address the security flaw at issue. *See Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *9 (N.D. Cal. July 11,2014) (providing that 28% attorney's fees were warranted where counsel obtained injunctive benefits in addition to a monetary settlement); ECF No. 122 at 15-17. Moreover, Plaintiffs' counsel assumed the risks of handling this case on a contingency basis for many years. ECF No. 122 at 17-18. The Court finds no reason to deviate from the 25% benchmark in this case.

The Court will also perform a cross-check of the requested fee award against the lodestar. "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. To "determin[e] the amount of a reasonable fee" under the lodestar method, a court takes "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. A district court must then "exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Id.* at 434 (citation omitted). The reasonable hourly rate must be based on the "experience, skill, and reputation of the attorney requesting fees." *Chalmers v.*

6

*City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *amended*, 808 F.2d 1373 (9th Cir. 1987). To determine a reasonable hourly rate, the Court looks to "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Id.* at 1210-11. The relevant community is typically the forum in which the district court sits. *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). "[T]he burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Plaintiffs claim hourly rates that are commensurate with their experience and with the legal market in San Francisco. *See* ECF Nos. 123, 124, 125, 126, 129. Moreover, Plaintiffs provide information on the number of hours counsel performed, broken down by categories of work, *e.g.*, ECF No. 123 ¶ 16, and the Court finds the number of hours to be reasonable. On the basis of these reasonable hourly rates and amounts, class counsel estimate the lodestar to be $3,135,560.75. The Court concludes this is a reasonable estimate of counsel's investment of time in the litigation.

Percentage awards in the range of one to four times the lodestar are common. *Vizcaino*, 290 F.3d at 1051 n.6 (finding a range of 0.6 to 19.6 in a survey of 24 cases, with 83% in the range of 1.0 to 4.0 and 54% in the 1.5 to 3.0 range, and citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." (quoting 3 Newberg § 14.03 at 14-15))). A fee award of $4 million results in a multiplier of less than 1.3 from the $3,135,560.75 lodestar. This is well within the range of reasonableness.

**B.     Costs**

Plaintiffs' counsel request reimbursement of $261,825.54 in litigation expenses. ECF No. 122 at 24. Plaintiffs may recover pre-settlement litigation costs in class action settlements, and expenses that are typically billed to paying clients are compensable. *Bennett v. SimplexGrinnell LP*, No. 11-cv-01854-JST, 2015 WL 12932332, at *7 (N.D. Cal. Sept. 3, 2015). Plaintiffs' counsel provided declarations breaking down the categories of claimed costs, including legal

7

1    research, deposition and other transcripts, expert fees, filing fees, mediation costs, messenger and
2    overnight delivery services, postage, copying, service of process, and travel expenses.  ECF No.
3    123 ¶ 20; ECF No. 124 ¶ 40; ECF No. 125 ¶ 16; ECF No. 126 ¶ 15; ECF No. 129 ¶ 18.  The
4    requested costs appear to be reasonable, and the Court will grant reimbursement of the requested
5    costs in full.

## IV.    INCENTIVE AWARDS

Finally, Plaintiffs request that incentive awards totaling $30,000 be paid to five separate named plaintiffs: $10,000 to Dale Baker, $10,000 to Janet Cheatham, $5,000 to Michael Edenborough, $2,500 to Patricia Wilson, and $2,500 to Santiago Hernandez.[1]  ECF No. 122 at 28-29.  Incentive awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (internal citation omitted).  Courts evaluate incentive awards individually, "using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation."  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (internal quotations, alterations, and citation omitted).  Indeed, "courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives."  *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).  "To determine the reasonableness of an incentive payment, courts consider the proportionality between the incentive payment and the range of class members' settlement awards."  *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014).  An award of

---

[1] While Edenborough and Wilson are the only lead named plaintiffs in this class action, Plaintiffs and ADT resolved in this settlement multiple cases in different jurisdictions that "share common factual allegations."  *Id.* at 10.  These additional cases include *Baker v. ADT*, filed in Illinois; *Cheatham v. ADT*, filed in Arizona; and *Wilson v. ADT* and *Hernandez v. ADT*, both filed in Florida.  ECF No. 94 at 10.  Baker, Cheatham, and Hernandez served as named class representatives in those cases.  Baker previously intended to exclude himself from the settlement and pursue his individual claims against ADT, but he "now intends to remain a part of the Settlement Class."  ECF No. 122 at 27 n.5.

8

$5,000 "is presumptively reasonable," *id.*, and "incentive payments of $10,000 or $25,000 are quite high," *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012).

The named plaintiffs and/or their attorneys submitted declarations explaining each individual's contributions to this case. Baker's attorney declared that Baker was subject to a home visit from ADT's counsel for three hours, was deposed for more than five hours, and listened to thirty-one audio recordings of conversations with ADT. ECF No. 124 ¶ 53. Cheatham's attorney explained that Cheatham performed work beyond that expected of class representatives; for example, she "assisted in a quasi-paralegal role, reviewing and coding sixty-seven audio recording files produced by ADT in response to Plaintiffs' discovery request." ECF No. 129 ¶ 22. Edenborough submitted his own declaration estimating that he spent at least 25 hours on this case, including preparing for and taking a day off work to attend his deposition. ECF No. 127 ¶¶ 8-9. The other two individuals appear to have participated to a lesser degree. Wilson's attorney declared that Wilson assembled documents and materials, reviewed filings, communicated with counsel, and generally kept informed about the status of the case. ECF No. 124 ¶ 54. Wilson estimates that she spent 20 hours on the case. ECF No. 128 ¶ 9. Finally, Hernandez's attorney explained that Hernandez gathered documents, engaged in numerous phone conversations with counsel, and reviewed the complaint prior to its filing. ECF No. 125 ¶ 23. Weighing the relevant factors and considering the requested incentive awards, the Court will award $5,000 each to Baker, Cheatham, and Edenborough, and $2,500 each to Wilson and Hernandez.

## CONCLUSION

The Court grants final approval of the proposed settlement and grants in part and denies in part Plaintiffs' motion for attorney's fees, costs, and incentive awards. Plaintiffs' requested fees and costs are granted, as are the requested incentive awards for Edenborough, Wilson, and Hernandez. The incentive awards for Baker and Cheatham are reduced from $10,000 to $5,000 each.

/ / /

/ / /

1  The Clerk shall enter judgment and close the file.

2  **IT IS SO ORDERED.**

3  Dated: July 22, 2019

_____
JON S. TIGAR
United States District Judge